IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**TAMERA JONES, AVERY JONES,
TOMMIE DALE MCGLOTHEN III**,
individually and on behalf of
**TOMMIE DALE MCGLOTHEN JR**.,
Deceased; **TAMERA JONES** and
**AVERY JONES** on behalf of
**KIMBERLY JONES MCGLOTHEN**,
Deceased.

Plaintiffs,

v.

**AMERICAN ALTERNATIVE
INSURANCE CORPORATION**, a
foreign insurance corporation, **CITY
OF SHREVEPORT,** a municipal
corporation of the State of Louisiana;
**BEN RAYMOND**, individually and in
his official capacity as Chief of Police of
the City of Shreveport Police
Department; and **TREONA A.
MCCARTER**, individually and in her
official capacity as a Police Officer of
the City of Shreveport Police
Department; and **BRIAN M. ROSS**,
individually and in his official capacity
as a Police Officer of the City of
Shreveport Police Department; and
**D'MAREA J. JOHNSON**, individually
and in his official capacity as a Police
Officer of the City of Shreveport Police
Department; **JAMES M. LECLARE**,
individually and in his official capacity
as a Police Officer of the City of
Shreveport Police Department.

Defendants.

CIVIL ACTION NO.

5:21-cv-690

**JURY TRIAL
DEMANDED**

## COMPLAINT

NOW COME Plaintiffs, Tamera Jones, Avery Jones, and Tommie Dale McGlothen III, individually and on behalf of Tommie Dale McGlothen Jr., Deceased, and Tamera Jones and Avery Jones on behalf of Kimberly Jones McGlothen, through undersigned counsel, who respectfully aver and represent as follows:

## JURISDICTION AND VENUE

1.     This is an action brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States as applied to the State of Louisiana and its entities, officials, and employees, as well as the statutes and laws of the State of Louisiana.

2.     Venue is proper in the Western District of Louisiana, Shreveport Division, as all acts complained of herein occurred in Shreveport, Caddo Parish, Louisiana.

3.     This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1343, and 1391.

4.     Plaintiffs seek compensatory damages, punitive damages, interest, attorneys' fees, and costs pursuant to 42 U.S.C. § 1988 due to the malicious and reckless acts of all Defendants.

## PARTIES

5.     Made Plaintiffs herein are:

A.     Tamera Jones. She is the surviving daughter of Tommie Dale McGlothen Jr. and Kimberly Jones McGlothen. Plaintiff Tamara Jones is, and at all

2

relevant times was, a citizen of the United States and a resident of Caddo Parish, State of Louisiana and is  entitled  to  bring  this  action  under Louisiana law for all general, special, compensatory, punitive, and permissible damages;

B.    Avery Jones. He is the surviving son of Tommie Dale McGlothen Jr. and Kimberly Jones McGlothen. Plaintiff Avery Jones is, and at all relevant times was, a citizen of the United States  and a  resident of  Caddo Parish, State of Louisiana and is entitled to bring this action under Louisiana law for  all  general,  special,  compensatory,  punitive,  and  permissible damages;

C.    Tommie Dale McGlothen III. He is the surviving son of Tommie Dale McGlothen Jr. Plaintiff Tommie Dale McGlothen III is, and at all relevant times  was, a citizen of the United States and a resident of Caddo Parish, State of Louisiana and is entitled to bring this action under Louisiana law for all general, special, compensatory, punitive, and permissible damages.

D.    Kimberly Jones McGlothen was the surviving spouse of Tommie Dale McGlothen Jr. at the time of his death. Unfortunately, she passed away in 2021 and is survived by her children, Tamera Jones and Avery Jones.

6.    Made Defendants herein are:

A.    American Alternative Insurance Corporation (hereinafter referred to as "Defendant Insurer"), a foreign insurer authorized to do and doing business in the State of Louisiana, which may be served through the

3

Louisiana Secretary of State;

B.     City of Shreveport (hereinafter referred to as "Defendant City"), a municipal corporation organized and existing under the laws of the State of Louisiana and is responsible for the policies, practices, customs, and regulations of the City of Shreveport Police Department; and for the hiring, training, supervision, and discipline of agents, employees, and police officers of the City of Shreveport Police Department.  Said Defendant may be served by serving Mayor Adrian Perkins, 505 Travis Street, Suite 200, Shreveport, Louisiana 71101;

C.     Ben Raymond (hereinafter referred to as "Defendant Raymond"), the Chief of Police for the City of Shreveport Police Department, is a person of suitable age and capacity and is an adult resident of the Western District of Louisiana. At all times pertinent herein, he had supervisory and managerial authority over Defendants McCarter, Ross, Johnson, and LeClare. In his capacity as Chief of Police, said Defendant is responsible for the management and operation of the City of Shreveport Police Department and specifically responsible for ensuring that the police officers of the City of Shreveport Police Department complied with the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Louisiana and the City of Shreveport Police Department.  Furthermore, said Defendant is responsible for the policies, practices, customs, and regulations of the City of

4

Shreveport Police Department; and for the hiring, training, supervision, and discipline of agents, employees, and police officers of the City of Shreveport Police Department. Said Defendant is sued both in his official and individual capacities. Said Defendant is a resident and citizen of the State of Louisiana and may be served with process at 505 Travis Street, Shreveport, Caddo Parish, Louisiana 71101;

D.    Treona A. McCarter (hereinafter referred to as "Defendant McCarter"), a sworn police officer of the City of Shreveport and/or the City of Shreveport Police Department, is a person of suitable age and capacity and is an adult resident of the Western District of Louisiana. At all times pertinent herein, in her capacity as a police officer, said Defendant was responsible for policing the City of Shreveport under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Louisiana and the City of Shreveport Police Department. Said Defendant is sued both in her official and individual capacities.  Said Defendant is a resident and citizen of the State of Louisiana and may be served with process at her personal residence in Louisiana;

E.    Brian M. Ross (hereinafter referred to as "Defendant Ross"), a sworn police officer of the City of Shreveport and/or the City of Shreveport Police Department, is a person of suitable age and capacity and is an adult resident of the Western District of Louisiana. At all times pertinent

5

herein,in his capacity as a police officer, said Defendant was responsible for policing the City of Shreveport under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Louisiana and the City of Shreveport Police Department. Said Defendant is sued both in his official and individual capacities.  Said Defendant is a resident and citizen of the State of Louisiana and may be served with process at his personal residence in Louisiana;

F.   D'Marea J. Johnson (hereinafter referred to as "Defendant Johnson"), a sworn police officer of the City of Shreveport and/or the City of Shreveport Police Department, is a person of suitable age and capacity and is an adult resident of the Western District of Louisiana. At all times pertinent herein, in his capacity as a police officer, said Defendant was responsible for policing the City of Shreveport under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Louisiana and the City of Shreveport Police Department. Said Defendant is sued both in his official and individual capacities.  Said Defendant is a resident and citizen of the State of Louisiana and may be served with process at his personal residence in Louisiana;

G.   James M. LeClare (hereinafter referred to as "Defendant LeClare"), a sworn police officer of the City of Shreveport and/or the City of

6

Shreveport Police Department, is a person of suitable age and capacity and is an adult resident of the Western District of Louisiana. At all times pertinent herein, in his capacity as a police officer, said Defendant was responsible for policing the City of Shreveport under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Louisiana and the City of Shreveport Police Department. Said Defendant is sued both in his official and individual capacities.  Said Defendant is a resident and citizen of the State of Louisiana and may be served with process at his personal residence in Louisiana.

7.      Plaintiffs aver and represent that Defendants and their agents and employees, including but not limited to Defendants McCarter, Ross, Johnson, and LeClare (hereinafter referred to collectively as "Defendant Officers") acted willfully and wantonly toward Mr. McGlothen, proximately causing his death.

8.      No immunity applies in this matter.

9.      Defendants have exhibited a pattern and practice of ignoring and violating the rights of the citizens of Louisiana, including Mr. McGlothen, which proximately caused his death and, furthermore, negligently supervised and trained their employees despite their knowledge of the need to do so.

## FACTUAL ALLEGATIONS

10.      At all relevant times, Defendant McCarter was a sworn member of the City of Shreveport Police Department, and was acting under the color and pretense of the

7

statutes, ordinances, regulations, customs, and usages of the State of Louisiana and the City of Shreveport Police Department and under the authority of their office and within the scope of his employment as a police officer.

11.     At all relevant times, Defendant Ross was a sworn member of the City of Shreveport Police Department, and was acting under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Louisiana and the City of Shreveport Police Department and under the authority of their office and within the scope of his employment as a police officer.

12.     At all relevant times, Defendant Johnson was a sworn member of the City of Shreveport Police Department, and was acting under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Louisiana and the City of Shreveport Police Department and under the authority of their office and within the scope of his employment as a police officer.

13.     At all relevant times, Defendant LeClare was a sworn member of the City of Shreveport Police Department, and was acting under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Louisiana and the City of Shreveport Police Department and under the authority of their office and within the scope of his employment as a police officer.

14.     At all relevant times, Defendant Raymond was vested with the obligation of ensuring that the police officers of the City of Shreveport Police Department, including Defendants McCarter, Ross, Johnson, and LeClare, complied with the color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of

Louisiana and the City of Shreveport Police Department.

15.     Defendant Raymond was also responsible for the hiring, training, supervision, and discipline of agents, employees,  and police officers of the City of Shreveport Police Department, including Defendants McCarter, Ross, Johnson, and LeClare.

16.     At all relevant times, Defendant Raymond was responsible for insuring that Mr. McGlothen was kept safe.

17.     Defendant Raymond failed to keep Mr. McGlothen safe from the harm caused by the actions and inactions of those under his command.

18.     At the time of his death on or about April 6, 2020, Mr. McGlothen was a citizen and resident of Caddo Parish, in the State of Louisiana, and in the United States of America.

19.     At all times relevant herein, Mr. McGlothen had legal rights established by the Constitution of the United States, the Constitution of the State of Louisiana, and laws set forth by state and federal statutes.

20.     The actions involved in this case are the result of the practices, policies, and/or customs of Defendant City of Shreveport and it employees.

21.     This is a claim for Federal law violations, State law negligence, and wrongful death filed by Plaintiffs.

22.     These violations caused pain, suffering, and ultimately the untimely and preventable death of Tommie Dale McGlothen Jr. on or about April 6, 2020.

23.     Mr. McGlothen was not kept safe by employees of the City of Shreveport while he was in their custody.

9

24.     Defendants breached their duty to monitor, care for, and provide necessary medical attention to Mr. McGlothen.

25.     By doing so, Defendants were deliberately indifferent to Mr. McGlothen's constitutional rights, physical welfare, and ultimately his life.

26.     Upon information and belief, on April 5, 2020, at approximately 1700, officers with the Shreveport Police Department were notified that Tommie Dale McGlothen Jr.  was in the midst of a mental health crisis and in dire need of assistance.

27.     Upon information and belief, the Shreveport Police Department and its employees, agents, and officers had notice of Mr. McGlothen's mental and medical conditions as of their first encounter with him and his family on the date in question.

28.     Upon information and belief, subsequent to the initial interaction with Mr. McGlothen at approximately 1700 on April 5, 2020, officers with the Shreveport Police Department encountered Mr. McGlothen on a second occasion on April 5, 2020, during which time Mr. McGlothen continued to exhibit obvious signs and symptoms of a mental breakdown.

29.     On April 5, 2020, at approximately 1830, officers with the Shreveport Police Department encountered Mr. McGlothen in the midst of his mental breakdown for a third and final time.

30.     Upon information and belief, at the time of the third encounter with officers with the Shreveport Police Department on April 5, 2020, Mr. McGlothen was neither armed nor posing any danger to another individual.

31.     Knowing that Mr. McGlothen was a psychiatric patient in the midst of a mental health crisis, Defendants McCarter, Ross, Johnson, and LeClare made the knowing,

10

intelligent, and voluntary decision to engage Mr. McGlothen in a violent and physical altercation.

32.     Defendants McCarter, Ross, Johnson, and LeClare are clearly seen on video punching and kicking Mr. McGlothen; beating him with a baton; repeatedly using a conducted energy weapon upon Mr. McGlothen; pepper spraying Mr. McGlothen; violently shoving him to the ground after he is secured in handcuffs and completely defenseless; and shoving him head-first onto the hood of a patrol unit.

33.     Upon information and belief, after excessively battering Mr. McGlothen, officers placed him in the back of a patrol unit where he remained significantly unattended for forty-eight (48) minutes.

34.     Upon information and belief, dash cam video of Mr. McGlothen's detention in the patrol unit clearly shows him in respiratory distress for forty-eight (48) minutes.

35.     Upon information and belief, Mr. McGlothen progressed from rapid breathing and gasping for air to declining respirations and eventual loss of consciousness, cardiac arrest, and death.

36.     The depraved and sadistic actions of Defendants McCarter, Ross, Johnson, and LeClare exhibit a deliberate indifference to the life of Mr. McGlothen.

37.     Upon information and belief, Mr. McGlothen spent forty-eight (48) minutes dying in the back of a patrol unit before medical assistance was requested for his acute medical condition.

38.     Mr. McGlothen's death was preventable.

39.     But for the refusal to seek medical attention for Mr. McGlothen by Defendants

McCarter, Ross, Johnson, and LeClare, he would have survived.

40.     This unconscionable conduct violated both Federal and State law.

41.     Justice for these acts is sought herein.

42.     Defendants McCarter, Ross, Johnson, and LeClare violated Mr. McGlothen's civil rights under both the United States Constitution and the United States Code, including excessive and deadly force and violation of due process.

43.     Upon information and belief, the City of Shreveport, the City of Shreveport Police Department and its supervisors, including Defendant Raymond, have maintained a system of review of police conduct which is so untimely and cursory as to be ineffective and to permit and tolerate the unreasonable excessive and deadly use of force by police officers.

44.     As a result, under the long-standing custom, practice, and/or written policy of the City of Shreveport, instead of treating Mr. McGlothen as a man in need of emergency medical assistance for an acute medical condition, Mr. McGlothen was subjected to excessive force, due process violations, and/or cruel and unusual punishment.

45.     Upon information and belief, none of the Defendant officers, McCarter, Ross, Johnson, or LeClare, intervened or took any action to stop either the assault on Mr. McGlothen or his unsupervised detention in the back of a patrol unit.

46.     Upon information and belief, none of the Defendant officers took any action toward obtaining medical attention for Mr. McGlothen until he was discovered unconscious and in cardiac arrest.

47.     No officer or supervisor attempted to stop the beating, tasing, or pepper spraying of Mr. McGlothen despite the fact that he was exhibiting signs and symptoms of excited delirium syndrome which requires emergency medical intervention.

48.     Despite the fact that Mr. McGlothen's condition required supervision, he was left predominantly alone for forty-eight (48) minutes, handcuffed and in the back of a patrol unit.

49.     After discovering Mr. McGlothen unconscious and in cardiac arrest, officers were unsuccessful in their attempts at cardiopulmonary resuscitation.

50.     The acts, omissions, systemic flaws, policies, and customs of the City of Shreveport, the City of Shreveport Police Department, and its supervisors, including Defendant Raymond, caused police officers of the City of Shreveport to believe that the excessive, deadly, and unreasonable use of force would not be aggressively, honestly, and properly investigated, with the foreseeable result that officers are more likely to use excessive or unreasonable force against Mr. McGlothen and others in the future.

51.     The resulting injuries and wrongful death sustained by Mr. McGlothen were caused solely by the Defendants, in violation of Mr. McGlothen's Civil and Constitutional rights, Louisiana state law, and without any cause, provocation, or negligence on the part of Mr. McGlothen contributing thereto.

52.     Upon information and belief, Mr. McGlothen's untimely and premature death exacerbated and contributed to Mrs. McGlothen's premature death.

## FIRST CAUSE OF ACTION
### (Excessive Force, Violation of Due Process and Cruel and Unusual Punishment under 42 U.S.C. §1983)

53.     Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

54.     Defendants McCarter, Ross, Johnson, and LeClare beat Mr. McGlothen with a baton.

55.     Defendants McCarter, Ross, Johnson, and LeClare punched Mr. McGlothen.

56.     Defendants McCarter, Ross, Johnson, and LeClare repeatedly used a conducted energy weapon upon Mr. McGlothen.

57.     Defendants McCarter, Ross, Johnson, and LeClare pepper sprayed Mr. McGlothen.

58.     After Mr. McGlothen was in handcuffs, Defendants McCarter, Ross, Johnson, and LeClare shoved him to the ground causing him to violently strike his head on pavement.

59.     Defendants McCarter, Ross, Johnson, and LeClare then pulled Mr. McGlothen to his feet and then slammed him head-first onto the hood of a patrol unit.

60.     Defendants McCarter, Ross, Johnson, and LeClare denied Mr. McGlothen access to immediate medical attention following these assaults and thereby violated Mr. McGlothen's due process rights.

61.     Defendants McCarter, Ross, Johnson, and LeClare used excessive physical force.

62.     Defendants McCarter, Ross, Johnson, and LeClare implemented cruel and unusual punishment.

63.     These acts were unconstitutional and in violation of Mr. McGlothen's Fourth, Eighth, and Fourteenth Amendment Rights.

64.     Mr. McGlothen was in the custody of the Shreveport Police Department and this treatment was a violation of his due process rights to be free from cruel and unusual punishment and excessive force.

65.     As a result of the actions and inactions of Defendants McCarter, Ross, Johnson, and LeClare, Mr. McGlothen suffered serious injuries, pain and suffering, fear of impending death, loss of enjoyment of life, and ultimately wrongful death.

66.     Per U.S.C. § 1983, the actions of Defendants McCarter, Ross, Johnson, and LeClare without legal justification violated  the  rights  of  Mr. McGlothen as guaranteed by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, for which all named Defendants are individually liable.

67.     The actions of Defendant Officers in using excessive and unreasonable force in the seizure and restraint of Mr. McGlothen and in failing to intervene or act to prevent such actions, despite having the opportunity and duty to do so, as set forth herein, violated the rights of Mr. McGlothen as guaranteed under the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution, to privacy, liberty, due process, equal protection, to be free from unreasonable search and seizure and to be free from the unjustifiable and excessive use of force, all in violation of 42 USC 1983.

68.     The Fifth Circuit has held that a suspect's mental impairment is an important fact

in determining whether force was reasonable in the context of constitutional analysis.[1]

Other circuits have concurred, holding that when mental impairment is present and

apparent in a police encounter, it "must be reflected in any [Fourth Amendment]

assessment of the government's interest in the use of force."[2]

69.     Thus, when police officers perceive signs of a person's mental disability, they

"should make a greater effort to take control of the situation through less intrusive

means."[3]

70.     As described above, the Defendant Officers were aware of Mr. McGlothen's

mental disability.

71.     But instead of using less force as a result of that disability, they used more force.

## SECOND CAUSE OF ACTION
### (*Monell* under 42 U.S.C. §1983)

72.     Plaintiffs incorporate and reassert the allegations in the preceding and following

paragraphs of this Complaint.

73.     It was the policy, practice, and/or custom of the Defendant City and the City of

Shreveport Police Department to employ certain police officers, including Defendants

McCarter, Ross, Johnson, and LeClare, described in the foregoing paragraphs.

74.     For a significant period of time leading up to the death of Mr. McGlothen,

Defendant City and the City of Shreveport Police Department have had a persistent and

---

[1] *Rockwell v. Brown*, 664 F. 3d 985, 992 (5th Cir. 2011).

[2] *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003).

[3] *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1078 (9th Cir. 2019) (citation omitted). *See also, e.g., Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 900 (4th Cir. 2016) ("Armstrong's mental health was . . . a fact that officers must account for when deciding when and how to use force."); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 904 (6th Cir. 2004) ("[T]hat the police were confronting an individual whom they knew to be mentally ill . . . must be taken into account when assessing the amount of force exerted.").

widespread practice of authorizing certain officers, including Defendants McCarter, Ross, Johnson, and LeClare to cover up the use of excessive force, despite the unlawful authority to use such force.

75.     Defendant City and the City of Shreveport Police Department were aware of and deliberately indifferent to the widespread and systemic violations of citizens' constitutional right by officers of the Shreveport Police Department.

76.     Defendant City's deliberate indifference allowed said violations of constitutional rights to flourish and increase in the years leading up to Mr. McGlothen's death.

77.     Such customs, policies, and practices were the driving forces leading to the violation of Mr. McGlothen's constitutional rights, as described in Counts One through Thirty-Eight of this Complaint.

78.     Defendant City has a persistent and widespread practice and custom of allowing the City of Shreveport Police officers to use unreasonable and deadly force without justification.

79.     Defendant Officers, acting together in concert and under the color of law, reached an understanding, engaged in a course of conduct and otherwise conspired among themselves to commit those acts described herein and to deprive Mr. McGlothen of his constitutional and civil rights as set forth herein, in violation of 42 USC 1983.

80.     Defendant Officers had knowledge of the wrongs done and conspired to be done as described herein, had the power to prevent or aid in the prevention of same, yet failed or refused to do so, in violation of 42 USC 1983.

81.     The actions of the Defendant Officers described herein were done with deliberate

indifference and were malicious, reckless, cruel, and performed with malice.

82.     Defendant City was deliberately indifferent to this practice and custom within the Shreveport Police Department, thereby allowing the deprivation of Mr. McGlothen's constitutional rights, as described in Counts through Thirty-Eight of this Complaint.

83.     Defendant City has a persistent and widespread practice and custom of allowing the City of Shreveport Police officers to violate the City of Shreveport Police Department's policies and procedures.

84.     Defendant City was deliberately indifferent to these practices and customs within the Shreveport Police Department by failing to enforce policies; failing to properly train; failing to properly discipline; thus creating a culture within the City of Shreveport Police Department wherein violating citizens' civil rights was not only tolerated, but also encouraged; thereby allowing the deprivation of Mr. McGlothen's constitutional rights, as described in Counts One through Thirty-Eight of this Complaint.

85.     Defendant City's action in providing an inadequate training program for City of Shreveport Police officers was taken with deliberate indifference as to the known and/or obvious consequences of inadequate training.

86.     Defendant City's deficient training program has been used and applied over time, upon information and belief, years, to many employees and City of Shreveport Police officers.

87.     Defendant City's deficient training program does not prevent constitutional violations to such an extent that Defendant City was put on notice that a new program was called for prior to the violation of Mr. McGlothen's constitutional rights in April

18

2020.

88.     Defendants' custom is to fail to supervise the City of Shreveport Police officers, thereby allowing the deprivation of Mr. McGlothen's constitutional rights, as described in Counts One through Thirty-Eight of this Complaint.

89.     Defendants have a persistent and widespread practice of ratifying and condoning the unlawful and illegal activity of the City of Shreveport Police officers, thereby allowing the deprivation of Mr. McGlothen's civil rights, as described in Count One through Thirty-Eight of this Complaint.

90.     Upon information and belief, Defendants McCarter, Ross, Johnson, and LeClare beat, pepper sprayed, punched, and used a conducted energy weapon on Mr. McGlothen while he suffered from excited delirium syndrome, an acute medical condition.

91.     Defendants McCarter, Ross, Johnson, and LeClare's use of excessive force is a plainly obvious consequence of Defendant City's decision to inadequately train and/or supervise City of Shreveport Police officers.

92.     City of Shreveport Police officers so often violate citizens' constitutional rights that the need for further training has been plainly obvious to Defendant City's policymakers who are deliberately indifferent to the need.

93.     Defendants McCarter, Ross, Johnson, and LeClare left Mr. McGlothen to suffer and slowly die without giving him medical care or proper supervision. Defendants failed to intervene and were improperly trained, supervised, and retained in violation of the standards set forth by the *Monell* doctrine.

94.     Defendant officers did not treat Mr. McGlothen as a man suffering from an acute medical condition.

95.     Defendant City, in failing to properly and adequately train, monitor, and supervise the City of Shreveport Police officers, including Defendants McCarter, Ross, Johnson, and LeClare, deprived Mr. McGlothen of his constitutional rights, as described in Count One through Thirty-Eight of this Complaint.

96.     Defendant City's practices as set forth herein are so widespread that they have the force of law.

97.     Defendant City's continued adherence to an approach that it knew or should have known has failed to prevent tortious conduct by City of Shreveport Police officers, including Defendants McCarter, Ross, Johnson, and LeClare, demonstrates Defendant City's deliberate indifference to the high risk that City of Shreveport Police officers, including Defendants McCarter, Ross, Johnson, and LeClare, would use excessive force and violate Mr. McGlothen's constitutional rights.

98.     Defendant City's deficient training program and inadequate training were the moving force behind Mr. McGlothen's injuries and untimely death.

99.     At all times relevant herein, Defendant Officers committed the acts described herein under the color of state law and by virtue of their authority as officers of the SPD and in the course and scope of their employment and substantially deprived Mr. McGlothen of his clearly established rights, privileges, and immunities guaranteed to him as a citizen of the United States pursuant to the Fourth, Eighth, and Fourteenth Amendments in violation of 42 U.S.C § 1983, including, but not limited to:

20

a.      The right to freedom from unreasonable seizure;

b.      The right to freedom from the use of unreasonable, unjustified, and excessive force and summary punishment;

c.      The right to freedom from deprivation of liberty without due process of law;

d.      The right to receive timely and appropriate medical monitoring and attention;

e.      The right to freedom from arbitrary governmental activity which "shocks the conscience" of a civilized society in violation of his substantive due process rights;

f.      The right to privacy;

g.      The right to liberty;

h.      The right to be free from deadly force.

i.      The right to freely move about.

100.    As a result of the aforementioned conduct, Plaintiffs have suffered damages as outlined in detail in this Complaint, including the pain, suffering, and wrongful death of Mr. McGlothen.

### THIRD CAUSE OF ACTION
**(Negligent Training, Supervision, and Retention as to Defendant City and Defendant Raymond)**

101.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

102.    At all relevant times, Defendant City and Defendant Raymond had a duty to screen applicants for hire to the Shreveport Police Department, retention to the

Shreveport Police Department, or to discharge from its employ those employees who were not fit, suitable, properly trained and instructed, that constituted a potential menace, hazard, or danger to the public, those with vicious propensities, and those with emotional, physical, psychological racists, biased, and/or physiological traits or characteristics unsuitable, unstable, or contradicted for such employment.

103.    At all relevant times, it was the duty of Defendant City and Defendant Raymond to sufficiently hire, train, and retain personnel within the Shreveport Police Department and at the supervisory and lower ranked levels so as to sufficiently discipline, supervise, and put into effect appropriate rules applicable to the duties, behavior, and activities of their servants, agents, officers, and other personnel.

104.    Upon information and belief, the individually named Shreveport Police Department officers, Defendants McCarter, Ross, Johnson, and LeClare, that beat, pepper sprayed, punched, and used a conducted energy weapon on Mr. McGlothen while he suffered from excited delirium syndrome and then left him to die without giving him medical care or proper supervision, and failed to intervene, were improperly trained, supervised, and retained by Defendant City and Defendant Raymond.

105.    As a result of the Defendants' negligence in its training, supervision, and retention of the Defendant officers, Mr. McGlothen was caused to suffer grave injuries that led to his death, without fault or contribution by Mr. McGlothen.

## FOURTH CAUSE OF ACTION
### (Failure to Intervene under 42 U.S.C. §1983)

106.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

107.    Each of the Defendants had a duty to intervene when they saw illegal conduct taking place in connection with the brutal attack on Mr. McGlothen.

108.    The actions of the  Defendant Officers in using excessive and unreasonable force in the seizure and restraint of Mr. McGlothen and in failing to intervene or act to prevent such actions, despite having the opportunity and duty to do so, as set forth herein, violated the rights of Mr. McGlothen as guaranteed under the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution, to privacy, liberty, due process, equal protection, to be free from unreasonable search and seizure and to be free from the unjustifiable and excessive use of force, all in violation of 42 USC 1983.

109.    Specifically, Defendants violated the policies and procedures set forth in the Use of Force policy which state "All members have a duty to intervene to prevent or stop the use of excessive force by another member when it is safe and reasonable to do so."

110.    Defendants failed to intervene when Mr. McGlothen was struck with a baton and pepper sprayed.

111.    Defendants failed to intervene when a conducted energy weapon was used on Mr. McGlothen.

112.    Defendants failed to intervene when Mr. McGlothen was shoved to the ground after being secured in handcuffs.

113.    Defendants failed to intervene when Mr. McGlothen was shoved head-first onto the hood of a patrol unit for forty-eight (48) minutes.

114.    Defendants failed to intervene when Mr. McGlothen was left unattended in the back of a patrol unit.

115.    Not only did Defendants fail to intervene during the excessive use of force, but they also failed to provide medical care, thereby violating their duty to intervene and put a stop to the unconstitutional acts taking place.

116.    During the events described herein, Defendant Officers were aware of the use of excessive force and restraint but did not intervene to prevent the violation of Mr. McGlothen's constitutional rights, even though they had the opportunity and duty to do so.

117.    The failure of Defendants to intervene contravened Mr. McGlothen's constitutional rights and violated 42 U.S.C. §1983.

118.    As a result of these actions, Mr. McGlothen suffered serious physical injuries including loss of enjoyment of life and wrongful death.

**FIFTH CAUSE OF ACTION**
**(Negligence of Defendants McCarter, Ross, Johnson, and LeClare)**

119.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

120.    Defendants McCarter, Ross, Johnson, and LeClare  negligently failed to provide for the safety, security, and protection of Mr. McGlothen by failing to comply with the Shreveport Police Department's policies, procedures, and rules of conduct as it relates

to the use of force and protective custody.

121.    The policies, procedures, and rules require officers to obtain medical care for those prisoners who are in obvious need of such care.

122.    The Defendants' failure to recognize that Mr. McGlothen was in immediate need of medical care, even after being so informed by his family, was in violation of these policies, procedures, and rules and constituted negligence that exacerbated his acute medical condition.

123.    Mr. McGlothen was exhibiting obvious signs and symptoms of a well-known, acute medical condition, excited delirium syndrome.

124.    Excited delirium syndrome has as its symptoms psychomotor agitation, anxiety, hallucinations, speech disturbances, disorientation, violent and bizarre behavior, insensitivity to pain, and increased levels of strength.

125.    Excited delirium syndrome is a neurochemical disorder and an acute medical emergency that requires immediate medical attention.

126.    Mr. McGlothen was known to the Defendant officers to suffer from mental illness and it was foreseeable that the Defendant officers' treatment of Mr. McGlothen would result in his demise.

127.    Mr. McGlothen was at risk for excited delirium syndrome and Defendants had notice of his condition, in addition to their own prior encounters with him directly.

128.    At all times relevant herein, Defendant Officers committed the acts described herein under the color of state law and by virtue of their authority as officers of the SPD and in the course and scope of their employment and substantially deprived Mr.

McGlothen of his clearly established rights, privileges and immunities guaranteed to him as a citizen of the United States pursuant to the Fourth, Eighth, and Fourteenth Amendments in violation of 42 U.S.C § 1983, including, but not limited to:

    a.     The right to freedom from unreasonable seizure;

    b.     The right to freedom from the use of unreasonable, unjustified, and excessive force and summary punishment;

    c.     The right to freedom from deprivation of liberty without due process of law;

    d.     The right to receive timely and appropriate medical monitoring and attention;

    e.     The right to freedom from arbitrary governmental activity which "shocks the conscience" of a civilized society in violation of his substantive due process rights;

    f.     The right to privacy;

    g.     The right to liberty;

    h.     The right to be free from deadly force.

    i.     The right to freely move about.

129.   The actions of the Defendant Officers as described herein, were unjustified, unreasonable, unconstitutional, excessive, and grossly disproportionate to the actions of Mr. McGlothen, if any, and constituted an unreasonable search and seizure effectuated through the use of excessive and deadly force and a deprivation of Mr. McGlothen's constitutional rights secured to him by the Fourth, Eighth, and Fourteenth Amendment of the United States Constitution.

130.    The actions of the Defendant Officers described herein were in direct violation of the constitution, law and regulations of the United States and the State of Louisiana and the internal policies of the SPD.

131.    As a result of the foregoing negligent acts, Mr. McGlothen sustained serious physical injuries that resulted in his untimely and preventable death.

### SIXTH CAUSE OF ACTION
**(Wrongful Death pursuant to Louisiana Civil Code Article 2315 et seq)**

132.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

133.    The actions of Defendants McCarter, Ross, Johnson, and LeClare on April 5, 2020, caused the wrongful death of Mr. McGlothen.

134.    The combination of an excessive use of force followed by an inexcusable delay in medical attention, caused Mr. McGlothen's death.

135.    Mr. McGlothen's death was preventable and Defendants McCarter, Ross, Johnson, and LeClare caused his untimely death.

136.    The actions of the Defendant Officers described herein were the direct and proximate cause of the injuries, including his death, to Mr. McGlothen.

137.    The actions of the Defendant Officers described herein violated Mr. McGlothen's federal and state constitutional and statutory rights as specified herein and resulted in his death.

138.    At all times relevant herein, each of the Defendant Officers named and involved in the restraint and use of unreasonable and excessive force against Mr. McGlothen.

which resulted in and contributed to his death, were employees of Defendant City, were acting under color of law, and by virtue of their authority as officers of the SPD and in the course and scope of their employment.

139.    As a direct and proximate result of the actions of the Defendant Officers and the deliberately indifferent policies, practices, and customs of  Defendant Raymond, the constitutional and statutory rights, federal and state, of Mr. McGlothen, were violated, and he sustained injuries and damages suffered for which the defendants are liable, as set forth herein.

140.    Defendant Raymond, individually and in his official capacity as Chief of Police and as the final policy maker, was under a constitutional duty: 1) to properly determine if his officers, including the defendant officers, were qualified to serve as police officers; 2) to provide his officers, including the Defendant Officers, with proper policy guidance to perform law enforcements functions including stops, searches, seizures,  dealing with persons with intellectual/developmental disabilities, dealing with persons of diminished capacity, apprehension of suspects, use of force, including deadly force, use of restraints, and the protection of individual's civil rights, among other things; 3) to provide to his officers, including the Defendant Officers,  proper training to perform law enforcement functions including stops, searches, seizures,  dealing with persons with intellectual/developmental disabilities, dealing with persons of diminished capacity, apprehension of suspects, use of force, including deadly force, use of restraints and the protection of individual's civil rights; 4) to properly monitor and supervise his officers, including the Defendant Officers, for compliance with the policies, practices

and customs of the SPD with respect to stops, searches, seizures, dealing with persons with intellectual/developmental disabilities, dealing with persons of diminished capacity, apprehension of suspects, use of force, including deadly force, use of restraints and the protection of individual's civil rights; and 5) to properly investigate, discipline and hold accountable his officers, including the Defendant Officers, for violation of the policies, practices and customs of the SPD.

141.    The actions of the Defendant Officers described herein, which were proximately caused by the policies, practices, customs, and usages of Defendant Raymond, were the underlying cause of the death of Mr. McGlothen and the injuries and damages to Mr. McGlothen and the Plaintiffs.

142.    Plaintiffs hereby assert a claim under Louisiana Civil Code Article 2315 et seq. for the wrongful death, loss of consortium, and survival action of Mr. McGlothen.

143.    Further, Plaintiffs Tamera Jones and Avery Jones, on behalf of Kimberly Jones McGloth, the surviving spouse of Mr. McGlothen at the time of his untimely and premature death, assert Mrs. McGlothen's claims for wrongful death, loss of consortium, and survival damages under Louisiana Civil Code Article 2315 et seq.

## SEVENTH CAUSE OF ACTION
### (Violation of the *Americans with Disabilities Act*, 42 U.S.C. §12101 and *the Rehabilitation Act*)

144**.**    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

145.    On information and belief, Defendant City receives federal funds, thus bringing Defendant City and the SPD within the ambit of the Federal Rehabilitation Act.

146.    The actions of the Defendants described herein are in violation of Title II of the ADA, which prohibits discrimination by any public agency, and all of "the services, programs, or activities of a public entity." 42 U.S.C. §§ 12131, 12132 and Section 504 of the Rehabilitation Act (RA).

147.    Defendants are in violation of federal regulations implementing Title II of the ADA which provides that "a public entity shall operate each service program, or activity so that the service, program or activity, when viewed in it entirely, is readily accessible to and usable by individuals with disabilities." 28 CFR Section 35.150(a).

148.    Defendants' actions are also in violation of federal regulations implementing Title II of the ADA which provide that a public entity may not "(i) deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or] (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

149.    Congress intended Title II to cover all police agency activities, including arrests.[4] Accordingly, federal regulations explicitly apply those provisions to law enforcement

---

[4] *See* House Comm. Judiciary, H.R. Rep. No. 101 485, pt. 3, at 50 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 473 ("[T]o comply with the non-discrimination mandate, it is often necessary to provide training to public employees about disability. For example, persons who have epilepsy, and a variety of other disabilities, are frequently inappropriately arrested and jailed because police officers have not received proper training . . .")

conduct during arrests.[5]

150.   "Title II of the ADA provides that no qualified individual with a disability shall, because of that disability, be excluded from participation in, denied the benefits of, or subjected to discrimination in the services, programs, and activities of all state or local government entities, including law enforcement, corrections, and justice system entities. Such services, programs, and activities include . . . Law enforcement street interactions, taking and responding to complaints or calls for assistance, vehicle stops and searches, arrests, detentions, interviews, interrogations, and emergency responses."

https://www.ada.gov/cjta.html

151.   Twenty years ago, the Fifth Circuit, U.S. Court of Appeals, in *Hainze v. Richards* the Court ruled that the ADA "does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents . . . *prior* to the officer's securing the scene and ensuring that there is no threat to human life."[6]

152.   In compliance with the 5th Circuit's ruling in *Hainze*, Plaintiffs assert their ADA/RA claims against Defendants for their actions *after* Mr. McGlothen was fully handcuffed by Defendant Officers, following which Defendant Officers treated Mr.

---

[5] 28 C.F.R. pt. 35, app. B (2014) ("The general regulatory obligation to modify policies, practices, or procedures requires law enforcement to make changes in policies that result in discriminatory arrests or abuse of individuals with disabilities."); *id.* ("[T]itle II applies to anything a public entity does."); U.S. Dep. of Justice, Civil Rights Div., The ADA and City Governments: Common Problems (2008) ("When dealing with persons with disabilities, law enforcement agencies often fail to modify policies, practices, or procedures in a variety of law enforcement settings—including citizen interaction, detention, and arrest procedures. . . . When interacting with police and other law enforcement officers, people with disabilities are often placed in unsafe situations or are unable to communicate with officers because standard police practices and policies are not appropriately modified."); U.S. Dep. of Justice, Civil Rights Div., Commonly Asked Questions About The Americans With Disabilities Act And Law Enforcement (2006) ("The ADA affects virtually everything that officers and officers do, for example: . . . arresting . . . suspects[.]"); U.S. Dep. of Justice, Civil Rights Div., Communicating with People Who Are Deaf or Hard of Hearing: ADA Guide for Law Enforcement Officers (2006).
[6] *Hainze v. Richards*, 207 F. 3d 795 (2000) (emphasis added).

McGlothen in ways inappropriate to his disability even *after* securing the scene, as described herein.

153.    Discrimination under these federal statutes does not require animus towards people with disabilities.[7] Thus "[o]ne can intentionally violate a nondiscrimination law without possessing animus toward the class of people that the law protects."

154.    A defendant commits intentional discrimination where an employee of a public entity has knowledge of a plaintiff's disability but chooses not to accommodate him.[8]

155.    Defendants violated federal law and committed intentional discrimination even though they might not have had animus towards the class of people that the law protects.[9]

156.    Mr. McGlothen was a qualified person with a disability.

157.    Mr. McGlothen had a range of serious and debilitating mental illness diagnoses.

158.    Defendant Officers, prior to arriving on the scene, understood that Mr. McGlothen was a person with special needs, and therefore a qualified person with a disability.

159.    Defendant Officers, after arriving on the scene, understood that Mr. McGlothen was a qualified person with a disability.

160.    Defendant Officers, prior to arriving on the scene, regarded the person they were

---

[7] *Carter v. Orleans Par. Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984); *Esparza v. Univ. Med. Ctr. Mgmt. Corp.*, No. CV 17-4803, 2017 WL 4791185, at *17 (E.D. La. Oct. 24, 2017)

[8] *Delano-Pyle v. Victoria Cty., Tex*, 302 F.3d 567, 575 (5th Cir. 2002); *see also Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565 (5th Cir. 2018) (affirming "damages based on a defendant's knowledge of the plaintiff's disability and his decision not to accommodate him[.]")

[9] *Carter v Orleans Parish Pub School*, 725 F2d 261, 264 (5thCir. 1984); *Esparza v Univ. Med Ctr. Mgmt Corp.*, No. CV 17-4803, 2017 WL 4791185, at *17 (E.D.La. Oct. 24, 2017).

*en route* to handle as qualified person with a disability.

161.   Defendant Officers, after arriving on the scene, regarded Mr. McGlothen as a qualified person with a disability.

162.   Defendant Officers, all employees of Defendant Raymond and the Defendant City SPD, a public entity, knew that Mr. McGlothen was "special needs" yet chose not to accommodate him.[10]

163.   Mr. McGlothen was entitled to reasonable accommodation in the provision of law enforcement services and safe and secure access to appropriate care, all of which were denied to him by Defendants.

164.   Despite the Defendants' knowledge of the obligation to accommodate persons with disabilities and avoid discrimination, Defendants did not take adequate steps to accommodate Mr. McGlothen nor did the Defendants take adequate steps to avoid discrimination on the basis of disability.

165.   In the alternative, and upon information and belief, Defendants' failure to promulgate policies and/or practices to accommodate individuals with mental illness has and had a predictable disparate impact on persons with disabilities, including Mr. McGlothen.

166.   Because Defendants failed to reasonably accommodate Mr. McGlothen's disability, he suffered greater injury, suffering, indignity, and death, than individuals without mental illness who are handcuffed, secured and then placed in recovery position while in custody of the SPD.

---

[10] *Delano-Pyle v Victoria Cty., Tex.*, 302 F3d 567, 575 (5th Cir 2002).

167.    Plaintiffs are entitled to all available remedies for relief pursuant to the ADA and Section 504.

168.    The Defendants actions as described herein were done with deliberate indifference.

169.    Mr. McGlothen suffered from mental impairments that substantially limited one or more of his major life activities.

170.    Defendants violated their supervisory duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

171.    Specifically, Defendants failed to follow the policies and procedures set forth in the Americans with Disabilities Act policy which state "It shall be the policy of the Shreveport Police Department to ensure that services are provided on a consistent basis to all members of the community."

## EIGHTH CAUSE OF ACTION
### (Supervisory Liability under 42 U.S.C. §1983)

172.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

173.    Upon information and belief, supervisors, like Defendant Raymond, were assigned to supervise and control the actions of the named Shreveport Police Department officers including Defendants McCarter, Ross, Johnson, and LeClare.

174.    Defendants violated their supervisory duties by failing to ensure that officers under their supervision properly monitored, cared for, and protected from harm, those in their custody like Mr. McGlothen.

175.    Supervisors did not ensure that Mr. McGlothen received immediate medical care.

176.    Plaintiffs aver that Defendant Raymond failed to properly screen, hire, train, investigate, and discipline officers, including the Defendant Officers.

177.    Defendant Raymond permitted, encouraged, tolerated, and knowingly acquiesced in an official pattern, practice or custom of SPD Officers, including Defendant Officers, of violating the constitutional rights of the public at large, including Mr. McGlothen.

178.    Defendant Raymond had been put on notice of the need for policy and training due to the past deaths of persons in SPD custody.

179.    Defendant Raymond had been put on notice of the need for policy and training due to the national attention generated from in-custody positional and compressional asphyxiation deaths over the past 25+ years.

180.    Defendant Raymond condoned, approved, ratified, facilitated and knowingly acquiesced in the actions of the Defendant Officers described herein by failing to properly investigate, discipline, and hold accountable the Defendant Officers for their actions.

181.    Defendant Raymond is liable for the unconstitutional and discriminatory actions of the Defendant Officers as described herein, due to the following policies, procedures, rules, practices, customs, and/or usages of the SPD which were in effect at the time of this incident and which were the underlying cause of the death of Mr. McGlothen:

    a.  Failure to properly hire and screen applicants to determine their fitness, both

mentally, physically and ethically, to perform the duties of a law enforcement officer;

b.   Failure to have adequate and proper written policy guidance regarding obvious and recurring law enforcement activities with respect to: 1) stops; 2) searches; 3) seizures; 4) dealing with persons with mental illness and/or intellectual/developmental disabilities, including autism; 5)   dealing with persons of diminished capacity; 6)   apprehension of suspects; 7) use of force, including deadly force; 8) use of restraints; 9) protection of individual's civil rights; and 10) among other things, illustrating deliberate indifference and reckless disregard for the rights of the public, including Mr. McGlothen.

c.   Failure to adequately train his officers, including the Defendant Officers regarding obvious and recurring law enforcement activities with respect to: 1) stops; 2) searches; 3) seizures; 4) dealing with persons with mental illness and/or intellectual/developmental disabilities, including autism; 5) dealing with persons of diminished capacity; 6)   apprehension of suspects; 7) use of force, including deadly force; 8) use of restraints; 9) protection of individual's civil rights; and 10) among other things, illustrating deliberate indifference and reckless disregard for the rights of the public, including Mr. McGlothen.

d. Failure to train and educate its officers with respect to use of force applications which he knew, must have known, or should have known,   that officers were utilizing in the field and which posed a serious risk of injury or death, in deliberate indifference to and reckless disregard of the welfare of the public at large, including Mr. McGlothen;

e. Failure to adequately monitor and evaluate the physical condition of his officers to determine if they were fit to perform their duties without unnecessarily endangering the public through substandard performance or inability to perform essential law enforcement functions in deliberate indifference to and reckless disregard of the welfare of the public at large, including Mr. McGlothen;

f. Failure to adequately supervise, monitor and evaluate the performance of his officers, including the Defendant Officers, regarding their compliance with the laws and policies, practices, and customs with respect to: 1) stops; 2) searches; 3) seizures;   4)   dealing   with   persons   with   mental   illness   and/or intellectual/developmental disabilities, including autism; 5)   dealing with persons of diminished capacity; 6)   apprehension of suspects; 7) use of force, including deadly force; 8) use of restraints; 9) protection of citizen's civil rights; and 10) among other things, illustrating deliberate indifference and reckless disregard for the rights of the public, including Mr. McGlothen.

g. Failure to adequately respond to and investigate critical incidents and/or complaints by civilians regarding misconduct by SPD officers, including Defendant Officers, with respect to: 1) stops; 2) searches; 3) seizures; 4) dealing with persons with mental illness and/or intellectual/developmental disabilities, including autism 5) dealing with persons of diminished capacity; 6) apprehension of suspects; 7) use of force, including deadly force; 8) use of restraints; 9) protection of citizen's civil rights; and 10) among other things, illustrating deliberate indifference and reckless disregard for the rights of the public, including Mr. McGlothen.

182.   Defendant Raymond knew or should have known that the above-referenced policies, practices, and/or customs, resulted in an underqualified, undertrained and unprofessional law enforcement agency that was ill-equipped to perform obvious and necessary law enforcement activities without exposing the public to unwarranted danger of injury and/or death.

183.   Defendant Raymond was on actual or constructive notice of the deficiencies with the policies, practices and customs of the SPD which make officer misconduct a foreseeable consequence.

184.   Defendant Raymond knew, must have known, or should have known that the above-referenced policies, practices, and/or customs, would likely lead to serious injury or death to citizens and that such injuries were foreseeable; yet, disregarded that risk.

185.   The aforementioned policies, practices, and customs were inadequate in relation to the specific tasks their officers must routinely perform and with respect to activities where there is an obvious need for proper policies, practices and customs and therefore, illustrated its deliberate indifference and/or reckless disregard to the consequences of officer misconduct.

186.    Defendant Raymond's above referenced policies, practices and/or customs violated Mr. McGlothen's constitutional rights; and said policies, practices and/or customs were the moving force behind and proximate cause of said violations.

187.    Defendant Raymond's above referenced policies, practices and/or customs demonstrated a deliberate indifference to the constitutional rights of the public, including Mr. McGlothen, and was the proximate cause of the injuries and damages sustained by Mr. McGlothen and Plaintiffs, and evidenced a reckless or callous indifference to the federally protected rights of Mr. McGlothen.

188.    Defendant Raymond is also directly responsible for the actions of the Defendant Officers as described herein by virtue of the fact that he failed to require or perform an adequate investigation of this critical incident involving an in-custody death and, therefore, ratified, condoned and approved the Defendant Officers' conduct in this matter in all respects.

189.    By failing to recognize or correct the deficiencies with his policies, practices, and customs, Defendant Raymond consciously disregarded the known and foreseeable consequences thereof.

190.    Defendant Raymond's deliberately indifferent policies, practices, and customs were the moving force behind Mr. McGlothen's injuries and the deprivation of his constitutional rights.

191.    There is a direct causal link between the policies, practices and customs and the death of Mr. McGlothen and the violation of his constitutional rights.

192.    As a direct and proximate result of the foregoing policies, practices, and customs

of Defendant Raymond, the violation of the constitutional rights of the public by SPD officers was substantially certain to occur.

## NINTH CAUSE OF ACTION
### (Supervisory Liability under 42 U.S.C. §1983)

193.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

194.    Upon information and belief, supervisors, like Defendant Raymond, were assigned to supervise and control the actions of the named Shreveport Police Department officers including Defendants McCarter, Ross, Johnson, and LeClare.

195.    Defendants violated their supervisory duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

196.    Specifically, Defendants failed to follow the policies and procedures set forth in the Commander on Duty policy which state "It shall be the duty of all supervisors to monitor the performance and behavior of all members under their command during duty."

## TENTH CAUSE OF ACTION
### (Supervisory Liability under 42 U.S.C. §1983)

197.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

198.    Upon information and belief, supervisors, like Defendant Raymond, were assigned to supervise and control the actions of the named Shreveport Police Department officers including Defendants McCarter, Ross, Johnson, and LeClare.

199.    Defendants violated their supervisory duties by failing to comply with the

written policies and procedures of the Shreveport Police Department.

200.   Specifically, Defendants failed to follow the policies and procedures set forth in the Commander on Duty policy which state "The COD will respond to the scene of any major incident."

## ELEVENTH CAUSE OF ACTION
### (Supervisory Liability under 42 U.S.C. §1983)

201.   Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

202.   Upon information and belief, supervisors, like Defendant Raymond, were assigned to supervise and control the actions of the named Shreveport Police Department officers including Defendants McCarter, Ross, Johnson, and LeClare.

203.   Defendants violated their supervisory duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

204.   Specifically, Defendants failed to follow the policies and procedures set forth in the Early Intervention System procedures which state "It shall be the duty of all supervisors to monitor the performance and behavior of all members under their command during duty."

## TWELVTH CAUSE OF ACTION
### (Supervisory Liability under 42 U.S.C. §1983)

205.   Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

206.   Upon information and belief, supervisors, like Defendant Raymond, were assigned to supervise and control the actions of the named Shreveport Police

Department officers including Defendants McCarter, Ross, Johnson, and LeClare.

207.    Defendants violated their supervisory duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

208.    Specifically, Defendants failed to follow the policies and procedures set forth in the Conducted Electrical Weapon policy which state "An on-duty patrol supervisor shall respond to the scene of all USD deployments."

## THIRTEENTH CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

209.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

210.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly and adequately train all members of the Shreveport Police Department.

211.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

212.    Specifically, Defendants failed to follow the policies and procedures set forth in the Training Academy policy which state "It is the policy of the Shreveport Police Department to maintain a Training Academy responsible for the development, implementation, and administration of the Shreveport Police Department's training programs, to comply with P.O.S.T. standards where applicable, and to coordinate training through other agencies, institutions, and providers."

## FOURTEENTH CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

213.    Plaintiffs incorporate and reassert the allegations in the preceding and following

41

paragraphs of this Complaint.

214.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

215.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

216.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

217.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Arrests policy which state "While effecting an arrest, use only the reasonable force necessary to make the arrest, and also to overcome any resistance or threatened resistance of the person being arrested or detained."

## FIFTEENTH CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

218.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

219.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

220.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

221.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

222.    Specifically, Defendants failed to train Defendant Officers on the policies and

procedures set forth in the Arrests policy which state "Officers shall not mistreat persons who are in their custody."

## SIXTEENTH CAUSE OF ACTION
**(Negligent Training as to Defendants City and Raymond)**

223.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

224.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

225.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

226.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

227.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Arrests policy which state "Officers shall handle such persons in accordance with the law and established procedures."

## SEVENTEENTH CAUSE OF ACTION
**(Negligent Training as to Defendants City and Raymond)**

228.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

229.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

230.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

231.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

232.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the four (4) page Use of Force policy which state "Officers shall use only level of force which a reasonably prudent officer would use under the same or similar circumstances."

## EIGHTEENTH CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

233.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

234.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

235.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

236.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

237.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Use of Force policy which state "Factors to be considered [when using force] include but are not limited to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

## NINETEENTH CAUSE OF ACTION
**(Negligent Training as to Defendants City and Raymond)**

238.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

239.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

240.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

241.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

242.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Use of Force policy which state "Physical force shall not be used against individuals in restraints, except as objectively reasonable to prevent their escape or prevent imminent bodily injury to the individual, the officer, or another person."

## TWENTIETH CAUSE OF ACTION
**(Negligent Training as to Defendants City and Raymond)**

243.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

244.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

245.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

246.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

247.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Use of Force policy which state "Once the scene is safe and as soon as practical, members shall seek medical attention for any person who has visible injuries, complains of being injured, or requests medical attention."

## TWENTY-FIRST CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

248.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

249.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

250.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

251.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

252.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Use of Force policy which state "An officer shall allow an individual time and opportunity to submit to verbal commands before force is used."

## TWENTY-SECOND CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

253.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

254.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

255.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

256.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

257.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Protective Custody Procedures which state "Officers should remember that the majority of subjects in need of mental health services represent no danger to others; however, there are exceptions when they can become extremely violent and combative with little or no apparent warning. For this reason, officers should exercise extreme caution with such subjects."

**TWENTY-THIRD CAUSE OF ACTION**
**(Negligent Training as to Defendants City and Raymond)**

258.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

259.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

260.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

261.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

262.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Protective Custody Procedures which state "Avoid excitement, confusion or upsetting circumstances."

## TWENTY-FOURTH CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

263.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

264.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

265.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

266.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

267.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Protective Custody Procedures which state "Do not abuse, belittle or threaten the subject."

## TWENTY-FIFTH CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

268.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

269.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

270.    Defendants violated their training duties by failing to comply with the written

policies and procedures of the Shreveport Police Department.

271.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

272.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Protective Custody Procedures which state "Remain professional in your contacts with the subject."

### TWENTY-SIXTH CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

273.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

274.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

275.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

276.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

277.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Protective Custody Procedures which state "Any violent or combative subject taken into protective custody shall be transported to the state hospital."

### TWENTY-SEVENTH CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

278.    Plaintiffs incorporate and reassert the allegations in the preceding and following

paragraphs of this Complaint.

279.   At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

280.   Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

281.   Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

282.   Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Protective Custody Procedures which state "The Shreveport Police Academy staff shall ensure that all new, sworn employees receive documented entry level training concerning handling subjects they suspect are mentally ill. This training should include, but not be limited to the following: Recognition of subjects suffering from mental illness; Procedures for assessing available community mental health resources; and Specific guidelines for officers to follow in dealing with subjects they suspect are mentally ill."

## TWENTY-EIGHTH CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

283.   Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

284.   At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

285.   Defendants violated their training duties by failing to comply with the written

policies and procedures of the Shreveport Police Department.

286.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

287.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Restraint and Transportation of Prisoners Procedures which state "The officer shall help the handcuffed prisoner maintain balance and shall keep the person from falling or running into objects when possible."

**TWENTY-NINTH CAUSE OF ACTION**
**(Negligent Training as to Defendants City and Raymond)**

288.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

289.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

290.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

291.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

292.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Restraint and Transportation of Prisoners Procedures which state "Officers and jail personnel will be alert for possible indicators of positional asphyxiation or custodial suicide in restrained prisoners and take appropriate actions for prisoner safety."

## THIRTIETH CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

293.   Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

294.   At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

295.   Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

296.   Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

297.   Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Restraint and Transportation of Prisoners Procedures which state "Risk factors [for positional asphyxiation] include violent struggle extreme enough to require officers to employ some type of restraint technique."

## THIRTY-FIRST CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

298.   Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

299.   At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

300.   Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

301.   Defendants failed to properly train Defendant Officers pursuant to the written

policies and procedures of the Shreveport Police Department.

302.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Restraint and Transportation of Prisoners Procedures which state "When a prisoner exhibits the risk factors for positional asphyxiation, an officer should be assigned during transportation to maintain surveillance."

## THIRTY-SECOND CAUSE OF ACTION
**(Negligent Training as to Defendants City and Raymond)**

303.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

304.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

305.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

306.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

307.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Restraint and Transportation of Prisoners Procedures which state "Care should be taken when a prisoner who is physically and/or mentally handicapped or mentally disturbed is transported."

## THIRTY-THIRD CAUSE OF ACTION
**(Negligent Training as to Defendants City and Raymond)**

308.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

309.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

310.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

311.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

312.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Conducted Electrical Weapons policy which state "Minimize the number and duration or CEW exposures."

**THIRTY-FOURTH CAUSE OF ACTION**
**(Negligent Training as to Defendants City and Raymond)**

313.    Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

314.    At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

315.    Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

316.    Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

317.    Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Conducted Electrical Weapons policy which state "Do not use multiple CEWs or multiple completed circuits at the same time without

justification."

## THIRTY-FIFTH CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

318.   Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

319.   At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

320.   Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

321.   Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

322.   Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Conducted Electrical Weapons policy which state "Never use the CEW on a subject who has had an exposure of aerosol deterrent or chemical agent, as it is a fire hazard and could ignite the aerosol deterrent or chemical agent."

## THIRTY-SIXTH CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

323.   Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

324.   At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

325.   Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

326.     Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

327.     Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Conducted Electrical Weapons policy which state "Officers are responsible for requesting medical attention for subjects against whom force was used."

### THIRTY-SEVENTH CAUSE OF ACTION
### (Negligent Training as to Defendants City and Raymond)

328.     Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

329.     At all relevant times, Defendant City and Defendant Raymond had a duty to properly train all members of the Shreveport Police Department.

330.     Defendants violated their training duties by failing to comply with the written policies and procedures of the Shreveport Police Department.

331.     Defendants failed to properly train Defendant Officers pursuant to the written policies and procedures of the Shreveport Police Department.

332.     Specifically, Defendants failed to train Defendant Officers on the policies and procedures set forth in the Training Manual which state "The new officer is able to use only that force necessary to control a suspect and does not tend to punish the subject."

### THIRTY-EIGHTH CAUSE OF ACTION
### (Direct Action Pursuant to *Louisiana Revised Statute § 22:1269*)

333.     Plaintiffs incorporate and reassert the allegations in the preceding and following paragraphs of this Complaint.

334.   Upon information and belief, Defendant Insurer provides both liability and excess coverage to the City of Shreveport for the damages asserted and sustained herein.

335.   Defendant Insurer, upon information and belief, has issued or currently has in effect, one or more policies of insurance covering one or more of the Defendants named herein. For valuable consideration received, these policies obligated Defendant, jointly and/or severally, to pay on behalf of their insured Defendant(s) any sums the insured Defendant(s) may become obligated to pay to Plaintiffs or to indemnify their insured Defendant(s) for any sums the insured Defendant(s) may become obligated to pay to Plaintiffs under the terms of its policies.

336.   Upon information and belief, Defendant Insurer is liable to Plaintiffs for any and all damages incurred by reason of the insured Defendant(s)' acts, up to their policy limits, notwithstanding the fact that the insured Defendant(s) may themselves be able to assert claims of privilege or immunity from liability.

337.   Under Louisiana Revised Statute § 22:1269, Plaintiffs bring a direct action against Defendant Insurer to recover any and all sums they are obligated to pay Plaintiffs on behalf of their insureds or to indemnify their insureds.

## DAMAGES

338.   As a direct and proximate result of the Defendants' wrongful acts and omissions as described herein, Mr. McGlothen suffered severe injuries and death, for which Plaintiffs seek and are entitled to recover damages from the Defendants, jointly and severally, for these injuries, to the fullest extent possible, under both federal and state

law, as follows:

339.    Mr. McGlothen suffered severe physical, mental, and emotional injuries, pain and suffering, anguish, loss of liberty, loss of enjoyment of life, pre-death fear and terror, and death.

340.    Plaintiffs suffered the loss of their family relationship and incurred funeral and burial costs.

341.    Punitive damages are sought against the Defendants in their individual capacity.

342.    **WHEREFORE**, Plaintiffs pray that after due proceedings, that there be judgment in their favor and against all Defendants, jointly and severally, as follows:

1. Compensatory and punitive damages.

2.  Funeral and burial costs and other special damages.

3.  Plaintiffs be awarded reasonable attorney's fees and all costs of these proceedings pursuant to 42 U.S.C. § 1988.

4. That judicial interest be awarded from the date of judicial demand.

5. That this matter be tried by a jury.

6. Declaratory relief and judgment that the acts complained of herein were unconstitutional.

7. All other relief which this Court deems just and proper.

343.    Plaintiffs further reserve the right to notice of defect to this pleading and reserve the right to amend or supplement this Complaint after discovery of any additional fact, law, or claim, the amendment of which to be performed by the filing of any subsequent pleading.

This, the 16th day of March 2021.

Respectfully submitted,

The Cochran Firm
Trials & Mass Torts

_/s/James Carter_____
James Carter (#26841)
Jeffrey A. Mitchell (#19711)
Ashley L. Page (#30285)
3850 N. Causeway Boulevard
Suite 1500
Metairie, Louisiana 70002
Tel. 504.612.7000
Fax 504.612.7001
jcarter@cochrantrials.com
jmitchell@cochranfirmnola.com
apage@cochranfirmnola.com

*Attorneys for Plaintiffs*

Please Serve:

American Alternative Insurance Corporation
Through their Agent:
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, LA  70809