## IN THE UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

| | |
|---|---|
| **TAMERA JONES, ET AL** | **CASE NO. 5:21-CV-00690** |
| **VERSUS** | **DISTRICT JUDGE FOOTE** |
| **AMERICAN ALTERNATIVE** | |
| **INSURANCE CORPORATION, ET AL** | **MAGISTRATE HORNSBY** |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

MAY IT PLEASE THE COURT:

NOW INTO COURT, through undersigned counsel, come Plaintiffs, who respectfully oppose Defendants' Partial Motion to Dismiss Pursuant to Rule 12(b)(6) and represent that they have alleged with specificity facts sufficient to establish their right to relief. Each claim asserted in the Complaint relies on unique evidence and legal theories. Plaintiff have now filed a Motion for Leave and an Amended Complaint in this matter thereby rendering the Motion to Dismiss moot.

### I. Rule 12(b)(6) Standard of Review

In order to overcome a Rule 12(b)(6) motion, the plaintiffs' complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[1] Plausibility merely calls for sufficient factual allegations to raise a reasonable expectation that discovery will yield evidence to support the elements of the

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

claim.[2] The Court must accept well-pleaded factual allegations as true.[3] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4] Without converting the 12(b)(6) motion into a Rule 56 motion, the Court may consider, in addition to the complaint in its entirety, documents that are part of the public record[5] and matters subject to judicial notice[6].  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[7]

The object of F.R.C.P. 12(b)(6) is to test the sufficiency of the pleading.[8]  "The judicial standard governing the court's grant of such a motion [to dismiss] is whether it `appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[9]  In addition, "in making such a determination, the complaint is to be liberally construed in favor of the plaintiff and all factual allegations and permissible inferences in the complaint are to be accepted as true."[10]  With these considerations in mind, a court may only grant a motion to dismiss under F.R.C.P. 12(b)(6) where the allegations in the Complaint are legally insufficient to entitle a plaintiff

---

[2] *Phillips v. Whittington*, 497 F.Supp.3d 122, 142 (W. Dist. LA 2020), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[3] *Ashcroft* at 679.

[4] *Id.* at 678.

[5] *Davis v. Bayless*, 70 F.3d 367, 372 (5th Cir. 1995).

[6] *Bauer v. Texas*, 341 F.3d 352, 362 (5th Cir. 2003).

[7] *Ashcroft* at 664.

[8] *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176 (6th Cir. 1975).

[9] *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957).

[10] *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir. 1987).

to any relief.[11]

To survive a 12(b)(6) motion, a complaint must satisfy the general notice pleading requirements of Federal Rule of Civil Procedure 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."[12]  This rule reflects a simplified and lenient pleading system that "was adopted to focus litigation on the merits of a claim" rather than on technicalities that could keep litigants out of court.[13]

Despite Defendants' arguments to the contrary, the Supreme Court unanimously, expressly, and repeatedly has rejected a "heightened pleading standard."[14]

In *Twombly*, the Supreme Court noted that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."[15]  Plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."[16]  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)", and the Court should deny a motion to dismiss even if it appears "that a recovery is very remote and unlikely".[17]  In *Twombly*, the Court expressly reconfirmed "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that

---

[11] *Dunn v. Tennessee*, 697 F.2d 121 (6th Cir. 1982).

[12] Fed. R. Civ. P. 8(a)(2).

[13] *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513-14 (2002) ("*Rule 8(a)*'s simplified pleading standard applies to all civil actions, with limited exceptions").  *See also, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69 (1993).

[14] *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69 (1993) (no heightened pleading standard for municipal liability claims; subjecting them to an added specificity requirement must be done by amending the Federal Rules, not by judicial interpretation).

[15] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[16] *Id.*

[17] *Id.* at 556 (internal citation and footnote omitted), following *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

is plausible on its face."[18]

Two weeks after deciding *Twombly*, the Court issued *Erickson*, and put to rest any question that *Twombly* overruled Rule 8(a)'s general notice-pleading scheme:

> *Federal Rule of Civil Procedure 8(a)(2)* requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[19]

The Supreme Court further confirmed this Motion to Dismiss standard in *Skinner*:

> Because this case was resolved on a motion to dismiss for failure to state a claim, the question below was "not whether [Skinner] will ultimately prevail" on his procedural due process claim, see *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), but whether his complaint was sufficient to cross the federal court's threshold, see *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Skinner's complaint is not a model of the careful drafter's art, but under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible "short and plain" statement of the plaintiff's claim, not an exposition of his legal argument. See 5 C. Wright & A. Miller, Federal Practice & Procedure § 1219, pp. 277-278 (3d ed.2004 and Supp.2010).[20]

Additionally, as the *Swierkiewicz* Court noted, "These requirements are exemplified by the Federal Rules of Civil Procedure Forms, which 'are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate.'[21] "For example, Form 9 sets forth a complaint for negligence in which plaintiff simply states in relevant part: 'On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle

---

[18] 550 U.S. 570.
[19] *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*)
[20] *Skinner v. Switzer*, 131 S.Ct. 1289, 1296 (2011).
[21] *Fed. Rule Civ. Proc. 84*."  534 U.S. at 513, n. 4.

against plaintiff who was then crossing said highway.'"[22]

Courts are required to follow Rule 84 and the Forms as long as Congress has declined to amend them.[23]  Post-*Iqbal* district courts continue to endorse pleading consistent with Rule 84 and the Forms. [24]

Finally, it is well documented in civil rights jurisprudence that motions to dismiss are to be carefully scrutinized and only granted in extreme circumstances. [25]

Based on these exacting standards, it is clear that Defendants' Partial Motion to Dismiss is due to be denied based on the allegations set forth in the Complaint.

## II.     Facts

As Defendants' Partial Motion to Dismiss is based on Federal Rule of Civil Procedure 12(b)(6), the allegations set forth in the Complaint are taken as true.

## III.    Liability for Violation of Mr. McGlothen's Civil Rights

To establish Defendants' liability under 42 U.S.C. Section 1983, Plaintiffs must prove: 1) Mr. McGlothen's constitutional rights were violated by the Individual Defendants; and 2) Defendants' policies, practices, and customs were a moving force of

---

[22] *Id.*

[23] *See Leatherman*, 507 U.S. at 168 (changes to the Federal Rules "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.").

[24] *See, e.g., Ziptronix Inc. v. Omnivision Tech., Inc.*, 2011 U.S. Dist. LEXIS 129275, at *9 (N.D. Cal. Nov. 8, 2011); *Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156, 1159 (C.D. Cal. 2010); *Baldain v. Am. Home Mortg. Servicing, Inc.*, 2010 U.S. Dist. LEXIS 5671, at *37 (E.D. Cal. Jan. 5, 2010); *Elan Microelectronics Corp. v. Apple, Inc.*, 2009 U.S. Dist. LEXIS 83715, at *6-7 (N.D. Cal. Sept. 14, 2009).

[25] *See e.g. Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (motions to dismiss civil rights complaints should be "scrutinized with special care"); *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000) ("the rule of liberal construction is 'particularly important in civil rights cases.'") *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992); *U.S. General, Inc. v. Schoeder*, 400 F.Supp. 713 (D.C. Wis. 1975); *Mercado v.  Kingsley Area Schools/Traverse City Public Schools Adult Educ. Consortium*, 727 F.Supp. 335 (W.D. Mich. 1989); *Mahoney v. National Organization for Women*, 681 F.Supp. 129 (D. Conn. 1987).

the underlying constitutional violation.  It is abundantly clear that the Complaint states a claim for the violation of Mr. Mcglothen's constitutional rights.

Plaintiffs' constitutional claims for failure to provide timely medical treatment under the Fourth and/or Fourteenth Amendment require that the Plaintiffs prove that the Defendants acted with deliberate indifference to Mr. McGlothen's serious medical needs.[26]   Plaintiffs submit that the admitted delay in assessment and medical treatment amounted to a violation of Plaintiffs' constitutional rights under applicable law.

Claims for deliberate indifference to serious medical needs consist of an objective and subjective component.[27]  Based on the decisions in *Blackmore* and *Owensby*, a plaintiff successfully proves a claim of deliberate indifference to serious medical needs when the plaintiff can show that he experienced an obvious medical condition and medical treatment was unnecessarily delayed.[28]   A plaintiff is not required to show that the deliberate indifference of defendants was a proximate cause of actual medical harm. Rather, the plaintiff is required to show that there was a serious medical need and that officials failed to timely respond to it.

The Complaint clearly states a cause of action for the violation of Mr. McGlothen's constitutional rights against the Individual Defendants as it sufficiently states that Mr. Mcglothen was suffering from an obvious medical condition and that the Individual Defendant's ignored this condition until Mr. McGlothen was found unresponsive in the

---

[26] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

[27] *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009).

[28] *Blackmore v. Kalamazoo City*, 390 F.3d 890 (6th Cir. 2009) and *Owensby v. City of Cincinnati*, 414 F.3d 596 (6th Cir. 2005).

6

back of a police cruiser.

To establish municipal liability, a plaintiff can utilize any of the following five theories:

(1) express municipal policy, *Monell,* 436 U.S. at 660–61;

(2) "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law," *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127(1988) (quotation omitted);

(3) the decision of a person with final policymaking authority, *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–83 (1986),

(4) the failure to act where the "inadequacy [of the existing practice is] so likely to result in the violation of constitutional rights, that the policymaker ... can reasonably be said to have been deliberately indifferent to the [plaintiff's rights]," *City of Canton v. Harris,* 489 U.S. 378, 390 (1989),[29] or

(5) ratification by a municipality of its employee's unconstitutional acts by failing to meaningfully investigate and punish allegations of unconstitutional conduct. *Fuller v. City of Oakland,* 47 F.3d 1522, 1535 (9th Cir.1995); *see also Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1247 (6th Cir.1989).

To prevail on such a municipal liability claim for failure to train or discipline, a plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed by the employees; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.[30] A municipality can be liable for a failure to train if, "in light

---

[29] This category includes deliberately indifferent training or supervision, *Canton,* 489 U.S. at 390, 109 S.Ct. 1197; *see also Ellis v. Cleveland Mun. Sch. Dist.,* 455 F.3d 690, 700 (6th Cir.2006), deliberately indifferent hiring, *Brown,* 520 U.S. at 410–11, 117 S.Ct. 1382; *see also Doe v. Magoffin County Fiscal Court,* 174 Fed.Appx. 962, 967 (6th Cir.2006), and deliberately indifferent failure to adopt policies necessary to prevent constitutional violations, *Conn v. City of Reno,* 572 F.3d 1047, 1064 (9th Cir.2009); *see also Rhyne v. Henderson County,* 973 F.2d 386, 392 (5th Cir.1992).
[30] *Marcilis v. Township of Redford,* **693 F.3d 589 (6th Cir. 2012).**

of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."[31]  As noted by the Supreme Court in the *Canton*:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, see *Tennessee v. Garner*, 471 U.S.   1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.[32]

Under this municipal liability theory, there is no need to prove a widespread pattern of improper behavior. [33]   Pursuant to *Canton*, when a constitutional violation is such a highly predictable consequence of a failure to train, a municipality can be found to have been deliberately indifferent to its citizens' constitutional rights.[34]  In this case, there is no question that there is an obvious need to provide medical attention to those who are in respiratory distress.

Based on the foregoing, Plaintiffs submit that the Complaint sets forth sufficient

---

[31] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

[32] *Id.  at Footnote 10.*

[33] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 117 S. Ct. 1382, 1391-93 (1997) ("In *Canton,* we did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability. 489 U.S., at 390, and n. 10, 109 S.Ct., at 1205, and n. 10 ("[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious ... that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need")).

[34] *Id.  at 393.  See also Cherrington v. Skeeter*, 344 F.3d 641, 646 (6th Cir. 2003) (holding that a city's failure to train its officers on warrantless arrests was so likely to result in constitutional violations that the city's failure amounted to deliberate indifference); *Gregory v. City of Louisville*, 444 F.3d 725, 754 (6th Cir. 2006) (holding that failure to provide *any* training on how to handle exculpatory materials has a "highly predictable consequence" of constitutional violations).

facts to support its municipal liability claim against Defendants.  With respect the necessary allegations to be made to plead municipal liability, "to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen."[35]  A cursory review of the Complaint makes clear that Plaintiffs have made the appropriate allegations to assert a claim for municipal liability against Defendants to survive their Partial Motion to Dismiss.

Plaintiffs submit that the Complaint clearly states a cause of action for municipal liability against Defendants.  In particular, Plaintiffs' complaint alleges: 1) the individual defendants were acting under color of law; 2) the individual defendants violated Mr. McGlothen's clearly established rights to receive a medical assessment, medical treatment and medical monitoring for his obvious and deteriorating condition; 3) Defendant ??? had a documented history of not knowing the law but was allowed to continue working; 4) Defendant ??? had a documented history of using excessive force but was allowed to continue working; 5) these actions were committed by the individual defendants pursuant to the policies, practices, and customs of the municipal defendants with respect to the training, education, supervision, monitoring of its employees with respect to the proper evaluation of detainees suffering under disabilities or conditions which require medical stabilization before incarceration, monitoring persons with

---

[35] Bright v. Gallia County, Ohio, 753 F.3d 639, 660 (6th Cir. 2014).

obvious medical needs, transporting persons with obvious medical needs, and handling persons with disabilities, with deliberate indifference and reckless disregard to the welfare of inmates, including Mr. McGlothen; and 5) that these policies, practices, and customs were the moving force behind the violations of Mr. McGlothen's constitutional rights.  Accordingly, Plaintiffs have pled sufficient facts and identified numerous policies, practices, and customs of Advanced with respect to dealing with medical issues of pre-trial detainees, tied these policies, practice and customs to Defendants, and pled that Mr. McGlothen's injuries and death resulted from the execution of these policies, practices, and customs.  Nothing more is required at this stage of the litigation without the aid of discovery.

## IV.  Defendants' Plea Of Immunity Cannot Be Sustained

Qualified immunity only "protects officials acting under color of state law 'from liability of civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[36] Further, Defendants are only entitled to qualified immunity so long as their actions were objectively reasonable.[37]

In *Tolan*, the Supreme Court addressed the proper manner to evaluate summary judgment motions when qualified immunity is asserted.[38]  In reversing the Fifth Circuit, the Supreme Court noted "the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the

---

[36] *Batiste v. Theriot*, 458 Fed.Appx. 351, 354 (5th Cir. 2012).
[37] *Id.*
[38] *Tolan v. Cotton*, 134 S.Ct.1861 (2014),

standard;" "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions;" and noting that the "Fifth Circuit failed to view the evidence at summary judgment in the light most favorable to Tolan with respect to the central facts of this case. By failing to credit evidence that contradicted some of its key factual conclusions, the court improperly 'weigh[ed] the evidence' and resolved disputed issues in favor of the moving party.[39]

The defense of qualified immunity is premised on the assumption that this standard would permit insubstantial lawsuits against individuals to be quickly terminated.[40]  The first prong of qualified immunity is whether "the official violated a statutory or constitutional right"; and the second prong is whether "the right was 'clearly established' at the time of the challenged conduct."[41] The Court need not address these two elements in order.[42]

To demonstrate that the law is "clearly established," a plaintiff must show that the official had fair warning of what the law required.  One way to show 'fair warning' is by pointing to a prior case with similar facts, but that is not the only way to do so.[43] "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[44]   Accordingly, "the salient question" is whether the officers had "fair warning that their alleged [conduct] was

---

[39] *Id*. at 1866.
[40] *Harlow v. Fitzgerald,* 457 U.S. 808, 814-815 (1982).
[41] *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2080 (2011).
[42] *Id*. (quoting *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009).
[43] *See, e.g., United States v. Lanier*, 520 U.S. 259, 271 (1997); *Hope v. Pelzer*, 122 S. Ct. 2508 (2002).
[44] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

unconstitutional" based on the current status of the law at the time of the incident.[45] Accordingly, as long as the contours of the constitutional rights asserted by the Plaintiff were clearly established as of April 5, 2020, the defense of qualified immunity must fail.

If there are questions of fact pertaining to the material events which indicate that Plaintiffs' evidence could reasonably support a jury's finding that the defendant violated a clearly established right, the District Court must deny summary judgment.[46] Whereas with a Rule 12(b)(6) Motion to Dismiss, the burden is less for the plaintiff as the plaintiff has not yet enjoyed the benefit of discovery as is the case with a motion for summary judgment.  Plaintiffs have satisfied their burden of pleading sufficient facts such that a defense of qualified immunity cannot be sustained.

## V.     Plaintiffs' Claims Against Defendants In Their Official Capacities Should Proceed

Defendants are correctly named in both their individual and their official capacities. It was the City of Shreveport's policies and/or customs which played a role in the Defendants' violations of federal law. Additionally, Defendants are named in their personal capacities for their liability for actions taken under color of state law.[47] While the City of Shreveport is a named Defendant, Defendants fail to allege on what basis the official capacity claims should be dismissed.

## VI.    Plaintiffs Waive Their Eighth Amendment Claims

---

[45] *Hope v. Pelzer*, 122 S. Ct. 2508, 2515-2516 (2002).
[46] *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015); *Thompson v. City of Lebanon, Tennessee*, 831 F.3d 366, 370 (6th Cir. 2016).
[47] 497 F.Supp.3d 122, 149.

## VII.    Plaintiffs State A *Monell* Claim

Local governments, such as the City of Shreveport, "may be sued for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the government's official decision-making channels."[48] Pursuant to *Monell*, Defendants are liable where the constitutional deprivation arises from a governmental action.[49] Further, the deprivations complained of herein arise out of official policy.

"Generally, municipal liability may be based upon a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."[50]

To prevail on a municipal liability claim for failure to train, supervision or discipline, a plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed by the officers; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.[51] This Court should find genuine issues of material fact exist regarding Defendant Raymond and Defendant City's failure to train and supervise because the policies and training were inadequate for the tasks performed by their officers; the inadequacies were a result of the deliberate indifference of Defendant Raymond and Defendant City; and the inadequacies were the underlying cause of Mr.

---

[48] 436 U.S. 658, 692.
[49] *Id*. at 658.
[50] *Keller v. Attala Cty. City of Kosciusko, Mississippi*, 2018 WL 615681, at *7 (N.D. Miss. Jan. 29, 2018).
[51] *Marcilis v. Township of Redford*, 693 F.3d 589 (6th Cir. 2012).

McGlothen's injuries.

A municipality can be liable for a failure to train if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." [52] :

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force [citation omitted] can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights. [53]

Under this municipal liability standard, there is no need to prove a widespread pattern of improper behavior. [54]  *Brown* left no doubt that *Canton* can impose municipal liability in situations like the one at bar:

> In *Canton*, we did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability. 489 U.S., at 390, and n.10, 109 S.Ct., at 1205, and n.10 ("[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious ... that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need").  *Id.* at 409

Pursuant to *Canton*, when a constitutional violation is such a "highly predictable consequence" of a failure to train or supervise, a municipality can be found to have been

---

[52] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)
[53] *Canton* at 390, n.10.
[54] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409-410 (1997).

deliberately indifferent to its citizens' constitutional rights. [55] Failing to provide training to officers that it is improper to abuse handcuffed prisoners is an obvious case where deliberate indifference can be inferred.

The absence of policies may give also rise to *Monell* liability.  In *Natale*, a diabetic inmate sued a prison medical provider for failing to provide insulin which led to stroke and contended that the entity defendant had not established appropriate policies for ensuring the provision of important medications.[56] Reversing a grant of summary judgment, the Court ruled that "[a] reasonable jury could conclude that *the failure to establish a policy* to address the immediate medication needs of inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs."[57]  Other circuits have reached similar results. *See Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185, 1190 (9th Cir. 2006) (noting that "[a] policy can be one of action or inaction" and finding triable issue as to whether failure to implement policies constituted deliberate indifference); *Warren v. Dist. of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (allowing *Monell* claim to proceed on ground that "faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction"); *Sims v. Mulcahy*, 902 F.2d 524 (7th Cir. 1990) ("[I]n situations that call for procedures, rules or regulations,

---

[55] . *Id.* at 409.  *See also Cherrington v. Skeeter*, 344 F.3d 641, 646 (6th Cir. 2003) (holding that a city's failure to train its officers on warrantless arrests was so likely to result in constitutional violations that the city's failure amounted to deliberate indifference); *Gregory v. City of Louisville*, 444 F.3d 725, 754 (6th Cir. 2006) (holding that failure to provide any training on how to handle exculpatory materials has a "highly pre-dictable consequence" of constitutional violations).

[56] *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575 (3d Cir. 2003).

[57] *Id.* at 585 (emphasis added).

15

the failure to make policy itself may be actionable".); *Avery v. Burke Cty.*, 660 F.2d 111, 114 (4th Cir. 1981) (holding that conduct of county entities "may be actionable if their failure to promulgate policies and regulations rose to the level of deliberate indifference").

Failing to have adequate use of force policies and to train officers not to abuse handcuffed detainees is an obvious case where deliberate indifference can be inferred.  In this case, Plaintiff requested through a public records request all documents pertaining to the actual training provided to the Defendant Officers.  However, other than a couple of training certificates, Defendant City has produced no documents which reflect the actual training provided to its officers.  Based on the IAB history of Defendant LeClare and Defendant Ross, it is undisputed that Defendant City had notice of the inadequacy of its training programs as remotely as 2016.

It is also well established that liability under § 1983 will lie against a municipality which fails to adequately supervise, investigate, and discipline police officers. *See Bordanaro v. McLeod*, 871 F.2d 1151 (9th Cir. 1989); *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207 (11th Cir. 1993); *Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir. 1991); *McRorie v. Shimoda*, 795 F.2d 780 (9th Cir. 1985); *Grandstaff v. City of Borger, Texas,* 767 F.2d 161, 171 (5th Cir. 1985);  *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985); *Harris v. City of Pagedale*, 821 F.2d 499, 508 (8th Cir. 1987), Avery and Rudovsky, *Police Misconduct: Law and Litigation,* §§ 3.5(b)(3), 3.5(b)(7) (1995 ed.). In *McRorie*, the Court of Appeal addressed the issue of the failure to discipline officers as evidencing an official

16

policy or custom.[58]  As Ninth Circuit opined:

> McRorie alleges that guards seriously injured him and twenty-eight other prisoners during the shakedown and that Sergeant Dunn was acting under orders from his superiors.  If proved, these acts reflect a "disposition to disregard human life and safety so prevalent as to  be... policy or custom.  *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 171 (5th Cir.  1985); ...  *See also Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985) (supervisor may be held liable for police shooting of civilian because of policy of allowing excessive force).  Policy or custom may be inferred if, after the shakedown, the prison officials took no steps to reprimand or discharge the guards, or if they otherwise failed to admit       the guards conduct was error.  *Id.* at 783-784.

Further, the Fifth Circuit Court of Appeal opined in *Grandstaff*:[59]

> The disposition of the policy maker may be inferred from his conduct after the events of that night.  Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error.  The officers testified at trial that no changes had been made in their policies.  If that episode of such dangerous recklessness obtained so little  attention and action by the City policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City of Borger.  If prior  policy  had been violated, we would expect to see a different action.  If what the officers did and failed to do on August 11, 1981 was not acceptable to the police chief, changes would have been made....

> As subsequent conduct may prove discriminatory motive in a prior employment decision, [citations omitted], and subsequent acts may tend to prove the nature of a prior conspiracy, [citations  omitted],  so  the  subsequent  acceptance  of dangerous recklessness by the policymaker tends to  prove  his  preexisting disposition and policy.

> After August 11, 1981, we all know of the dangerous recklessness of that police force.  If the police chief had not known and approved of it beforehand, we would expect a change when he, too, learned the facts.  But there is no sign of any concern except that the City  avoid liability.  The jury was entitled to infer that the conduct on the 6666 Ranch   demonstrated the policy of the Borger city police force as approved by its policymaker, both before and after that time.[60]

---

[58] *McRorie v. Shimoda,* 795 F.2d 780 (9th Cir. 1985).

[59] *Grandstaff v. City of Borger, Texas*, 767 F.2d 161 (5th Cir. 1985).

[60] *Id.* at 171.

Defendant City's failure to have proper policies, training and supervision of its officers reflects a complete and total disregard of its constitutional obligations and creates an atmosphere where improper conduct by untrained officers was not even required to be reported or documented and was an underlying cause of the violation of Plaintiff's constitutional rights and damages. That the Defendant Officer present at the emergency room with Mr. McGlothen provided materially false information to the emergency room staff creates a presumption of Defendants' deliberate indifference for Mr. McGlothen's medical needs and well-being.

Plaintiffs clearly and unambiguously plead in their complaint that it was the policies, practices, and/or customs of the City of Shreveport that lead to the constitutional deprivations at issue herein. Specifically, the factual allegations in Plaintiffs' Second Cause of Action specify what policies, practices, and customs lead to the deprivation of Mr. McGlothen's constitutional rights.

## VIII.   Plaintiffs State Claims Of Negligent Training And Supervision And Claims Of Supervisor Liability

Causes of Action Three through thirty-Eight do not merely recite "legal conclusions." While all of the factual allegations are sufficient to give rise to a claim, Defendants concede in their Answer that Defendant Johnson responded to the first call involving Mr. McGlothen and was, at that time, advised that Mr. McGlothen was not taking his prescribed medications for mental illness.[61] According to the Defendants' Answer, Defendant Ross responded to the second call involving Mr. McGlothen and his

---

[61] Defendants' Answer, Paragraph 27.

mental health breakdown.[62] During the third, and final, encounter, at least two of the Defendants, Ross and Johnson, knew of Mr. McGlothen's illness and present condition and chose to engage him in a violent physical altercation which has been in violation of accepted police training and procedure for decades.

Not only was the physical altercation contraindicated in this scenario, but the use of both chemical agents and conducted energy weapons upon Mr. McGlothen[63] violated accepted police training and procedures. Further, Defendant Officers used a conducted energy weapon on Mr. McGlothen in violation of acceptable police practice.

Engaging a subject exhibiting open and obvious signs of respiratory distress in a violent altercation violates accepted police training, practice, and policy. The use of chemical agents in conjunction with conducted energy weapons against Mr. McGlothen was done with deliberate indifference for his safety and well-being to such a gross extent that they risked him catching on fire.  Defendants exacerbated Mr. McGlothen's condition and suffering by engaging him in a violent altercation.

It has been clearly established since 1995 that officers have a constitutional obligation to protect a suspect from another officer's unconstitutional actions and that the failure to intervene may subject an officer to liability under 42 U.S.C. Section 1983.[64] Under Fifth Circuit law, an officer who is present at the scene and does not take

---

[62] Defendants' Answer,  Paragraph  28.
[63] Defendants' Answer,  Paragraphs 56 and 57.
[64] *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995); *Harris v. Chanclor,* 537 F.2d 203, 205–06 (5th Cir.1976); *Smith v. Dooley*, 591 F.Supp. 1157, 1168 (W.D.La.1984), *aff'd,* 778 F.2d 788 (5th Cir.1985); *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 205 n. 3 (1st Cir.1990), *cert. denied,* 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991).

reasonable measures to protect a suspect from another officer's unconstitutional actions may be liable pursuant to 42 U.S.C. § 1983.[65]

## IX.  Defendants' Actions Were Not Objectively Reasonable And Were Deliberately Indifferent

The factual allegations asserted by the Plaintiffs, when accepted as true for purposes of the Rule 12(b)(6) motion, cannot logically be deemed objectively reasonable. Defendant Officers' actions prior to and subsequent to detaining Mr. McGlothen and securing him in handcuffs clearly and unambiguously demonstrate their deliberate indifference for his safety and well-being. By Defendants' own admission, Mr. McGlothen was initially placed in the back of a patrol unit "upside down."[66]

Plaintiffs have produced sufficient facts to withstand a motion to dismiss with respect to their claim of excessive force as a result of being beaten while handcuffed and denied medical care which are violations of Mr. McGlothen's clearly established rights under the Fourth Amendment.  Defendant Officers did strike Mr. McGlothen in his face after he was in handcuffs.

The Fifth Circuit has held that striking a handcuffed prisoner violates clearly established law.

1.  *Scott v. White*, 2019 WL 122055, at *14 (W.D. Tex. Jan. 7, 2019) (Incident Date 2/20/15) (Under those circumstances, clearly established law in the Fifth Circuit as of February 2015 was sufficient to give White notice that his White's subsequent uses of force after taking Scott down were excessive to the need.... *see also Darden*, 880 F.3d at 729–32 (noting a fact dispute concerning whether the plaintiff had resisted being handcuffed, acknowledging that a reasonable jury could find that the plaintiff had not actively resisted, and holding that the

---

[65] *Harris v. Chanclor*, 537 F.2d 203, 205–06 (5th Cir.1976); *Smith v. Dooley*, 591 F.Supp. 1157, 1168 (W.D.La.1984), *aff'd*, 778 F.2d 788 (5th Cir.1985).
[66] Defendants' Answer,  Paragraph  59.

law clearly established as of May 2013 that "a constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest.") (*citing Ramirez*, 716 F.3d at 377–78; *Newman*, 703 F.3d at 762–63; *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008)). As in *Darden*, whether clearly established law would have given White fair notice that his conduct was unreasonable depends on the resolution of disputed facts about how a reasonable officer would have viewed Scott's conduct. And as in *Darden*, if the facts are viewed in the light most favorable to Scott, clearly established law would have given White fair notice that his uses of force after taking Scott to the ground were objectively unreasonable. White is not entitled to qualified immunity at this stage in the litigation;

2. *Lozano v. Ortega*, 2014 WL 6611595, at *6 (W.D. Tex. Nov. 19, 2014) (Incident Date 6/24/04) (As relevant here, the Fifth Circuit has held on numerous occasions that an officer violates clearly established Fourth Amendment law when he or she inflicts physical harm upon a suspect that is handcuffed or otherwise subdued. *See, e.g., id.* ("[T]he [Fourth Amendment reasonableness] test is clear enough that [Officer] Galloway should have known that he could not forcefully slam Bush's face into a vehicle while she was restrained and subdued ."); *Brown v. Lynch,* 524 F. App'x 69, 81 (5th Cir.2013) (noting that in August 2009, "the law was clearly established in this circuit that repeatedly striking a non-resisting suspect is excessive and unreasonable force"); *Ramirez v. Martinez,* 716 F.3d 369, 379 (5th Cir.2013) (officer violated clearly established law where he tased non-resisting suspect twice, including once when he was handcuffed and subdued while lying face down on the ground); *see also Davis v. Evangelist,* Civil Action No. 06–3037, 2009 WL 2447897, at *5 (E.D.La. Aug.6, 2009) ("The law is 'clearly established' that a person has a right to not be punched and kicked in the head once subdued." (citing *Bush,* 513 F.3d at 501))

3. *Oliver v. Gaston,* 2006 WL 2805343, at *6 (S.D. Miss. Sept. 7, 2006) (Incident 10/10/03) Any reasonable official would know that it is unlawful conduct to repeatedly strike a prisoner who is handcuffed and unable to defend himself. However, Gaston maintains that his actions were objectively reasonable because he claims that in order to gain control of Oliver, he and the two transporting officers took Oliver to the ground…. However, Oliver's version of the facts and evidence is sharply different creating genuine issues of material fact. Thus, this Court is precluded from granting summary judgment regarding Gaston's qualified immunity defense.

4. *Malone v. City of Fort Worth, Tex.,* No. 4:09-CV-634-Y, 2014 WL 5781001, at *13–14 (N.D. Tex. Nov. 6, 2014) (Incident Date 7/23/09) (Calton accuses Officer Shupe of striking him in the head with a metal object, repeatedly slamming his head into the hood of a police cruiser, and painfully grabbing his testicles all

while Calton was restrained in handcuffs. Calton also claims that Officer Puckett was present during the attacks and could have stopped them, creating liability for Officer Puckett's alleged failure to intervene when in a position to halt an ongoing constitutional violation. *See, e.g., Harris v. Chanclor,* 537 F.2d 203, 206 (5th Cir.1976). While Calton's hallucinations may be a likely explanation for his belief that these officers committed these acts, or even that these acts occurred at all, the Court cannot resolve such fact questions on summary judgment. *See Johnston v. City of Houston,* 14 F.3d 1056, 1058–60 (5th Cir.1994) (stating that summary judgment establishing qualified immunity is inappropriate where sharply contrasting versions of the facts exist unless the Calton's version fails to implicate clearly established law). Accordingly, Officers Puckett and Shupe are not entitled to summary judgment.

## X.  Plaintiffs Sufficiently Plead Violations Of The Americans With Disabilities Act[67] And The Rehabilitation Act

Shreveport Police Department's General Order 606.23 requires its officers to comply with the Americans with Disabilities Act. Specifically, officers are required to recognize "characteristics common to disabilities and those associated with antisocial or criminal behavior and reactions to chemical substances." As set forth in the Complaint, Mr. McGlothen's mental disabilities were open and obvious to all Defendant Officers. Defendant Officers refused to comply with the policy of the Shreveport Police Department and, in doing so, violated the Americans with Disabilities Act.

## XI.  Supplemental Jurisdiction.

Plaintiffs have brought state law claims against Defendants under state law. Plaintiffs acknowledge that this Honorable Court has discretion to accept or decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.  However, the Plaintiffs submit that in the interests of judicial economy, this Honorable Court should

---

[67] 42 U.S.C. § 12101

retain supplemental jurisdiction over Plaintiffs' state law claims.  In the event that this Court declines to exercise supplemental jurisdiction, Plaintiffs request that this Honorable Court dismiss Plaintiffs' state law claims against Defendants without prejudice.

**XII.    Preserve Defenses**

Plaintiff submits that any defenses not specifically argued in the Motion to Dismiss are deemed waived.  F.R.C.P. 12(b)(6).

**XIII.    Conclusion**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs move this Honorable Court for an Order denying the Motion to Dismiss filed by Defendants and for all such further relief, both general and specific, to which they may be entitled under the premises.

Respectfully submitted,

The Cochran Firm
Trials & Mass Torts

_____/s/Ashley L. Page___
James Carter (#26841)
Jeffrey A. Mitchell (#19711)
Ashley L. Page (#30285)
3850 N. Causeway Boulevard
Suite 1500
Metairie, Louisiana 70002
Tel. 504.612.7000
Fax 504.612.7001
jcarter@cochrantrials.com
jmitchell@cochranfirmnola.com
apage@cochranfirmnola.com

*Attorneys for Plaintiffs*

23