## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| TAMERA JONES, ET AL. | CIVIL ACTION NO. 21-690 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| AMERICAN ALTERNATIVE INSURANCE CORP., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion to dismiss, filed by Defendants the City of Shreveport (the "City"), Shreveport Police Chief Ben Raymond ("Raymond"), Shreveport Police Officers Treona McCarter ("McCarter"), Brian Ross ("Ross"), D'marea Johnson ("Johnson"), and James LeClare ("LeClare"), Shreveport Fire Chief Scott Wolverton ("Wolverton"), Shreveport Fire Captain Billy Glass ("Glass"), Shreveport Fire Engineer Joshua Yelvington ("Yelvington"), and Shreveport Firefighter Clint Richardson ("Richardson") (collectively, "Defendants"). Record Document 34. The motion has been fully briefed. For the reasons below, Defendants' motion to dismiss [Record Document 34] is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiffs are the surviving heirs of Tommie McGlothen, Jr. ("McGlothen"). According to Plaintiffs' amended complaint, on April 5, 2020, McGlothen died after a violent encounter with Shreveport Police Officers McCarter, Ross, Johnson, and LeClare (collectively, the "Police Officer Defendants"). Record Document 28. Plaintiffs allege that at about 5:29 p.m., McGlothen's father called police and requested assistance because McGlothen, a paranoid schizophrenic, was not on his medication and was experiencing a mental breakdown. *Id.* ¶ 15. Officer Johnson responded to the call. Plaintiffs, however, do not detail what happened after Officer Johnson arrived. *Id.*

At approximately 6:30 p.m., McGlothen had a second encounter with police. *Id.* ¶ 16. According to Plaintiffs, McGlothen was still in crisis and encountered Officer Ross. Plaintiffs, however, do not allege why or how Officer Ross encountered McGlothen. The complaint further states that Officer Ross handcuffed McGlothen without incident but then released him after a citizen declined to press charges.[1] *Id.*

Around 7:42 p.m., McGlothen had a third encounter with police. *Id.* ¶ 17. Plaintiffs contend that Officers McCarter, Ross, Johnson, and LeClare physically engaged McGlothen. *Id.* ¶ 19. However, Plaintiffs' complaint does not establish why the officers engaged McGlothen or whether the interaction was unprovoked. Plaintiffs maintain that during this encounter, the Police Officer Defendants struck McGlothen with a baton and punched, kicked, pepper sprayed, and tased him. Record Document 45 at 1. Specifically, Plaintiffs assert that Officer Ross pepper sprayed McGlothen, hit him with his baton, and tased him 6 times for 34 seconds total, 29 of which were continuous. Record Document 28 ¶¶ 20, 41, & 43. Additionally, Plaintiffs aver that Officer McCarter tased McGlothen, that Officer Johnson tased McGlothen three times, and that Officer LeClare punched McGlothen in the face. *Id.* ¶¶ 21, 44, 45, & 48.

After handcuffing McGlothen, Plaintiffs claim that Officers McCarter and LeClare punched him in the face and that Officer Johnson forcibly shoved him to the ground. *Id.* ¶¶ 44 & 46. Additionally, Plaintiffs allege that Officer LeClare slammed McGlothen on the hood of the police vehicle and elbowed him in the face. *Id.* ¶ 47.

At about 7:47 p.m., McGlothen was shoved into the police vehicle with "his head near the floorboard and his feet in the air." *Id.* ¶ 23. At some point, McGlothen became seated upright. At

---

[1] The Court surmises that Officer Ross was responding to a citizen complaint, but Plaintiffs' complaint fails to establish this fact.

approximately 7:58 p.m., Shreveport Fire Captain Glass, Shreveport Fire Engineer Yelvington, and Shreveport Firefighter Richardson (collectively, the "Responding Fire Defendants") arrived at the scene to assess officers for injuries. *Id.* ¶ 26. One of the Responding Fire Defendants gave one of the Police Officer Defendants a spit hood to put on McGlothen to stop him from spitting; one of the Police Officer Defendants placed the spit hood on McGlothen even though they had not decontaminated him after he was sprayed at least three times with pepper spray. *Id.* ¶¶ 26 & 28.

At approximately 8:05 p.m., McGlothen was removed from the police vehicle so that the Responding Fire Defendants could evaluate him. *Id.* ¶ 29. However, Plaintiffs allege that the Police Officer Defendants failed to disclose that they had used force on McGlothen. *Id.* ¶ 53. According to Plaintiffs, this evaluation was cursory and lasted only one minute and sixteen seconds. *Id.* ¶ 30. Soon after, the officers placed McGlothen back in the police vehicle and left him unattended. *Id.* ¶¶ 30, 31, 32, & 33.

Plaintiffs assert that at about 8:20 p.m., McGlothen stopped breathing in the back of the police car. *Id.* ¶ 32. Approximately 16 minutes later, one of the Police Officer Defendants noticed that McGlothen was unresponsive. *Id.* ¶ 33. The officers removed McGlothen from the vehicle and attempted to perform CPR until EMS arrived. *Id.* ¶ 35. McGlothen was then transported to Willis-Knighton North Hospital where it was discovered that McGlothen was severely acidotic, in severe shock, and hypotensive. *Id.* ¶ 38. Later that night, McGlothen died. *Id.* ¶ 39. Plaintiffs maintain that Defendants caused McGlothen to die from "metabolic acidosis, shock, and cardiac arrest." *Id.* ¶ 37.

After McGlothen's death, Plaintiffs claim that the Shreveport Fire Department and Shreveport Police Department did not timely launch an investigation into the responding officials' conduct surrounding McGlothen's death. *Id.* at 18–20. According to Plaintiffs, an internal affairs

review of the Responding Fire Defendants found that they had committed multiple violations of department policies. *Id.* On September 18, 2020, a Caddo Parish Grand Jury indicted Officers Ross, LeClare, McCarter, and Johnson on charges of malfeasance in office and negligent homicide. *Id.* ¶ 13. This suit followed.

Plaintiffs assert a multitude of federal and state law claims surrounding McGlothen's death. Defendants have filed a motion to dismiss in which they seek to dismiss all claims, and they assert qualified immunity as a defense against all individual capacity claims. Record Document 34.

## LAW & ANALYSIS

### I.    Motion to Dismiss Standard

In order to survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept as true all of the factual allegations in the complaint in determining whether a plaintiff has stated a plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A court may dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678–79. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

## II.   <u>Official Capacity Claims</u>

In suits brought under 42 U.S.C. § 1983, state officials can be sued in their individual and/or official capacities. Initially, Plaintiffs named Chief Raymond and Officers McCarter, Ross, Johnson, and LeClare in their official and individual capacities. *See* Record Document 1. However, in their amended complaints, Plaintiffs do not state whether they are seeking relief against any Defendant in his or her individual or official capacities. *See* Record Documents 28 & 45. When the pleadings do not clarify the capacity of the officer, a court may assume that Plaintiffs seek relief against the officials in both capacities.[2] *See Grafton v. Bailey*, No. CV 13-2940, 2018 WL 2325410, at *6 (W.D. La. May 22, 2018).

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999); *see Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91 (2017). An official capacity suit against a municipal officer duplicates a suit against the officer's municipality, *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)), and a district court faced with both claims may dismiss the official capacity claims. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (citing *Flores v. Cameron Cnty., Tex.*, 92 F.3d 258, 261 (5th Cir. 1996)). Therefore, the official capacity claims against Police Chief Raymond, McCarter, Ross, Johnson, LeClare, Fire Chief Wolverton, Glass, Yelvington, and Richardson are **DISMISSED WITH PREJUDICE** as duplicative of the municipal liability claims against the City.

---

[2] In their opposition brief, Plaintiffs state that Defendants are no longer named in their official capacities. Record Document 40 at 13. Nevertheless, because the pleadings do not clearly abandon the official capacity claims, the Court shall construe the pleadings to still assert such claims.

### III.   Unlawful Arrest Claim

Defendants move to dismiss any purported unlawful arrest claim. Plaintiffs contend that there is no unlawful arrest claim before the Court to dismiss. Considering this concession, Defendants' motion to dismiss any false arrest claim is **DENIED AS MOOT** as such claim is not before the Court.

### IV.   Fourth Amendment Excessive Force Claims

#### A. Qualified Immunity under § 1983

Section 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against any person acting under color of state law. 42 U.S.C. § 1983. Section 1983 does not create substantive rights but provides remedies to the rights established in the United States Constitution and other federal laws. *See Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To assert a claim for damages under this statute, a plaintiff must demonstrate "(1) a deprivation of a right secured by federal law[,] (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). Nonetheless, the doctrine of qualified immunity shields government officials from liability for claims against them in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This protection exists to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The issue of whether qualified immunity applies should be resolved at the earliest possible stage in the litigation. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). While qualified immunity is technically an affirmative defense, it is the plaintiff's burden to negate the defense once it has been raised. *Poole v. Cty. of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The issue of qualified immunity requires the Court to make a two-part inquiry: (1) whether the facts alleged or shown by the plaintiff demonstrate a violation of a constitutional right, and (2) if a violation has been established, whether the officer's actions were objectively reasonable in light of clearly established law at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court may begin its analysis of qualified immunity with either prong. *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014). If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. *See Tarver v. Cty. of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding that qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law")).

### B. Fourth Amendment Excessive Force Standard

The Fourth Amendment of the United States Constitution provides the "right to be free from excessive force during a seizure." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (quoting *Poole*, 691 F.3d at 627). The Fourth Amendment applies to state actors by virtue of the Fourteenth Amendment. *Morgan v. Chapman*, 969 F.3d 238, 245 (5th Cir. 2020). To prove an excessive force claim, Bagley must show "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. Cty. of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)). Excessiveness turns upon whether the degree of force used was reasonable in light of

the totality of the circumstances facing the officer in each case. *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). Relevant factors include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* These are known as the *Graham* factors. When deciding whether to use force, officers must determine "not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)). The reasonableness of the officers' conduct cannot be judged with the benefit of hindsight, but it must be assessed from the viewpoint of a reasonable officer on the scene at that very moment. *See Graham*, 490 U.S. at 396. Indeed,

> [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396–97 (internal citations and quotation marks omitted). "Excessive force claims are thus necessarily fact-intensive and depend on the facts and circumstances of each particular case." *Poole*, 691 F.3d at 628 (cleaned up). The facts must be judged objectively "without regard to [the officer's] underlying intent or motivation." *Graham*, 490 U.S. at 397.

Here, the Court finds that Plaintiffs have plausibly pled excessive force claims based on the following allegations: (1) Officer McCarter punched McGlothen in his face multiple times after he was secured in handcuffs; (2) Officer Johnson shoved McGlothen to the ground after he was secured in handcuffs; and (3) Officer LeClare slammed McGlothen on the hood of the patrol unit and elbowed him in the face after he was secured in handcuffs. Record Documents 28 ¶¶ 44, 46,

& 47; 45 at 1; *see also* Record Document 45-1, Disk 1, McCarter Video DVR 547, at 19:46:58 to 19:47:46.

It has been clearly established since at least 2013 that after handcuffing and subduing a suspect, it is unreasonable for an officer to strike an arrestee. *See Bush v. Strain*, 513 F.3d 492, 501–02 (5th Cir. 2008) (establishing that force must stop when arrestee is handcuffed and subdued); *Ramirez v. Martinez*, 716 F.3d 369, 378–79 (5th Cir. 2013) (same). Further, it is clearly established that striking an arrestee who is merely passively resisting arrest is unlawful. *Darden v. Cty. of Fort Worth, Tex.*, 880 F.3d 722, 731 (5th Cir. 2018); *Trammell*, 868 F.3d at 343; *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012).

Accordingly, Defendants' motion to dismiss is **DENIED** to this extent.

Notwithstanding the above conclusion, Plaintiffs have failed to plead enough facts to overcome Defendants' qualified immunity defense as to the use of force prior to handcuffing. Based on the complaint, the Court does not know why the officers encountered McGlothen the second or third time. The Court can surmise that the second encounter came from a citizen complaint because Plaintiffs allege that a citizen declined to press charges. More importantly, however, the complaint is bare of any detail as to the reason for the third encounter, which is alleged to be when the officers used excessive force. Additionally, the complaint does not state the level of resistance, if any, offered by McGlothen. Without this information, the Court is unable to assess "the need for force" or "the relationship between the need and the amount of force used." *Deville*, 567 F.3d at 167 (internal quotation marks and citation omitted). Although Plaintiffs successfully pled that the Police Officer Defendants used a substantial amount of force throughout

the entire encounter with McGlothen, the complaint stops short of establishing facts to show that the initial amount of force was disproportionate to the need.[3]

Whether or not the Police Officer Defendants' initial use of force was warranted, "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 277 (5th Cir. 2015). "To stay within constitutional bounds, an officer must use force with measured and ascending actions that correspond to a suspect's escalating verbal and physical resistance." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 332–33 (5th Cir. 2020) (cleaned up). Plaintiffs have not clearly alleged at what point each individual officer used force and the level of resistance McGlothen offered at such time, if any. Although Plaintiffs make alarming allegations about the sheer amount of force used on McGlothen when Defendants outnumbered him four to one, the Court cannot ascertain at what point Plaintiffs contend the force became clearly excessive or unreasonable. Thus, Plaintiffs cannot overcome the Police Officer Defendants' qualified immunity defense as to the force used before McGlothen was handcuffed. As stated in more detail below, the Court will allow Plaintiffs an opportunity to amend their complaint.

**V.     Violation of Due Process or Summary Punishment**

The Police Officer Defendants move to dismiss Plaintiffs' Fourteenth Amendment claims to the extent they mirror the claims that the Police Officer Defendants used excessive force.

---

[3] The Court notes that Plaintiffs have not pincited to any portion of a video for the Court to observe. The link attached to the second amended complaint is an invalid hyperlink. The portion of the video cited by Defendants does not capture the encounter, though the audio does capture loud yelling. Record Document 45-1, Disc 1, DVR 567, starting at 19:42. On its own review, the Court reviewed the videos attached in Exhibit 1 to the second amended complaint around the 7:42 p.m. (19:42) mark. *See* Record Document 45-1. From the Court's review, it does not appear that any of the videos show the punching, kicking, baton strikes, use of pepper spray, or use of the taser, as stated by Plaintiffs. If such video is in the record, the Court will require Plaintiffs to provide more accurate pincites.

Indeed, Plaintiffs' allegations supporting these claims appear duplicative of their Fourth Amendment excessive force claims. Because the force used on McGlothen related to his seizure, the Fourth Amendment standard is the proper legal standard to evaluate Plaintiffs' excessive force claims, not the Fourteenth Amendment standard, which is applicable to pre-trial detainees. *See Graham v. Connor*, 490 U.S. 386, 388 (1989); *Morgan*, 969 F.3d at 245 (stating that the Fourth Amendment is applicable to state actors via the Fourteenth Amendment); *Valencia v. Wiggins*, 981 F.2d 1440, 1444 (5th Cir. 1993); *Malbrough v. Stelly*, 814 F. App'x 798, 801 n.7 (5th Cir. 2020) ("And when a claim is properly analyzed under the Fourth Amendment, the Fourteenth is inapplicable."). Accordingly, Plaintiffs fail to state a claim for excessive force under the Fourteenth Amendment standard; these claims are **DISMISSED WITH PREJUDICE**.

## VI.   Denial of Equal Protection under the Law

Plaintiffs accuse the Police Officer Defendants and Responding Fire Defendants of denying McGlothen equal protection under the law in violation of the Fourteenth Amendment. "The Equal Protection Clause directs that persons similarly situated should be treated alike." *Anokwuru v. Cty. of Houston*, 990 F.3d 956, 965 (5th Cir. 2021) (citation omitted). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that "(a) a state actor intentionally discriminated against [him] because of membership in a protected class" or "(b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Tex. Dep't of Ins.--Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (internal quotation marks and citations omitted). "[I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (citation omitted).

Here, Plaintiffs have alleged that McGlothen had a severe mental illness—paranoid schizophrenia—and that at least Officers Ross and Johnson were aware that he had a mental illness and was not on his medication. Record Document 28 ¶¶ 15 & 18. Although Defendants' alleged knowledge of McGlothen's mental illness is relevant to Plaintiffs' excessive force claims, Plaintiffs have failed to allege facts to show that any defendant "intentionally discriminated" against McGlothen because of his mental illness, nor have Plaintiffs alleged facts to show that McGlothen was "intentionally treated differently from others similarly situated." *Gibson*, 700 F.3d at 238. Accordingly, Plaintiffs have failed to state a claim for a violation of Equal Protection pursuant to the Fourteenth Amendment. Plaintiffs may amend their complaint regarding this claim.

## VII.  Prescription of Claims against Shreveport Fire Defendants

Defendants move to dismiss the claims against the Shreveport Fire Defendants based on prescription. In § 1983 suits, federal courts borrow the relevant state's statute of limitations—i.e., Louisiana in this case. *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994). Louisiana applies a one-year prescriptive period for delictual actions, which encompass § 1983 suits. La. Civ. Code art. 3492; *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989). "[T]he date a § 1983 claim accrues is governed by federal law, not state law." *Campos v. Cty. of Natchitoches*, 795 F. App'x 933 (5th Cir. 2020) (quoting *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002)). "The limitations period begins to run when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Hitt*, 301 F.3d at 246 (citation omitted). Here, the parties do not generally dispute that the alleged wrongful conduct and McGlothen's death both occurred on April 5, 2020, and that Plaintiffs had to file their claims by April 5, 2021. The parties dispute whether prescription was interrupted or tolled under equitable principles.

Plaintiffs timely filed their initial complaint against the City, American Alternative Insurance Corporation, Chief Raymond, and Officers Ross, Johnson, LeClare, and McCarter. Record Document 1. On June 25, 2021, Plaintiffs filed a motion to amend their complaint, which the Court granted on July 1, 2021; in the amended complaint, Plaintiffs for the first time named Fire Chief Wolverton, Fire Captain Glass, Fire Engineer Yelvington, and Firefighter Richardson as defendants. *See* Record Documents 16, 27, & 28. Although Plaintiffs' claims against the Fire Defendants are prescribed on their face, the amended complaint clearly asserts that the Fire Defendants were joint tortfeasors. Under Louisiana law, the filing of suit against one joint tortfeasor interrupts prescription against all joint tortfeasors. La. Civ. Code art. 2324(C); *Miller v. Mancuso*, 388 F. App'x 389, 391 (5th Cir. 2010). Prescription therefore was interrupted against the Fire Defendants when Plaintiffs timely filed their initial complaint.[4] La. Civ. Code art. 2324(C); *see Miller*, 388 F. App'x at 391; *see also* Fed. R. Civ. P. 15(c)(1)(A).

## VIII.   Failure to Provide Medical Care

Plaintiffs assert that the Police Officer Defendants and Responding Fire Defendants failed to provide McGlothen medical care in violation of the Fourteenth Amendment. "The Fourteenth Amendment guarantees pretrial detainees a right not to have their serious medical needs met with deliberate indifference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (internal quotation marks

---

[4] The Court notes "where no liability is found on the part of a timely sued alleged tortfeasor, then prescription is not interrupted as to untimely sued tortfeasors, as no joint or solidary obligation exists." *Miller*, 388 F. App'x at 391 (quoting *Gallina v. Hero Lands Co.*, 2003-0331 (La. App. 4 Cir. 10/7/03); 859 So. 2d 758, 767). In other words, if Plaintiffs' claims fail on the merits against the defendants named in the initial complaint, Plaintiffs' claims against the Fire Defendants would be considered untimely, unless another theory saves their claims. Plaintiffs advance two such theories: the Louisiana doctrine of *contra non valentum* and relation back pursuant to Federal Rule of Civil Procedure 15(c)(1)(C). The Court need not decide whether *contra non valentem* applies at this time. However, Rule 15(c)(1)(C) is inapplicable to this case because "[f]ailing to identify individual defendants cannot be characterized as a mistake." *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 471 (5th Cir. 2019).

and citations omitted). "To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official actually drew that inference." *Id.* (internal quotation marks and citations omitted). Similar to the Fourth Amendment claims, Defendants have asserted qualified immunity as a defense.

As to the Police Officer Defendants, the Court finds that Plaintiffs have plausibly pled a claim for the failure to provide adequate medical care. Here, Plaintiffs allege that the Police Officer Defendants tased McGlothen at least nine times, doused him with pepper spray, and severely beat him. Plaintiffs then accuse the Police Officer Defendants of putting a spit hood on McGlothen without first cleansing him of the pepper spray. Although the Police Officer Defendants summoned paramedics, Plaintiffs contend that "Defendant Officers did not communicate to any EMS personnel the details or extent of the physical and violent encounter with Mr. McGlothen[,] so they were unable to properly evaluate him." Record Document 28 ¶ 53.

After the paramedics departed, Plaintiffs claim that the Police Officer Defendants left McGlothen unattended in the back of a police vehicle for an extended period of time to allegedly complete paperwork. Eventually, an officer realized that McGlothen was unresponsive, and the officers removed him from the vehicle and attempted to perform CPR. Sometime after, McGlothen was transported to Willis-Knighton North Hospital where he died.[5] *Id.* ¶ 38. Plaintiffs allege that the force used on McGlothen coupled with the failure to provide medical care caused him to suffer "metabolic acidosis, shock, cardia arrest, and death." *Id.* ¶ 39.

---

[5] According to Plaintiffs, an unnamed officer lied to ER personnel by stating that McGlothen was only exposed to a taser three times. Record Document 28 ¶ 52. When amending their complaint, Plaintiffs should clarify whether this allegation is directed at one of the Police Officer Defendants.

Based upon the above facts, Plaintiffs have plausibly alleged that the Police Officer Defendants were deliberately indifferent to McGlothen's medical needs. Accepting all the facts in the complaint as true, a jury could reasonably conclude that (1) the Police Officer Defendants violently tased, pepper sprayed, and beat McGlothen; (2) the Police Officer Defendants did not bother to decontaminate McGlothen after pepper spraying him and then placing a spit hood on him; (3) that it was obvious that the amount of force used on McGlothen would require prompt medical attention; and (4) the Police Officer Defendants withheld information from responding EMS such that medical personnel could not properly treat McGlothen. From these facts, it is plausible that the "Officers were either aware or should have been aware, because it was so obvious, of an unjustifiably high risk to [McGlothen's] health," did not provide him prompt medical care, and "even misstated [or failed to disclose] the severity of [McGlothen's] condition to those who could have" helped. *Dyer*, 964 F.3d at 383–85 (citing pre-2020 cases for clearly established law). Thus, Plaintiffs have successfully overcome the Police Officer Defendants' qualified immunity defense at the motion to dismiss stage.

However, the facts alleged against the Responding Fire Defendants are insufficient to overcome their defense of qualified immunity. Plaintiffs assert that the Responding Fire Defendants examined McGlothen for about one minute and sixteen seconds without removing the spit hood. Further, Plaintiffs aver that the Responding Fire Defendants were found to have violated multiple City policies by an internal affairs review. Although the violation of City policy can be some evidence of deliberate indifference, it is not dispositive because "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). "Rather, [a] [plaintiff] must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or

engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Arenas v. Calhoun*, 922 F.3d 616, 620–21 (5th Cir. 2019).

Unfortunately for Plaintiffs, the cursory review of McGlothen and violation of department policy may establish negligence, but they do not establish that the Responding Fire Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and (2) [they] actually drew that inference." *Dyer*, 964 F.3d at 380. Indeed, the Responding Fire Defendants were not at the scene when the Police Officer Defendants used force. Further, Plaintiffs allege that the Police Officer Defendants withheld information from the Responding Fire Defendants about what happened to McGlothen. Plaintiffs do not alternatively plead facts to establish the Responding Fire Defendants' subjective knowledge or that McGlothen's condition was so obvious that they showed a "wanton disregard" to his "medical needs." *Gobert*, 463 F.3d at 346. Plaintiffs thus have failed to plead facts to overcome the Responding Fire Defendants' qualified immunity defense.

Accordingly, Defendants' motion to dismiss is **DENIED** as to the Police Officer Defendants' alleged deliberate indifference to medical care. Although the Court concluded that Plaintiffs have failed to state a claim against the Responding Fire Defendants, they will be afforded an opportunity to amend their complaint as to this claim.

## IX.  Civil Conspiracy Claims

In Defendants' motion to dismiss, they request for the Court to dismiss any conspiracy claim. "To establish a civil conspiracy claim under section 1983, [Plaintiffs] must [allege] . . . that the defendants acted jointly and that some overt act that was done in furtherance of the conspiracy resulted in the deprivation of a constitutional right." *Latiolais v. Cravins*, 484 F. App'x 983, 988–89 (5th Cir. 2012) (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)). The elements of a civil

conspiracy claim are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Wackman v. Rubsamen*, 602 F.3d 391, 408 (5th Cir. 2010) (citation omitted).

Here, Plaintiffs have plausibly alleged that certain Police Officer Defendants violated McGlothen's constitutional right to be free from excessive force and constitutional right to adequate medical care. Plaintiffs also contend that the Police Officer Defendants thereafter conspired to cover up their misconduct. Unfortunately for Plaintiffs, their complaint does not state any facts to support their conclusory allegation that the Police Officer Defendants participated in a conspiracy. Plaintiffs have not alleged that the state actors had a preexisting agreement to batter McGlothen, deny him medical treatment, or cover up their actions. *See Whitehurst v. Wright*, 592 F.2d 834, 440 (5th Cir. 1979). "Allegations that the officers conspired to cover-up misconduct" after their actions "do not alone point to a constitutional violation." *Bright v. Cty. of Killeen, Tex.*, 532 F. Supp. 3d 389, 401 (W.D. Tex. 2021). Notably, in their opposition brief, Plaintiffs do not cite any law or paragraphs in their complaint upon which to base their conspiracy claim. Without more facts, the Court is unable to decipher when any purported conspiracy developed. Therefore, the Court concludes that Plaintiffs have not alleged sufficient facts to state a civil conspiracy claim against the Police Officer Defendants.

Plaintiffs also assert that the Responding Fire Defendants acted in concert to deny McGlothen medical care. However, the Court finds the allegations against the Responding Fire Defendants to be conclusory. More germane, Plaintiffs have failed to plausibly allege an underlying constitutional violation against the Responding Fire Defendants upon which to base a conspiracy claim. *Jackson v. Cty. of Hearne, Tex.*, 959 F.3d 194, 206 (5th Cir. 2020); *see* discussion *supra* Part.VIII.

Ultimately, in their complaints, Plaintiffs do not clearly allege when any of the named Defendants reached an agreement to cover up alleged misconduct. Based on the allegations in the complaint, it appears Plaintiffs believe the investigation after McGlothen's death was suspect. Record Document 28 at 18–20. However, "[a]fter death, one is no longer a person within our constitutional and statutory framework, and has no rights of which he may be deprived." *Whitehurst*, 592 F.2d at 440. Any purported conspiracy to cover up misconduct after McGlothen's death invokes the denial of Plaintiffs' own constitutional rights. *See Bright*, 532 F. Supp. 3d at 401 (citing *Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir. 1983)). However, Plaintiffs failed to plead a violation of their own constitutional rights. Plaintiffs are granted leave to amend their complaint regarding this claim.

**X.      Section 1985(3) Conspiracy Claims**

Defendants also move to dismiss Plaintiffs' conspiracy claims brought pursuant to 42 U.S.C. § 1985(3). To state a conspiracy claim under § 1985(3),

> a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. In so doing, the plaintiff must show that the conspiracy was motivated by a class-based animus.

*Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994) (citations omitted).

Plaintiffs make no specific argument as to this claim in their opposition brief. Instead, Plaintiffs lump their conspiracy claims into one general claim of conspiracy. Record Document 40 at 23–24. Because of the lack of argument as to this specific claim, the Court considers this claim to be abandoned. *Jackson*, 959 F.3d at 202 n.5. Moreover, this claim should be dismissed for the same reasons as Plaintiffs' § 1983 conspiracy claims and because Plaintiffs have failed to allege any facts to show that the "conspiracy was motivated by a class-based animus." *Hilliard*, 30 F.3d at 653.

Despite not making a specific argument regarding this claim, the Court will allow Plaintiffs to amend their complaint regarding this claim.

## XI.  *Monell* Claims

Again, § 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against any person acting under color of state law. 42 U.S.C. § 1983. The Supreme Court has held that municipalities such as the City are "persons" within the meaning of § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, a municipality cannot be sued under § 1983 based on a theory of *respondeat superior* for a constitutional tort committed by one of its employees. *Id.* at 691. A municipality is only responsible for a constitutional harm if the execution of one of its customs or policies caused the injury. *Id.* at 694.

To impose liability on a municipality under § 1983, a plaintiff must prove the existence of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy. *Piotrowski v. Cty. of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). Requiring a plaintiff to identify an official policy ensures that municipalities will only be held liable for constitutional violations that result from the decisions of government officials whose acts can be fairly attributed to those of the municipality itself. *Bryan Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997). To establish the existence of a custom or unofficial policy, a plaintiff must allege that the unconstitutional conduct occurred in cases other than his own or, in rare circumstances, that a final policymaker took a single unconstitutional action. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).  "A customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*, 237 F.3d at 581.

Unfortunately for Plaintiffs, their pleading regarding an official policy is conclusory and not supported by any facts. "Plaintiffs cannot prevail by styling their complaints about the specific injury suffered as" *Monell* claims. *Roberts v. Cty. of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). To state a *Monell* claim, Plaintiffs "must allege with specificity how a particular" policy—i.e., training program, supervision, investigation, discipline, etc.—"is defective." *Anokwuru*, 990 F.3d at 965 (internal quotation marks and citations omitted). "A plaintiff may do so by alleging that the municipality had notice of a pattern of similar violations, which were fairly similar to what ultimately transpired." *Id.* at 966 (internal quotation marks and citation omitted). However, Plaintiffs' complaint falls short of pleading any pattern or practice to show "that the City was deliberately indifferent to [McGlothen's] rights."[6] *Id.* The Court will allow Plaintiffs leave to amend their complaint regarding these claims.

## XII.   Supervisor Liability Claims

Plaintiffs' supervisor liability claims against Chief Raymond and Chief Wolverton appear to mirror their *Monell* claims regarding deficient policies or practices as it relates to officer training, investigation, discipline, etc. For the same reasons, Plaintiffs have failed to plead sufficient facts to impose supervisor liability upon Chief Raymond or Chief Wolverton. Plaintiffs may amend their complaint regarding these claims.

---

[6] Plaintiffs do plead that the Police Officer Defendants had prior disciplinary records. However, the alleged discipline does not appear to pertain to excessive force or the denial of medical care, except maybe the statement that Officer LeClare fired a gun, which he was not approved to carry, at a suspect. Additionally, the alleged disciplinary records also involve less incidents than other cases where this Court has found a valid *Monell* claim for inadequate officer discipline. *See Muslow v. Cty. of Shreveport*, 491 F. Supp. 3d 172, 189–98 (W.D. La. 2020); *Bagley v. Kolb*, No. CV 19-10, 2021 WL 3376830, at *13–16 (W.D. La. Aug. 3, 2021).

## XIII.   <u>State Law Claims</u>

Defendants contend that Plaintiffs' Louisiana law claims should be dismissed because they mirror the federal law claims. To a limited extent, Defendants are correct as to excessive force as a tort under state law, though Louisiana recognizes vicarious liability for torts. *See Deville*, 567 F.3d at 174 (citing *Brasseaux v. Town of Mamou*, 1999-1584 (La. 1/19/00); 752 So. 2d 815). Plaintiffs counter that they are not asserting state law claims that mirror their federal claims but instead are asserting negligence claims. Record Document 40 at 32. Indeed, Plaintiffs' complaint lists negligence as the cause of action, which encompasses a wide variety of claims, such as the failure to provide medical care, the failure to monitor, etc. Louisiana negligence claims are governed by a duty-risk analysis under Louisiana Civil Code article 2315, which requires the plaintiff to prove the following:

(1) the conduct in question was the cause-in-fact of the resulting harm;

(2) defendant owed a duty of care to plaintiff;

(3) the requisite duty was breached by the defendant;

(4) the risk of harm was within the scope of protection afforded by the duty breached.

*Stroik v. Ponseti*, 96-2897 (La. 9/9/97); 699 So. 2d 1072, 1077; *see Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (stating a fifth element: actual damages) (quoting *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095 (La. 3/10/06); 923 So. 2d 627, 633). As Defendants failed to address the Louisiana law negligence standard, the motion to dismiss must be **DENIED** because they have not shown their right to judgment as a matter of law.

## XIV.   <u>Leave to Amend</u>

It is the Plaintiffs' burden to allege particular facts that refute the qualified immunity defense. And even outside of the qualified immunity context, it is their burden to set forth direct

factual allegations to state plausible claims for relief. Plaintiffs have, quite simply, failed to carry their burden as to a majority of their claims. However, despite having twice amended their complaint, it is not clear to the Court that Plaintiffs have actually pled their "best case." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996). Thus, the Court will allow Plaintiffs a chance to amend. The amended complaint must set forth sufficient allegations to overcome Defendants' qualified immunity defense and establish plausible claims for relief. Failure to comply will expose Plaintiffs' claims to dismissal for the reasons discussed above. While the Court will allow Plaintiffs to amend their complaint, Plaintiffs may not amend their complaint regarding the claims that the Court dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [Record Document 34] is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** to the extent the following claims are dismissed with prejudice: Plaintiffs' excessive force claims under the Fourteenth Amendment standard and the official capacity claims against Police Chief Raymond, McCarter, Ross, Johnson, LeClare, Fire Chief Wolverton, Glass, Yelvington, and Richardson. It is **DENIED** in all other respects with the right to reurge upon Plaintiffs' filing of an amended complaint. Plaintiffs' amended complaint must be filed by **April 29, 2022**.

**THUS DONE AND SIGNED** this 31st day of March, 2022.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE