UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| TAMERA JONES, ET AL | * | CASE NO. 5:21-cv-690 |
| VERSUS | * | DISTRICT JUDGE FOOTE |
| CITY OF SHREVEPORT, ET AL | * | MAGISTRATE HORNSBY |

<u>MEMORANDUM IN SUPPORT OF</u>
<u>DEFENDANTS' PARTIAL MOTION TO DISMISS</u>

Respectfully submitted,

**CARMOUCHE, BOKENFOHR, BUCKLE & DAY**

BY:  _/s/ Nichole M. Buckle_
        Nichole M. Buckle, Bar No. 32113
One Bellemead Center
6425 Youree Drive, Suite 380
Shreveport, Louisiana 71105
Phone: (318) 629-0014
Fax: (318) 404-1571

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

Table of Contents ..................................................................................................... i

Table of Authorities ................................................................................................. ii

I.      Claims Asserted by Plaintiffs ......................................................................1

II.     Rule 12(b)(6) Standard ................................................................................4

III.    Plaintiffs' Claims Against the Individual Defendants (Count One) ...................5

       A.      Plaintiffs Cannot Maintain a Claim for Violation of Due Process or Summary Punishment ....................................................................................5

       B.      Plaintiffs Failed to State a Claim for Denial of Equal Protection ...........5

       C.      Plaintiffs' Allegations are Insufficient to State a Plausible Claim for Failure to Provide Medical Care Against the Fire Defendants .................7

       D.      Plaintiffs' Allegations are Insufficient to State a Claim for Conspiracy under § 1983 ...............................................................................................13

       E.      Plaintiffs' Allegations are Insufficient to State a Claim for Conspiracy under § 1985 ...............................................................................................14

IV.     Plaintiffs Failed to State a *Monell* Claim (Count Two) ...............................15

V.      Plaintiffs Failed to State Claim of Supervisor Liability Against Chief Raymond and Chief Wolverton (Count Three) ..............................................................23

VI.     Conclusion .................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Statutes:**

42 U.S.C. § 1983 ................................................................................................13, 14

42 U.S.C. § 1985 ................................................................................................14, 15

Fed. R. Civ. Proc. 12(b)(6) .......................................................................................4

U.S. Const. Amend. IV ..............................................................................................5

**Cases:**

*Adams v. City of Shreveport, et al,*
  269 Fed.Supp.3d 743, 766-67 (W.D.La. 2017) ...............................................22

*Anokwuru v. City of Houston,*
  990 F.3d 956, 963, 965 (5th Cir. 3/16/21) ...................................................6, 16

*Ashcroft v. Iqbal,*
  556 U.S. 602, 678, 768, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).....................4

*Baker v. Putnal,*
  75 F.3d 190, 199 (5th Cir. 1996) .....................................................................23

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007)...........................4

*Bright v. City of Killeen, Tex.,*
  2021 WL 1226559, *4, *8 (W.D.Tex. 3/31/21).................................................5

*Brown v. Bryan County,*
  219 F.3d 450, 457 (5th Cir. 2000) ...................................................................16

*Burgess v. Davis,*
  61 Fed.Appx. 919 (5th Cir. 2003)....................................................................12

*Cook v. Hopkins,*
  795 Fed.Appx. 906, 916 (5th Cir. 2019)............................................................6

*Connick v. Thompson,*
  563 U.S. 51, 62, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011)..............................22

*Dyer v. Houston,*
    964 F.3d 374, 381 (5th Cir. 2020) .................................................................12

*Estelle v. Gamble,*
    429 U.S. 97 (1979) ........................................................................................11

*Farmer v. Brennan,*
    511 U.S. 825, 846-48, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)...........................10, 11, 12

*Freeman v. Gore,*
    483 F.3d 404, 411 (5th Cir. 2007) .................................................................13

*Fusilier v. Landry,*
    963 F.3d 447, 463 (5th Cir. 2020) ...................................................................6

*Garcia v. City of Lubbock, Texas,*
    487 F.Supp.3d 555,577 (5th Cir. 2020) .............................................................12

*Goodson v. Corpus Christi,*
    202 F.3d 730, 736 (5th Cir. 2000) .................................................................13

*Green v. State Bar of Tex.,*
    27 F.3d 1083, 189 (5th Cir. 1994) .................................................................14

*Hare v. City of Corinth, Miss.,*
    74 F.3d 633, 640, 649 (1996)...................................................................10, 11

*Harlow v. Fitzgerald,*
    457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).................................4

*Hickman v. Morris,*
    2021 WL 1176181, *2 (N.D.Miss. 3/26/21)....................................................23

*Hillard v. Ferguson,*
    30 F.3d 649, 652-53 (5th Cir. 1994) ..............................................................14

*Jacobs v. West Feliciana Sheriff's Dept.,*
    228 F.3d 388, 395 (5th Cir. 2000) .................................................................11

*Jett v. Dallas Indep. Sch. Dist.,*
    491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)...........................15

*Johnson v. Deep East Tex. Reg. Narcotics,*
    379 F.3d 293, 309 (5th Cir. 2004) .................................................................24

*Kerr v. Lyford*
    171 F.3d 330, 340 (5th Cir. 1999) ...................................................14

*Lawson V. Dallas County,*
    112 F.Supp.2d 616,615 (N.D.Tex. 8/29/2000) ...............................12

*Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit,*
    954 F.2d 1054, 1055 (5th Cir. 1992) ..............................................5

*Lynch v. Cannatella,*
    810 F.2d 1363, 1370 (5th Cir. 1987) .............................................14

*Marts v. Hines*
    68 F.3d 134, 136 (5th Cir. 1995) ..................................................14

*Mitchell v. Forsyth,*
    472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).................4

*Monell v Dept. of Soc. Servs. of City of New York,*
    436 U.S. 658,691,  694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).......................15, 23

*Norton v. Dimazana,*
    122 F.3d 286, 292 (5th Cir. 1997) .................................................12

*Olabisiomotosho v. City of Houston,*
    185 F.3d 521, 528 (5th Cir. 1999) .................................................12

*Pembaur v. Cincinnati,*
    475 U.S. 469, 483-84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)........................23

*Pineda v. City of Houston*,
    291 F.3d 325, 332 (5th Cir. 2002) .................................................16

*Piotrowski v. City of Houston*,
    237 F.3d 567, 578-79 (5th Cir.), *reh'g denied,* 251 F.3d 159,
    *cert. denied,* 122 S.Ct. 53 (2001) ..................................................15

*Rios v. City of Del Rio, Tex.*
    444 F.3d 417, 427 (5th Cir. 1996) .................................................23

*Romera v. City of Grapevine, Texas,*
    888 F.3d 170, 176 (5th Cir. 2018) ..................................................5

*Reneau v. City of New Orleans,*
    2004 U.S. Dist. LEXIS 12415, 2004 WL 1497711, *3-4 (E.D.La. July 2, 2004).............24

*Sanders-Burns v. City of Plano,*
    578 F.3d 279, 290 (5th Cir. 2009) ...................................................................16

*Saucier v. Katz,*
    533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ...........................13

*Washington v. Davis*
    426 U.S. 299,238, 96 S.Ct 2040, 48 L.Ed.597 (1967) ......................................5

*Wernecke v. Garcia*
    591 F. 3d 386, 401 (5th Cir. 2009) .................................................................23

*Whitley v. Hanna,*
    726 F.3d 631, 641 (5th Cir. 2003) ..................................................................11

MAY IT PLEASE THE COURT:

**I.      Claims Asserted by Plaintiffs**

On March 16, 2021, Tamera Jones, Avery Jones, and Tommie Dale McGlothen, III (collectively, "Plaintiffs"), the surviving children of Tommie Dale McGlothen, Jr. ("Mr. McGlothen"), filed suit pursuant to 42 U.S.C. § 1983 individually and on behalf of Mr. McGlothen, asserting various federal and state law claiming arising from the April 5, 2020 death of Mr. McGlothen.  (Rec. Doc. 1).  Tamera Jones and Avery Jones also filed suit on behalf of their deceased mother, Kimberly Jones McGlothen, who was the surviving spouse of Mr. McGlothen at the time of his death.  *Id.*

Plaintiffs initially named the City of Shreveport, Chief of Police Ben Raymond, Shreveport Police Officer Treona McCarter, Shreveport Police Officer Brian Ross, Shreveport Police Officer D'Marea Johnson, and Shreveport Police Officer James LeClare as Defendants, and asserted claims of excessive force, violations of due process, and cruel and unusual punishment (Claim 1), *Monell* claims (Claim 2), negligent training, supervision, and retention (Claim 3), failure to intervene (Claim 4), negligence (Claim 5), wrongful death (Claim 6), violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, and the Rehabilitation Act (Claim 7), supervisory liability (Claims 8-12), and negligent training (Claims 13-38).  *Id.*  A Motion for Partial Dismissal was filed on May 21, 2021 (Rec. Doc. 11), and in response Plaintiff's sought leave to file a First Amended Complaint.  (Rec. Doc. 16).  The Court granted Plaintiff's motion for leave and denied without prejudice Defendants' Motion for Partial Dismissal.  (Rec. Doc. 27).

The First Amended Complaint names four (4) new defendants, namely, Shreveport Fire Chief Scott Wolverton, Shreveport Fire Captain Billy Glass, Shreveport Fire Engineer Joshua Yelvington, and Shreveport Firefighter Clint Richardson.  (Rec. Doc. 28).  Additionally, Plaintiffs

have attempted to assert only four (4) separate causes of action, although each cause of action included multiple claims for relief.  Count One of the First Amendment Complaint was asserted against the individual defendants (McCarter, Ross, Johnson, LeClare, Glass, Yelvington, and Richardson), and included but was not limited to the following claims:  unlawful search and seizure, deprivation of due process, excessive use of force, summary punishment, denial of equal protection of the law, failure to intervene, failure to provide medical care, and conspiracy.  *See* Rec. Doc. 28, ¶¶ 75-79.  Count Two asserted a claim of *Monell* liability against the City of Shreveport based on multiple theories of liability, including but not limited to failure to provide sufficient funds, failure to train, failure to supervise, and failure to discipline.  *See Id.,* ¶¶ 80-93.  Count Three asserted a claim of supervisory liability against Chief Raymond and Chief Wolverton. *See Id.*, ¶¶ 94-104.  Count Four was titled "State Law Claims" and asserted claims of negligence and wrongful death.  *See Id.*, ¶¶ 105-110.  Defendants filed a second Motion to Dismiss Pursuant to Rule 12(b)(6) seeking dismissal of all claims asserted by Plaintiffs, and the individual defendants asserted the defense of qualified immunity.  (Doc. 34).  While the Motion to Dismiss was pending, Plaintiffs sought leave to file a Second Amended Complaint reasserting the allegations set forth in the First Amended Complaint and attached a copy of the video previously referenced by Plaintiffs.  *See* Doc. 39.

On March 31, 2022, this Honorable Court entered a Memorandum ruling granting in part and denying in part Defendants' Motion to Dismiss.  (Doc. 47).  Specifically, the Court granted the motion with respect to the official capacity claims against the individual defendants and Plaintiffs' Fourteenth Amendment claim for violation of due process or summary punishment, and dismissed those claims with prejudice.  *Id.*at pp. 5, 10.  The motion was denied as to Plaintiffs' claims of excessive force for the force used by police officers after Mr. McGlothen was in

handcuffs, Plaintiffs' claim against the police officers for failure to provide medical care, and Plaintiffs' state law negligence claims. *Id.* at pp. 8, 16, 21. With respect to all other claims, the Court found that the Plaintiffs had stated insufficient facts to overcome Defendants' qualified immunity defense but granted Plaintiffs leave to amend their complaint. *Id.* at pp. 10, 12, 16, 18, 19, 20 (granting leave to amend with respect to Plaintiffs' claims of excessive force for the force used prior to handcuffing, Equal Protection violation, Fire Defendants' alleged failure to provide medical care, civil conspiracy, § 1985(3) conspiracy, *Monell* claims, and supervisory liability claims).

On May 9, 2022, Plaintiffs filed their Third Amended Complaint setting forth additional factual allegations and restating their causes of action. (Doc. 56). Count One is asserted against the individual defendants (McCarter, Ross, Johnson, LeClare, Glass, Yelvington, and Richardson), and includes but is not limited to the following claims: excessive use of force, deprivation of due process, summary punishment, denial of equal protection of the law, failure to intervene, and conspiracy. *See Id.*, ¶¶ 162-166. Count Two asserts a claim of *Monell* liability against the City of Shreveport based on multiple theories of liability, including but not limited to failure to provide sufficient funds for training, unlawful policies, practices, and customs, failure to train, failure to supervise, and failure to discipline. *See Id.,* ¶¶ 167-193. Count Three asserts a claim of supervisory liability against former Chief Raymond and former Chief Wolverton. *See Id.*, ¶¶ 194-212. Count Four is titled "State Law Claims" and asserts various claims tort claims arising under Louisiana state law. *See Id.*, ¶¶ 213-226.

For the reasons set forth hereinbelow, Defendants respectfully move for dismissal of Plaintiffs' claims of due process violation or summary punishment, denial of equal protection, failure to provide medical care against the Responding Fire Defendants, conspiracy, *Monell*

claims, and supervisory liability, as Plaintiffs' have again failed to set forth independent causes of action and/or have failed to state plausible claims for relief.

## II.     Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint does not need detailed factual allegations, but a plaintiff's obligation to state the grounds for his entitlement to relief requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  In order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Importantly, insofar as Defendants assert qualified immunity in response to the claims Plaintiffs have made against them under § 1983, the Court must scrutinize the allegations even more closely.  The doctrine of qualified immunity insulates government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Because qualified immunity is "an immunity from suit rather than a mere defense to liability,...it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

4

A heightened pleading requirement is imposed on a civil rights plaintiff suing a state actor in his individual capacity.  To satisfy the heightened pleading requirement, the "complaint must allege with particularity all material facts establishing a plaintiff's right of recovery, including 'detailed facts supporting the contention that a plea of immunity cannot be sustained.'"  *Bright v. City of Killeen, Texas,* 2021 WL 1226559, *4 (W.D.Tex. 3/31/21), quoting *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit,* 954 F.2d 1054, 1055 (5th Cir. 1992).  Because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," "qualified immunity represents the norm" and the Fifth Circuit has admonished courts to deny a defendant immunity "only in rare circumstances."  *Romera v. City of Grapevine, Texas,* 888 F.3d 170, 176 (5th Cir. 2018) (internal citations omitted).

**III.    Plaintiff's Claims Against the Individual Defendants (Count One)**

**A.    Plaintiffs Cannot Maintain a Claim for Violation of Due Process or Summary Punishment**

In the Court's prior Memorandum Ruling (Doc. 47), the Court agreed that Plaintiffs cannot pursue their claims under the Fourteenth Amendment, which is applicable to pre-trial detainees, because the Fourth Amendment is the proper legal standard to evaluate Plaintiffs' excessive force claims.  *Id.* at p.10.  Despite the Court's ruling, Plaintiffs again included those claims in their Third Amended Complaint, *see* Doc. 56 ¶¶ 162(b) and (c), and Defendants respectfully submit that such claims should be dismissed and/or stricken from the Third Amended Complaint.

**B.    Plaintiffs Failed to State a Claim for Denial of Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated persons be treated alike.  U.S. Const. Amend. IV.  The central purpose of the Equal Protection Clause is the prevention of official conduct discriminating on the basis of race or other protected class.  *See Washington v. Davis,* 426 U.S. 229, 238, 96 S.Ct. 2040, 48 L.Ed.597 (1976).  Thus, in

order to state a plausible claim under the Equal Protection Clause, the plaintiff must first allege that he was treated differently than persons similarly situated than him; second, he must allege such treatment stemmed from discriminatory intent. *Anokwuru v. City of Houston,* 990 F.3d 956, 965 (5th Cir. 2021). "To establish discriminatory intent, a plaintiff must show that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Id.*

The Court previously recognized that "Plaintiffs have failed to allege facts to show that any defendant 'intentionally discriminated' against McGlothen because of his mental illness, and that Plaintiffs failed to allege facts to show that McGlothen was 'intentionally treated different from others similarly situated.'" (Doc. 47, p.12). Plaintiffs' Third Amended Complaint is likewise devoid of sufficient factual allegations sufficient to demonstrate discriminatory intent. "[D]iscriminatory intent 'implies more than intent as volition or intent as awareness of consequences.'" *Fusilier v. Landry,* 963 F.3d 447, 463 (5th Cir. 2020). "It implies that the decisionmaker…selected or reaffirmed a course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." *Cook v. Hopkins,* 795 Fed.Appx. 906, 916 (5th Cir. 2019).

Here, Plaintiffs allege that Mr. McGlothen had paranoid schizophrenia and was mentally ill or an "emotionally disturbed person" ("EDP") (Doc. 56 ¶¶ 16, 18, 35), but there are no facts from which it could be inferred that Mr. McGlothen was treated differently *because of* his mental illness. To the contrary,  Plaintiffs' own allegations, if taken as true, would demonstrate that the defendant officers' actions were the result of a lack of training and/or knowledge on how to handle emotionally disturbed persons.  In fact, Plaintiffs specifically allege that "*had* Defendants Ross, LeClare, McCarter, Johnson, Glass, Yelvington, and Richardson received crisis intervention

6

training and/or training specifically related to handling emotionally disturbed persons, *then Mr. McGlothen's constitutional rights would not have been violated.*"  *See Id.* ¶ 127.

Plaintiff's factual allegations are simply insufficient to demonstrate the requisite "discriminatory intent" by any defendant, and instead show only that defendants acted "in spite of" his mental illness and/or based on a lack of training and knowledge.  Accordingly, Plaintiffs have failed to state a plausible claim for relief and their equal protection claim must be dismissed with prejudice.

### C.    Plaintiffs' Allegations Are  Insufficient to State a Plausible Claim for Failure to Provide Medical Care Against the Fire Defendants

The Court previously found that "the facts alleged against the Responding Fire Defendants are insufficient to overcome their defense of qualified immunity."  (Doc. 47, p.15).  Specifically, the Court found the fact that the Responding Fire Defendants examined McGlothen for about one minute and sixteen seconds without removing the spit hood and were found to have violated multiple City policies may establish negligence, but was insufficient to establish that they were aware of facts from which the inference could be drawn that a substantial risk of harm existed, and that they actually drew that inference.  *Id.* at p.16.

In an effort to defeat the Responding Fire Defendants' claim of qualified immunity, the Plaintiff allege the following facts in the Third Amended Complaint, and the new allegations are identified in bold:

81.    At 19:58:26 Shreveport Fire Department EMS arrived on the scene to assess and treat the Defendant Officers and provide Defendant Officers with a spit mask to put on Mr. McGlothen.[1]

82.    At 20:02 Mr. McGlothen states "I can't hardly breathe now."[2]

---

[1] Identical to ¶ 26 in the First Amended Complaint.
[2] Identical to ¶ 27 in the First Amended Complaint.

83.     At 20:04:41 a spit mask was placed on Mr. McGlothen by an employee of Defendant City.[3]

84.     At 20:05:14 Mr. McGlothen was removed from the patrol unit to be evaluated by Defendants Glass, Yelvington, and Richardson.[4]

85.     At 20:06:30 Mr. McGlothen was placed back inside the patrol unit, after a one minute and sixteen second (1:16) evaluation by Defendants Glass, Yelvington, and Richardson.[5]

        * * *

89.     At 20:36 Shreveport Fire Department EMS is called back to the scene for Mr. McGlothen.[6]

        * * *

91.     At 20:43 Shreveport Fire Department EMS is on scene with Mr. McGlothen.[7]

        * * *

**129.   Defendant officers did not communicate to EMS personnel the details of the encounter with Mr. McGlothen so they were unable to properly evaluate him.**

        * * *

131.    Defendants Glass, Yelvington, and Richardson failed to evaluate Mr. McGlothen during their first encounter with him on April 5, 2020.[8]

132.    Defendant Glass did not properly and efficiently manage the operations of EMS during the events involving Mr. McGlothen.[9]

133.    Defendant Glass did not take accountability or responsibility for patient care based on policy and procedures during the events involving Mr. McGlothen.[10]

134.    Defendant Glass did stand several feet away but did not get involved in the scene application or procedures during the events involving Mr.

---

[3] Included in ¶ 28 of the First Amended Complaint.
[4] Identical to ¶ 29 in the First Amended Complaint.
[5] Included in ¶ 30 of the First Amended Complaint.
[6] Identical to ¶ 34 in the First Amended Complaint.
[7] Identical to ¶ 36 in the First Amended Complaint.
[8] Included in ¶ 55 of the First Amended Complaint.
[9] Included in ¶ 56 of the First Amended Complaint.
[10] Included in ¶ 57 of the First Amended Complaint.

McGlothen.[11]

135.  Defendants Glass, Yelvington, and Richardson did not perform a patient assessment of Mr. McGlothen to determine his transport need.[12]

**136.  Defendants Glass, Yelvington, and Richardson did not assess Mr. McGlothen's vitals including his blood pressure, temperature, pulse oxygenation, respiratory rate, or pulse.**

**137.  Defendants Glass, Yelvington, and Richardson did not question Defendant Officers for details regarding the events involving Mr. McGlothen.**

**138.  Defendants Glass, Yelvington, and Richardson did not observe any injuries to Mr. McGlothen but he was battered, scratched, swollen, and bruised all about his face and body.**

**139.  At the time Defendants Glass, Yelvington, and Richardson assessed Mr. McGlothen, he was clothed in a t-shirt, boxer shorts, socks, and a spit hood.  Their failure to observe any injuries is due to the simple fact that they did not examine him or assess him whatsoever.  Mr. McGlothen was presented to them as a crazy person who only needed to be cleaned off before being taken to jail and they accepted that version as truth event when lay observations of Mr. McGlothen's person were to the contrary.  He was badly beaten and in obvious distress.**

**140.  Immediately prior to and immediately subsequent to Defendants Glass, Yelvington, and Richardson being in contact with Mr. McGlothen, he was visibly in distress on the video captured by Defendant Johnson's dash cam. But for their deliberate indifference to his condition, they would have performed a proper evaluation and assessment of Mr. McGlothen.**

**141.  Mr. McGlothen advised Defendants Glass, Yelvington, and Richardson that he could not breathe and their response was not to remove the hood and assess him but rather to quip that since he was talking, he could breathe.  The video is clear and unambiguous that his breathing was labored and he was in distress.**

142.  Defendants Glass, Yelvington, and Richardson did not perform a thorough patient assessment of Mr. McGlothen which resulted in the lack of appropriate medical treatment and intervention.[13]

---

[11] Included in ¶ 58 of the First Amended Complaint.
[12] Included in ¶ 59 of the First Amended Complaint.
[13] Included in ¶ 60 of the First Amended Complaint.

143.    Defendants Glass, Yelvington, and Richardson did not assess Mr. McGlothen based on their level of training and they did not provide care for the patient based on the standing orders or EMS protocol.[14]

144.    Defendants Glass, Yelvington, and Richardson failed to manage the operations of the scene during the events involving Mr. McGlothen.[15]

145.    Defendants Glass, Yelvington, and Richardson did not apply the appropriate use of policy for the operations of EMS during the events involving Mr. McGlothen.[16]

146.    Defendant Glass chose to let his crew members handle the scene and did not evaluate the circumstances of the scene based on Defendant City Policies, Procedures, or Guidelines during the events involving Mr. McGlothen.[17]

147.    Defendants Yelvington and Richardson did not take accountability or responsibility for management of the scene or patient care based on policy and procedures during the events involving Mr. McGlothen.[18]

148.    Defendant Yelvington did not assume patient care responsibility as senior medic on the scene during the events involving Mr. McGlothen.[19]

(Rec. Doc. 56).

In order to prevail on a claim of failure to provide medical care, a plaintiff must demonstrate that the official's failure to act amounted to "deliberate indifference" to his constitutional rights.  *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 640 (1996).  An official acts with "deliberate indifference" "only if he knows that inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer v. Brennan,* 511 U.S. 825, 847, 114 S.Ct. 1970, 1984, 128 L.Ed.2d 811 (1994).

---

[14] Included in ¶ 61 of the First Amended Complaint.
[15] Included in ¶ 62 of the First Amended Complaint.
[16] Included in ¶ 63 of the First Amended Complaint.
[17] Included in ¶ 64 of the First Amended Complaint.
[18] Included in ¶ 65 of the First Amended Complaint.
[19] Included in ¶ 66 of the First Amended Complaint.

In determining whether an individual defendant is entitled to qualified immunity, the court must examine the actions of the individual to determine whether the official was subjectively aware of a "substantial and significant risk…but effectively disregarded it." *Jacobs v. West Feliciana Sheriff's Dept.,* 228 F.3d 388, 395 (5th Cir. 2000), citing *Farmer,* 511 U.S. at 846-48. "Deliberate indifference is an extremely high standard to meet," *Mason v. Lafayette City-Parish Consol. Government*, 806 F.3d 268, 279 (5th Cir. 2015) (internal quotation omitted), and cannot be inferred from an official's mere failure to act reasonably.  *Hare,* 74 F.3d at 649; *see also, Estelle,* 429 U.S. at 105 (inadvertent failure to provide adequate care does not constitute the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment).  "The state actor's *actual* knowledge is critical to the inquiry."  *Whitley v. Hanna,* 726 F.3d 631, 641 (5th Cir. 2003) (emphasis added).

Plaintiffs' allegations in the Third Amended Complaint only further support the Court's previous finding that there are no facts from which it can be inferred that the Responding Fire Defendants had actual knowledge of a substantial risk of harm and effectively disregarded.  In fact, Plaintiffs acknowledge that the Defendant Officers failed to advise them of the details of the encounter and that the Responding Fire Defendants were therefore unable to properly evaluate him (¶ 129), that the Responding Fire Defendants did not question the Defendant Officers for details, and therefore did not have actual knowledge of the encounter and potential risk factors to Mr. McGlothen (¶ 137), that the Responding Fire Defendants did not observe any injuries (¶¶ 138, 139), and that they were presented with information indicating Mr. McGlothen only needed to be cleaned off (¶ 139).  Plaintiffs appear to rely solely on the video to demonstrate that Mr. McGlothen was in actual distress, but the video does not conclusively demonstrate that Mr. McGlothen was in distress, nor are any physical injuries visible on Mr. McGlothen's body.

11

"[L]iability attaches only if [the defendant] actually knew—not merely should have known—about the risk."  *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 528 (5th Cir. 1999). A state actor's "failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation," does not rise to the level of culpability deliberate indifference entails.  *Farmer*, 511 U.S. at 836-837; *see also, Lawson v. Dallas County,* 112 F.Supp.2d 616, 615 (N.D.Tex. 8/29/2000) (negligent medical care or erroneous judgment does not constitute a valid § 1983 claim).

In this case, Plaintiffs' allegations against the Responding Fire Defendants are merely that they *should* have observed injuries or noticed his distress, not that they were subjectively aware of a risk of harm and effectively disregarded it.  In other words, while Plaintiffs continue to evince a disagreement with the medical care provided to Mr. McGlothen and contend that he could or should have received better medical care, there are simply no facts from which it can be reasonably inferred that the Responding Fire Defendants showed a "wanton disregard" for his "medical needs."  *See* Doc. 47, p.16; *see also, Dyer v. Houston,* 964 F.3d 374, 381 (5th Cir. 2020) (plaintiff's allegations that paramedics acted with negligence in not taking further steps to treat the victim did not give rise to deliberate indifference); *Garcia v. City of Lubbock, Texas,* 487 F.Supp.3d 555, 577 (5th Cir. 2020) (plaintiff's allegations were insufficient to establish deliberate indifference where arrestee appeared confused and incoherent, consistent with intoxication, and officers failed to seek medical attention to alleviate a diabetic episode); *Burgess v. Davis,* 61 Fed.Appx. 919 (5th Cir. 2003) (plaintiff's complaint that he could have received better care did not rise to the level of a constitutional violation); *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997) ("[d]isagreement with medical treatment does not state a claim for [deliberate] indifference to medical needs").

Furthermore, in order to defeat an official's claim of qualified immunity, Plaintiffs must show that the official's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.  *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007); *see also, Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000), *reh'g denied*, ("the touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him").  While the Court did not address the "clearly established" element in its Memorandum Ruling, Defendants against emphasize the importance of these events occurring on April 5, 2020.  The Court can take judicial notice of the fact that the world-wide pandemic of COVID-19 had forced businesses and government offices across the country to close; countries had closed their borders; and stay-at-home orders had been issued, including in the State of Louisiana,[20] in order to prevent the spread of COVID-19 and to prevent hospitals from being overwhelmed.  No person, business, industry, or government agency was unaffected by COVID-19, and there were no policies and procedures, much less any statutory laws or jurisprudence, to place the Responding Fire Defendants on notice that their actions were objectively unreasonable in light of the worldwide pandemic.

Accordingly, the Responding Fire Defendants are entitled to qualified immunity for Plaintiffs' claim of failure to provide medical care and such claim should be dismissed with prejudice.

### D.    Plaintiffs' Allegations Are  Insufficient to State a Claim for Conspiracy under § 1983

"The elements of civil conspiracy are (1) an actual violation of a right protected

---

[20] *See* State of Louisiana, Proclamation Number 33 JBE 2020.

under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford,* 171 F.3d 330, 340 (5th Cir.1999).  Mere conclusory allegations of conspiracy, absent reference to material facts, do not state a cause of action under 42 U.S.C. § 1983.  *See Marts v. Hines,* 68 F.3d 134, 136 (5th Cir.1995) (*en banc* ); *see also, Lynch v. Cannatella,* 810 F.2d 1363, 1370 (5th Cir. 1987); (bald allegations that a conspiracy exists, unsupported by any factual allegations, are insufficient); *Green v. State Bar of Tex.,* 27 F.3d 1083, 1089 (5th Cir. 1994) (a plaintiff must allege facts sufficient to suggest an agreement among one or more parties).

The Court previously found that Plaintiffs failed to allege "that the state actors had a preexisting agreement to batter McGlothen, deny him medical treatment, or cover up their actions." (Doc. 47, p.17).  The allegations in Plaintiffs' Third Amended Complaint likewise fail to describe any such preexisting agreement among any of the defendants, and Plaintiffs' § 1983 claim of conspiracy must be dismissed with prejudice.

### E.    Plaintiffs' Allegations Are  Insufficient to State a Claim for Conspiracy under § 1985

In order to assert a conspiracy claim under § 1985, a plaintiff must allege: 1) a conspiracy involving two or more persons; 2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and 3) an act in furtherance of the conspiracy; 4) which causes injury to person or property, or a deprivation of any right or privilege of a citizen of the United States.  *Hilliard v. Ferguson,* 30 F.3d 649, 652-53 (5th Cir. 1994).  "In doing so, the plaintiff must show that the conspiracy was motivated by a class-based animus."  *Id.*

The Court previously found that "this claim should be dismissed for the same reasons as Plaintiffs' § 1983 conspiracy claims and because Plaintiffs have failed to allege any facts to show that the 'conspiracy was motivated by a class-based animus.'"  As stated above, Plaintiffs'

allegations in the Third Amended Complaint fail to demonstrate any preexisting agreement among any of the individual defendants, nor are there any facts to show such agreement was motivated by Mr. McGlothen's race, gender, nationality, religion, mental disability, or other class-based animus.  Accordingly, Plaintiffs' attempt to state a conspiracy claim under § 1985 also fails.

**IV.     Plaintiffs Failed to State a _Monell_ Claim (Count Two)**

Under _Monell,_ municipalities can be held liable for the constitutional violations which arise from enforcement of the municipality's policies and procedures, but the municipality cannot be held liable for the constitutional torts of their employees under the doctrine of respondeat superior. _Monell v. Dept. of Soc. Servs. of City of New York_, 436 U.S. 658, 691, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); _Piotrowski v. City of Houston_, 237 F.3d 567, 578 (5th Cir.), _reh'g denied_, 251 F.3d 159, _cert. denied_, 122 S.Ct. 53 (2001).  Thus, in order to hold a municipality liable under § 1983, a plaintiff must identify: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.  _Monell_, 436 U.S. at 694.  A custom or policy may be found in multiple ways.  Most often, it exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a persistent, widespread practice of officials or employees which, although not authorized by officially adopted and promulgated policy, "is so common and well-settled as to constitute a custom that fairly represents municipal policy." _Piotrowski,_ 237 F.3d at 579.  Regardless of the form, a policy is "official" only "when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy."  _Jett v. Dallas Indep. Sch. Dist._, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

A municipality's failure to train, supervise, or discipline its police officers may also give rise to § 1983 liability, but the plaintiff must show that the failure constituted "deliberate indifference" to his constitutional rights.  *See Sanders-Burns v. City of Plano,* 578 F.3d 279, 290 (5th Cir. 2009); *Brumfield v. Hollins,* 551 F.3d 322, 332 (5th Cir. 2008); *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002); *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000). Specifically, in order "[t]o state a cognizable failure-to-train claim, a plaintiff has to plead facts plausibly demonstrating that: (1) the municipality's training procedures were inadequate, (2) the municipality was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the violations in question."  *Anokwuru v. City of Houston,* 990 F.3d 956, 965 (5th Cir. 3/16/21).  "[I]n order for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective."  *Id.* (internal citation and quotation omitted).  A plaintiff must also "plausibly allege that the municipality was deliberately indifferent to the need for proper training," such as alleging "the municipality had notice of a pattern of similar violations which were *fairly similar to what ultimately transpired*."  *Id.* at 965-66 (emphasis added).

The Court previously determined that Plaintiffs' "pleading regarding an official policy is conclusory and not supported by any facts," and that Plaintiffs failed to establish "any pattern or practice to show 'that the City was deliberately indifferent to McGlothen's rights.'"  (Doc. 47, p.20).  Plaintiffs attempted to cure the deficiency in their Third Amended Complaint by outlining the following facts that purport to demonstrate a general need for training concerning use of force and/or for dealing with emotionally disturbed persons:

117.  Taser International, the manufacturer of the CEWs used by the Defendant Officers during their encounter with Mr. McGlothen, warns users as follows:

Cumulative Effects. CEW exposure causes certain effects, including physiologic and metabolic changes, stress, and pain. In some individuals, the risk of death or serious injury may increase with cumulative CEW exposure. Repeated, prolonged, or continuous CEW applications may contribute to cumulative exhaustion, stress, cardiac, physiologic, metabolic, respiratory, and associated medical risks which could increase the risk of death or serious injury. Minimize repeated, continuous, or simultaneous exposures.

Physiologic and Metabolic Effects. CEW use causes physiologic and/or metabolic effects that may increase the risk of death or serious injury. These effects include changes in blood chemistry, blood pressure, respiration, heart rate and rhythm, and adrenaline and stress hormones, among others. In human studies of electrical discharge from a single CEW of up to 15 seconds, the effects on acid/base balance, creatine kinase, electrolytes, stress hormones, and vital signs were comparable to or less than changes expected from physical exertion similar to struggling, resistance, fighting, fleeing, or from the application of some other force tools or techniques. Some individuals may be particularly susceptible to the effects of CEW use. These susceptible individuals include the elderly, those with heart conditions, asthma or other pulmonary conditions, and people suffering from excited delirium, profound agitation, severe exhaustion, drug intoxication or chronic drug abuse, and/or over-exertion from physical struggle. In a physiologically or metabolically compromised person, any physiologic or metabolic change may cause or contribute to sudden death.

Minimize the number and duration of CEW exposures. Most human CEW lab testing has not exceeded 15 seconds of CEW application, and none has exceeded 45 seconds. Use the shortest duration of CEW exposure objectively reasonable to accomplish lawful objectives, and reassess the subject's behavior, reaction, and resistance before initiating or continuing the exposure. If a CEW deployment is ineffective in incapacitating a subject or achieving compliance, consider alternative control measures in conjunction with or separate from the CEW.

Avoid simultaneous CEW exposures. Do not use multiple CEWs or multiple completed circuits at the same time without justification. Multiple CEWs or multiple completed circuits at the same time could have cumulative effects and result in increased risks.

118.   Repeated and prolonged exposure to a conducted energy weapon can cause metabolic acidosis and sudden death. This is exactly what occurred in this case.

119.   Exposure to a CEW after deployment of a chemical agent such as pepper spray can cause a subject to catch fire.  Defendant Officers used a CEW on Mr. McGlothen with no regard for this fact.

17

120.   City of Shreveport Mayor Perkins admitted that he has concerns about the use of force seen in the video of the incident involving Mr. McGlothen.

121.   It is widely known and accepted that when police officers encounter an emotionally distressed person that they should do the following:
   a.   Consider passively monitoring the situation;
   b.   Interact with the EDP calmly and compassionately;
   c.   Request additional resources and a supervisor, if needed;
   d.   Apply the least amount of force consistent with public, EDP, and officer safety;
   e.   Take actions which de-escalate the situation safely for all involved individuals;
   f.   Use calming techniques;
   g.   Practice patience and self-control.

122.   Defendant Officers did none of the proscribed methods for dealing with an DP during their second or third encounter with Mr. McGlothen which included calling officers trained in crisis intervention.

123.   It is widely known and accepted that when officers are dealing with an EDP that supervisors and commanders or crisis intervention officers should monitor police responses involving EDPs and take all of the following actions:
   a.   Respond to the scene;
   b.   Assist officers in formulating an effective response;
   c.   Assist officers in securing appropriate resources;
   d.   Closely monitor the use of force;
   e.   Ensure that all reports are complete.

124.   No supervisor or commander did any of the actions proscribed under the circumstances on April 5, 2020.

125.   Defendants Ross, LeClare, McCarter, Johnson, Glass, Yelvington, and Richardson received no certifications from training specifically related to handling emotionally disturbed persons.

126.   Crisis intervention training (CIT) was first developed in 1988. Defendant City has known or should have known for decades that police officers and first responders such as paramedics and fireman need crisis intervention training.

127.   Upon information and belief, had Defendants Ross, LeClare, McCarter, Johnson, Glass, Yelvington, and Richardson received crisis intervention training and/or training specifically related to handling emotionally disturbed persons, then Mr. McGlothen's constitutional rights would not have been violated on April 5, 2020 and he would not have been killed.

* * *

149. At the time of the events which are the subject matter of this Complaint, Defendants Johnson, LeClare, McCarter, and Ross violated the policies of the City of Shreveport by using excessive force on Mr. McGlothen; by not taking him into protective custody when it was abundantly clear based on the totality of the circumstances that he was a person in dire need of care; by not supervising Mr. McGlothen; by not transporting him immediately for medical care; by not intervening during the excessive force of co-Defendants; by failing to complete reports; by providing incomplete and inaccurate information to medical personnel further depriving him of proper medical attention.

* * *

169. As a result of the policies against institutionalizing persons, police officers and first line responders have become the frontline professionals to manage persons when they are in crisis as a result of mental illness. Since the late 1980s law enforcement departments have developed crisis intervention units who have specific training with respect to handling emotionally disturbed persons. Accordingly, there is an obvious need to provide officers training with respect to handling emotional disturbed persons, such as crisis intervention training. This training allows officers to recognize persons suffering from mental disabilities and provide de-escalation training to avoid the unnecessary use of force on persons suffering from mental disabilities.

170. The City had a duty to serve and protect all citizens, including those who suffer from mental illness, according to Mayor Perkins. Specifically, Mayor Perkins stated "First and foremost, Shreveport police officers are charged with serving and protecting all of our citizens and that includes those with mental illness."

171. The City had a duty to do everything possible to ensure the well-being of those in its custody, including Mr. McGlothen, according to Mayor Perkins. Specifically, Mayor Perkins stated "We're responsible for those in our custody and we must do everything we can to ensure their safety and well being."

172. The City had defective and insufficient training regarding responding to emotionally disturbed persons and Mayor Perkins openly admitted the training was insufficient following the death of Mr. McGlothen. Specifically, Mayor Perkins stated that both Shreveport Police Department and Shreveport Fire Department will receive more extensive training for excited delirium and other psychiatric conditions. Mayor Perkins stated his goal is for first responders to detect the signs and symptoms earlier and intervene.

173. The City has been on notice, actual and/or constructive, for decades regarding the need for officer training in use of force and de-escalation procedures specifically with emotionally disturbed persons. Since the late 1980s, governmental entities

19

have had to deal with persons suffering from mental disabilities on a routine basis and have enacted specialized crisis intervention units and training to educated officers on mental illness and the tactics to be utilized during such an encounter.

174.    For at least twenty years, the City of Shreveport has maintained a budget and insurance specifically to compensate victims with circumstances similar to that of Mr. McGlothen. The culture of ignoring and condoning excessive force upon the mentally ill is systemic and deeply entrenched in the City of Shreveport's Police Department and Fire Department.

175.    By ignoring the need for officer and firemen training pertaining to emotionally disturbed persons (EDPs), Defendant City was deliberately indifferent to Mr. McGlothen's rights.

176.    The City permitted, encouraged, tolerated, and knowingly acquiesced to an official pattern, practice, or custom of its police officers and firemen, including Defendants Ross, LeClare, Johnson, McCarter, Glass, Yelvington, and Richardson, violating the constitutional rights of the public at large, including Mr. McGlothen.

177.    The City has been previously put on notice through litigation of its deficient training and supervision of officers with the Shreveport Police Department with regard to excessive force in Muslow, Tucker, and Adams. Specifically, in Adams the City of Shreveport was alleged to have "insufficient training in the specific area of responding to emotionally disturbed persons (EDPs)."

178.    Upon information and belief, the City of Shreveport has settled many claims substantially similar to Mr. McGlothen's extrajudicially.

179.    Defendant City had no intention of taking any action against any of the individually named Defendants until the citizen's cell phone footage aired on the news in June 2020. At the time the video aired, Defendant Officers were still on the job and Defendant Raymond had publicly stated that he had reviewed the footage [from the dash cams] and saw nothing wrong with the Defendant Officers' actions.

            * * *

182.    The City knew or should have known that the above-referenced policies, practices, and/or customs, translated into an under qualified and undertrained police force and EMS personnel that were ill-equipped to perform obvious and necessary law enforcement activities without exposing the public to unwarranted danger of injury. Therefore, the City's policymakers were on actual or constructive notice of the deficiencies with its policies, practices, and customs which make officer and EMS misconduct a foreseeable consequence.

183.    The application of the afore-mentioned policies, practices and customs, resulted in a police department that was run with deliberate indifference to the rights of persons

suffering from mental disabilities in that: 1) employees of the SPD and SFD failed to have adequate written policy guidance regarding encounters with persons with disabilities; 2) employees of the SPD and SFD failed to have adequate training with respect to responding to calls involving persons suffering from mental disabilities which would include early identification of persons suffering from mental disabilities, de-escalation techniques and the involuntary commitment process; 3) the SPD and SFD failed to have proper mechanisms in place to properly evaluate officer's encounters with emotionally disturbed persons and use of force; and 4) the SPD and SFD failed to properly investigate and discipline officers for violation of policy and the constitutional rights of citizens.

184.   Given the decline of institutionalization of citizens for mental illness, police and first responded (sic) have become the front line responders to persons with mental illnesses or suffering from a mental crisis.  As a result, there is a moral certainty that police officers and firefighters will have to encounter  persons with a mental illness or suffering from a mental crisis.  Without proper policy and training with respect to dealing with emotionally disturbed persons, these encounters can, and unfortunately do, result in serious injury and death.

Despite Plaintiffs' verbose allegations, Plaintiffs have failed to identify with any specificity written policy statements, ordinances, or regulations that are unconstitutional, and they have also failed to identify with specificity a persistent, widespread practice that was a "moving force" in any of the alleged constitutional violations.  With respect to Plaintiffs' allegations concerning Tasers, there are no allegations whatsoever concerning the training provided to Defendant Officers or any other incidents involving Tasers, much less any allegations that the training provided to the Defendant Officers was deficient, that any official knew the training was deficient, that the City acted with deliberate indifference with respect to the Taser training, or that any deficiency in training caused the alleged violations at issue.  To the contrary, Plaintiffs allege that the Defendant Officers violated City policy by using excessive force, which implicitly acknowledges that the City has a policy prohibiting the use of excessive force and that officers were trained not to use excessive force.  *See* Doc. 56 ¶ 149.

Further, with respect to Plaintiff's allegations concerning training for handling emotionally disturbed persons and/or crisis intervention, Plaintiffs' allegations do nothing more than

demonstrate a general need for training for all law enforcement officers nationwide.  The only allegations concerning the training provided by the City is that the Defendant Officers "received no certifications from training specifically related to handling emotionally disturbed persons." *Id.* at ¶ 125.  But the fact that the Defendant Officers did not receive a certificate specifically related to handling emotionally disturbed persons, if such certification even exists, does not demonstrate that the City failed to provide such training nor does it demonstrate that the training program provided by the City was deficient.  Additionally, statements made *after* Mr. McGlothen's death by officials concerning the need for training is insufficient to demonstrate an awareness of a need for additional training *prior* to Mr. McGlothen's death, and are therefore insufficient to demonstrate deliberate indifference by any City official.

Plaintiffs point to prior incidents/cases involving James Muslow, Gregory Tucker, and Legee Adams, *see Id.* at ¶ 177, but none of those incidents can be described as "fairly similar to what ultimately transpired."  Those cases did not involve the use of Tasers, and there were no allegations that Muslow or Tucker suffered from a mental disability or were otherwise considered "emotionally disturbed persons."  Plaintiffs state that Adams specifically alleged that the City had "insufficient training in the specific area of responding to emotionally disturbed persons (EDPs)", but the Court granted summary judgment in favor of the City and dismissed Adams' claim.  *See Adams v. City of Shreveport, et al,* 269 F.Supp.3d 743, 766-67 (W.D.La. 2017).  Simply pointing to an allegation that proved meritless is wholly insufficient to establish "deliberate indifference."

"Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  *Connick v. Thompson,* 563 U.S. 51, 62, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011).  Here, Plaintiffs have simply failed to identify how the City's training on handling

emotional disturbed persons or crisis intervention is deficient in a particular respect, and have failed to set forth any allegations from which it can reasonably be inferred that the City acted with deliberate indifference to the rights of citizens.

As Justice Brennan stated in *Pembaur v. Cincinnati,* 475 U.S. 469, 483-84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), "municipal liability under § 1983 attached where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers."  In the absence of any factual allegations sufficient to demonstrate a deliberate choice from which deliberate indifference could reasonably be inferred, Plaintiffs' allegations are nothing more than legal conclusions which are insufficient to state a plausible claim for relief. Accordingly, Plaintiffs' *Monell* claims (Count Two) must be dismissed.

### V.       Plaintiffs Failed to State a Claim of Supervisor Liability Against Chief Raymond and Chief Wolverton (Count Three)

A plaintiff cannot establish § 1983 liability against a government official simply by virtue of the official's role as a supervisor.  *Monell*, 436 U.S. at 691; *see also, Hickman v. Morris,* 2021 WL 1176181, *2 (N.D.Miss. 3/26/21) (a supervisor cannot be held liable merely for failure to supervise his subordinates—even if he was present on scene—because "a government official can be held liable only for his own misconduct").  Rather, a supervisory official may only be held liable if he affirmatively participates in the acts that cause the constitutional deprivation or implements unconstitutional policies that causally result in the constitutional injury.  *Wernecke v. Garcia,* 591 F.3d 386, 401 (5th Cir. 2009); *Baker v. Putnam,* 75 F.3d 190, 199 (5th Cir. 1996). Further, § 1983 "requires a showing of the supervisor's 'deliberate indifference to the known or obvious fact that such constitutional violations would result' and 'that generally requires that a plaintiff demonstrate at least a pattern of similar violations.'"  *Rios v. City of Del Rio, Tex.*, 444

F.3d 417, 427 (5th Cir. 2006), quoting *Johnson v. Deep East Tex. Reg. Narcotics,* 379 F.3d 293, 309 (5th Cir. 2004).

Plaintiffs' new allegations against Chief Raymond and Chief Wolverton in the Third Amended Complaint are as follows:

199. Defendant Raymond failed to supervise his officers including the supervising officers who were involved in the incident with Mr. McGlothen. As evidenced by the dash cam video, there was no clear supervisory structure being enforced during any of the three calls involving Mr. McGlothen. Further, Defendant Officers were given conflicting orders by various supervising officers on scene and those who got involved telephonically. Defendant Raymond allowed and condoned his officers and supervisors intentionally violating policies and procedures in an attempt to cover up Defendant Officers' actions.

200. Defendant Raymond allowed his officers and supervisors to deviate from and/or violate Shreveport Police Department policies and procedures regarding chain of command, incident reporting, report completion, arrests, booking, use of force, major incident notification, protective custody procedures, restraint and transport of prisoners, Americans with Disabilities Act, and conducted electrical weapons.

201. After allowing his officers and supervisors to disregard the policies and procedures of the Shreveport Police Department, Defendant Raymond then proceeded to assist in the secretion of the events from Mr. McGlothen's family, the public, and other law enforcement agencies.

202. Defendant Wolverton allowed his firemen and supervisors to deviate from and/or violate Shreveport Fire Department policies and procedures regarding the Americans with Disabilities Act, medical assessments, and administration of medical treatment.

* * *

206. After the citizen's video of the third encounter aired on the local news, Defendant Raymond released a statement that the video was only a small portion of everything that transpired and urged the public to not form opinion based on that one video. Defendant Raymond further states that the department is taking the matter very seriously. In reality, Defendant Officers remained on duty and no substantive action was taken by either Chief Raymond or Defendant City until June 2020, two months after Mr. McGlothen's death.

207. Defendant Raymond claimed that an investigation was initiated as soon as the incident involving Mr. McGlothen occurred. He further claimed that the Louisiana State Police and Office of the District Attorney were asked to review the matter. In

24

reality, the Office of the District Attorney got involved at the request of the Caddo Parish Coroner.

208. Defendant Raymond effectively condoned and ratified the Defendant Officers' actions and publicly stated that he had reviewed the [dash cam] video and took no exception with the contents of that video and audio.

209. Defendant Raymond claimed publicly that a thorough investigation had been conducted into the events surrounding Mr. McGlothen's death. While there were many statements taken in connection with this matter, the investigation was slanted to protect the Defendant Officers, Defendant City, and Defendants Wolverton and Raymond. The recorded statements taken in connection with this matter were improper and an affront to Mr. McGlothen and his family. Not even internal affairs conducted a proper investigation into this matter.

(Rec. Doc. 56).

Once again, there are no facts set forth to show that Chief Raymond or Chief Wolverton affirmatively participated in the acts that caused the alleged constitutional deprivation, nor are there any facts to show that they implemented unconstitutional policies that causally resulted in the alleged constitutional injury.  Plaintiffs' allegations primarily focus on statements or acts that occurred *after* April 5, 2020, and such statements or acts cannot be used to establish deliberate indifference or a causal relation.  Accordingly, Plaintiffs have again failed to state sufficient facts to support a claim of supervisory liability under § 1983, and Plaintiffs claims against Chief Raymond and Chief Wolverton must be dismissed.

**VI.    Conclusion**

WHEREFORE, Defendants pray that this Motion for Partial Dismissal be GRANTED, and that all claims of Plaintiffs of due process violation or summary punishment, denial of equal protection, failure to provide medical care against the Responding Fire Defendants, conspiracy, *Monell* claims, and supervisory liability be DISMISSED WITH PREJUDICE.

Respectfully submitted,

**CARMOUCHE, BOKENFOHR, BUCKLE & DAY**

BY:  _/s/ Nichole M. Buckle_

     Nichole M. Buckle, Bar No. 32113

One Bellemead Center

6425 Youree Drive, Suite 380

Shreveport, Louisiana 71105

Phone: (318) 629-0014

Fax: (318) 404-1571

**ATTORNEYS FOR DEFENDANTS**

26