**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

**TAMERA JONES, ET AL**                                   **CASE NO. 5:21-CV-00690**

**VERSUS**                                                        **DISTRICT JUDGE FOOTE**

**AMERICAN ALTERNATIVE**
**INSURANCE CORPORATION, ET AL**               **MAGISTRATE HORNSBY**

**TABLE OF CONTENTS**

Standard of Review……………….….…...…………………….…………………………………1

Statement of Facts……………….…………………………………………………………..5

There is No Claim for Violation of Due Process or Summary Punishment
Under the Fourteenth Amendment…...……………………………………….…….…..….5

Plaintiffs State a Claim for Denial of Equal Protection of the Law…..……………….....……..………5

Plaintiffs State a Claim for Fire Defendants' Failure to Provide Medical Care……………………8

Plaintiffs State a Claim for Conspiracy…...……………………………...………….....………..10

Plaintiffs State a Monell Claim……………………………...…….…..……………………..11

Plaintiffs State Claims of Supervisor Liability Against
Chief Raymond and Chief Wolverton…………………………….…………………………21

Preserve Defenses………………………………………………………..………...…………..22

Conclusion………………….…...……………………………...……………….……………….22

## TABLE OF AUTHORITIES

### CASES

*AGEM Management Services LLC v. First Tennessee Bank National Association,*
    942 F.Supp.2d 611 (E.D. La. April 25, 2013)…...………………....……………………3

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)……………………..…………………...……………………1, 2

*Avery v. Burke County,*
    660 F.2d 111, 114 (4th Cir. 1981)……………..……………………………………14

*Bailey v. Dallas County,*
    2012 WL 1033502 (N.D. Tex. March 28, 2012)……………………...…………....………8

*Baldain v. Am. Home Mortg. Servicing, Inc.,*
    2010 U.S. Dist. LEXIS 5671 (E.D. Cal. Jan. 5, 2010)………...…………….....…………………4

*Bauer v. Texas,*
    341 F.3d 352 (5th Cir. 2003)……………..……………………………………………...2

*Baxtrom v. Herold,*
    383 U.S. 107 (1966)……………..………………………..……..…………………6

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)……………..…………………..…………………………1, 3

*Blackmore v. Kalamazoo City,*
    390 F.3d 890 (6th Cir. 2009)………………..……………..……….…….…..…...16, 17

*Board of County Commissioners of Bryan County, Oklahoma. v. Brown,*
    117 S. Ct. 1382 (1997)……………..……………..……..…………………...………12, 17, 18

*Bordanaro v. McLeod,*
    871 F.2d 1151 (2nd Cir. 1991)……………..………………..……………………14

*Bright v. Gallia County, Ohio,*
    753 F.3d 639 (6th Cir. 2014)……………..………………..…………………...19

*Cherrington v. Skeeter,*
    344 F.3d 641 (6th Cir. 2003)……………..……………...…………………13, 19

*City of Canton, Ohio v. Harris,*
    489 U.S. 378 (1989)……………..………………….…………………12, 13, 17, 18

*City of St. Louis v. Praprotnik,*
    485 U.S. 112 (1988)……………..………………………………….……17

*Conley v. Gibson,*
335 U.S. 41 (1957)…………………………………………………………………...2

*Conn v. City of Reno,*
572 F.3d 1047 (9th Cir. 2009)…………………………...………………………17

*Davis v. Bayless,*
70 F.3d 367 (5th Cir. 1995)…………………………………………………………2

*Davis H. Elliot Co. v. Caribbean Utilities Co.,*
513 F.2d 1176 (6th Cir. 1975)………………………………………………………2

*Doe v. Magoffin County Fiscal Court,*
174 Fed.Appx. 962 (6th Cir.2006)………………………...…………………………17

*Dominguez v. Correctional Med. Servs.,*
555 F.3d 543 (6th Cir. 2009)………………………………..……………………16

*Dunn v. Tennessee,*
697 F.2d 121 (6th Cir. 1982)………………………………………………………2

*Elan Microelectronics Corp. v. Apple, Inc.,*
2009 U.S. Dist. LEXIS 83715 (N.D. Cal. Sept. 14, 2009)…………….………………4

*Ellis v. Cleveland Municipal School District,*
455 F.3d 690 (6th Cir.2006)………………………………………….………………...17

*Erickson v. Pardus,*
551 U.S. 89 (2007) (*per curiam*)……………………………...……………………3

*Estelle v. Gamble,*
429 U.S. 97 (1976)………………………………………………...………………16

*Ferdik v. Bonzelet,*
963 F.2d 1258 (9th Cir. 1992)………………………………………………4, 5

*Fuller v. City of Oakland,*
47 F.3d 1522 (9th Cir. 1995)………………………………….……………17, 18

*Fundiller v. City of Cooper City,*
777 F.2d 1436 (11th Cir. 1985)…………………………….………………14

*Gentile v. County of Suffolk,*
926 F.2d 142 (2nd Cir. 1991)…………………………….……………...…14

*Grandstaff v. City of Borger, Texas,*
767 F.2d 161 (5th Cir. 1985)………………………….…...……………14, 15

*Gregory v. City of Louisville*,
   444 F.3d 725 (6th Cir. 2006)…………….………………….…………………...………..13, 19

*Harris v. City of Pagedale*,
   821 F.2d 499 (8th Cir. 1987)……………………………….……………..…………..14

*Johnson v. State of California*,
   207 F.3d 650 (9th Cir. 2000)……………….……….…………………………………...4

*Keller v. Attala Cty. City of Kosciusko, Mississippi*,
   2018 WL 615681 (N.D. Miss. Jan. 29, 2018)……………………….……………………11

*Kent v. Johnson*,
   821 F.2d 1220 (6th Cir. 1987)………………….……………………….………………………2

*Leach v. Shelby County Sheriff*,
   891 F.2d 1241 (6th Cir. 1989)………………..…………………………………………18

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,
   507 U.S. 163 (1993)…………………………….…………..…………..…………………….3, 4

*Lillard v. Shelby County Bd. of Educ.*,
   76 F.3d 716 (6th Cir. 1996)………………………...…………….…………………………4

*Long v. City of Los Angeles*,
   442 F.3d 1178 (9th Cir. 2006)………………….…………………………….…………..13

*McRorie v. Shimoda*,
   795 F.2d 780 (9th Cir. 1985)…………………………………….…………………14, 15

*Mahoney v. National Organization for Women*,
   681 F.Supp. 129 (D. Conn. 1987)……………….……………..…………………………5

*Marcilis v. Township of Redford*,
   693 F.3d 589 (6th Cir. 2012)………………….……….…………………………12, 18

*Mercado v.  Kingsley Area Schools/Traverse City Public Schools Adult Educ. Consortium*,
   727 F.Supp. 335 (W.D. Mich. 1989)……………...…………….…………………………5

*Microsoft Corp. v. Phoenix Solutions, Inc.*,
   741 F. Supp. 2d 1156 (C.D. Cal. 2010)………………….…………………………4

*Monell v. Department of Social Services*,
   436 U.S. 658 (1978)……………………………...……………….……………..11, 13, 14, 17

iv

*Natale v. Camden Cty. Corr. Facility,*
    318 F.3d 575 (3d Cir. 2003)…………………………………………………………13

*Olmstead v. L.C. ex rel. Zimring,*
    527 U.S. 581 (1999)……………………………….……………...………………..6

*Owensby v. City of Cincinnati,*
    414 F.3d 596 (6th Cir. 2005)……………………...….………………………16, 17

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986)…………………………………………………………..17

*Phillips v. Whittington,*
    497 F.Supp.3d 122 (W. D. La 2020)……………………………………….1

*Rhyne v. Henderson County,*
    973 F.2d 386 (5th Cir.1992)…………………………………………………...17

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974)……………………….………………...……………...3, 4

*Sims v. Mulcahy,*
    902 F.2d 524 (7th Cir. 1990)…………………………………………...………14

*Skinner v. Switzer,*
    131 S.Ct. 1289 (2011)………………………………………………………4

*Swierkiewicz v. Sorema,*
    534 U.S. 506 (2002)………………………………………………………3, 4

*Tennessee v. Garner,*
    471 U.S. 1 (1985)………………………………………...………………18

*Tennessee v. Lane,*
    541 U.S. 509 (2004)…………………………………………………………6

*U.S. General, Inc. v. Schoeder,*
    400 F.Supp. 713 (D.C. Wis. 1975)…………………….…………………………5

*Vineyard v. County of Murry, Georgia,*
    990 F.2d 1207 (11th Cir. 1993)…………………….……………………………14

*Warren v. District of Columbia,*
    353 F.3d 36 (D.C. Cir. 2004)…………………….……………………………13

*Ziptronix Inc. v. Omnivision Tech., Inc.,*
    2011 U.S. Dist. LEXIS 129275 (N.D. Cal. Nov. 8, 2011)……………………………4

**STATUTES**

Fed. R. Civ. P. 8…………………………………….…………….…………………………… 2, 3, 4

Fed. R. Civ. P. 12…………………………………….……………...……………1, 2, 3, 5, 19, 22

Fed. R. Civ. P. 84…………..……………………….…...…………………………………………4

42 U.S.C. § 1983……………………...……………….…...……………………………………11, 14, 21

42 U.S.C. § 12101……………....……………….…...…………………………...……………..6

**PLEADINGS**

Complaint (Rec. Doc. 1)…………………………...…….…………………………1, 5, 8, 17, 19, 22

Defendants' Answer (Rec. Doc. 12)……………...….…………………….………………………7

First Amended Complaint (Rec. Doc. 28)……………...…..………………………… 1, 5, 8, 17, 19, 22

Second Amended Complaint (Rec. Doc. 45)…...………………...………………...… 1, 5, 8, 17, 19, 22

Memorandum Ruling (Rec. Doc. 47)……………………...…………………...……………...6, 8, 11

Third Amended Complaint (Rec. Doc. 56)……...………….….……...… 1, 5, 6, 8, 9, 11, 17, 19, 20, 22

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

**TAMERA JONES, ET AL**                                    CASE NO. **5:21-CV-00690**

**VERSUS**                                                          **DISTRICT JUDGE FOOTE**

**AMERICAN ALTERNATIVE**
**INSURANCE CORPORATION, ET AL**           **MAGISTRATE HORNSBY**

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

MAY IT PLEASE THE COURT:

**NOW INTO COURT,** through undersigned counsel, come Plaintiffs, who respectfully oppose *Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)* and represent that they have alleged with specificity facts sufficient to establish their right to relief. Each claim asserted in the *Complaint*[1], *First Amended Complaint*[2], *Second Amended Complaint*[3], and *Third Amended Complaint*[4] (hereinafter collectively and *in globo* referred to as "*Complaint*") relies on unique evidence and legal theories.

## I.      Rule 12(b)(6) Standard of Review

In order to overcome a Rule 12(b)(6) motion, the plaintiffs' complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] Plausibility merely calls for sufficient factual allegations to raise a reasonable expectation that discovery will yield evidence to support the elements of the claim.[6] The Court must accept all

---

[1] Rec. Doc. 1.
[2] Rec. Doc. 28.
[3] Rec. Doc. 45.
[4] Rec. Doc. 56.
[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[6] *Phillips v. Whittington*, 497 F.Supp.3d 122, 142 (W. Dist. LA 2020), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

1

well-pleaded factual allegations as true.[7] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] Without converting the 12(b)(6) motion into a Rule 56 motion, the Court may consider, in addition to the complaint in its entirety, documents that are part of the public record[9] and matters subject to judicial notice[10].  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[11]

The object of Rule 12(b)(6) is to test the sufficiency of the pleading.[12]  "The judicial standard governing the court's grant of such a motion [to dismiss] is whether it `appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[13]  In addition, "in making such a determination, the complaint is to be liberally construed in favor of the plaintiff and all factual allegations and permissible inferences in the complaint are to be accepted as true."[14]  With these considerations in mind, a court may only grant a motion to dismiss under F.R.C.P. 12(b)(6) where the allegations in the complaint are legally insufficient to entitle a plaintiff to any relief.[15]  To survive a 12(b)(6) motion, a complaint must satisfy the general notice pleading requirements of Federal Rule of Civil Procedure 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."[16]  This rule reflects a simplified and lenient pleading system that "was adopted to focus litigation on the merits of a

---

[7] *Ashcroft* at 679.
[8] *Id.* at 678.
[9] *Davis v. Bayless*, 70 F.3d 367, 372 (5th Cir. 1995).
[10] *Bauer v. Texas*, 341 F.3d 352, 362 (5th Cir. 2003).
[11] *Ashcroft* at 664.
[12] *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176 (6th Cir. 1975).
[13] *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957).
[14] *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir. 1987).
[15] *Dunn v. Tennessee*, 697 F.2d 121 (6th Cir. 1982).
[16] Fed. R. Civ. P. 8(a)(2).

2

claim" rather than on technicalities that could keep litigants out of court.[17]

Despite Defendants' arguments to the contrary, the Supreme Court unanimously, expressly, and repeatedly has rejected a "heightened pleading standard."[18]  In order to defeat a Rule 12(b)(6) motion, "the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim."[19]  In *Twombly*, the Supreme Court noted that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."[20]  Plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."[21]  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)", and the Court should deny a motion to dismiss even if it appears "that a recovery is very remote and unlikely".[22]  In *Twombly*, the Court expressly reconfirmed "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."[23]

Two weeks after deciding *Twombly*, the Court issued *Erickson*, and put to rest any question that *Twombly* overruled Rule 8(a)'s general notice-pleading scheme:

> *Federal Rule of Civil Procedure 8(a)(2)* requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[24]

---

[17] *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513-14 (2002) ("*Rule 8(a)*'s simplified pleading standard applies to all civil actions, with limited exceptions").  *See also, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69 (1993).

[18] *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69 (1993) (no heightened pleading standard for municipal liability claims; subjecting them to an added specificity requirement must be done by amending the Federal Rules, not by judicial interpretation).

[19] *AGEM Management Services LLC v. First Tennessee Bank National Association*, 942 F.Supp.2d 611, 615 (E.D. La. 4/25/2013).

[20] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[21] *Id*.

[22] *Id*. at 556 (internal citation and footnote omitted), following *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

[23] *Twombly* at 570.

[24] *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*)

3

The Supreme Court further confirmed this Motion to Dismiss standard in *Skinner*:

> Because this case was resolved on a motion to dismiss for failure to state a claim, the question below was "not whether [Skinner] will ultimately prevail" on his procedural due process claim, see *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), but whether his complaint was sufficient to cross the federal court's threshold, see *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Skinner's complaint is not a model of the careful drafter's art, but under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible "short and plain" statement of the plaintiff's claim, not an exposition of his legal argument. See 5 C. Wright & A. Miller, Federal Practice & Procedure § 1219, pp. 277-278 (3d ed.2004 and Supp.2010).[25]

Additionally, as the *Swierkiewicz* Court noted, "These requirements are exemplified by the Federal Rules of Civil Procedure Forms, which 'are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate.'[26] "For example, Form 9 sets forth a complaint for negligence in which plaintiff simply states in relevant part: 'On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway.'"[27] Courts are required to follow Rule 84 and the Forms as long as Congress has declined to amend them.[28] Post-*Iqbal* district courts continue to endorse pleading consistent with Rule 84 and the Forms. [29] Finally, it is well documented in civil rights jurisprudence that motions to dismiss are to be carefully scrutinized and only granted in extreme circumstances. [30] Based on these exacting

---

[25] *Skinner v. Switzer*, 131 S.Ct. 1289, 1296 (2011).

[26] *Fed. Rule Civ. Proc. 84*." 534 U.S. at 513, n. 4.

[27] *Id.*

[28] *See Leatherman*, 507 U.S. at 168 (changes to the Federal Rules "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.").

[29] *See, e.g., Ziptronix Inc. v. Omnivision Tech., Inc.,* 2011 U.S. Dist. LEXIS 129275, at *9 (N.D. Cal. Nov. 8, 2011); *Microsoft Corp. v. Phoenix Solutions, Inc.,* 741 F. Supp. 2d 1156, 1159 (C.D. Cal. 2010); *Baldain v. Am. Home Mortg. Servicing, Inc.,* 2010 U.S. Dist. LEXIS 5671, at *37 (E.D. Cal. Jan. 5, 2010); *Elan Microelectronics Corp. v. Apple, Inc.,* 2009 U.S. Dist. LEXIS 83715, at *6-7 (N.D. Cal. Sept. 14, 2009).

[30] *See e.g.* L*illard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 724 (6th Cir. 1996) (motions to dismiss civil rights complaints should be "scrutinized with special care"); *Johnson v. State of California,* 207 F.3d 650, 653 (9th Cir. 2000) ("the rule of liberal construction is 'particularly important in civil rights cases.'") *Ferdik v.*

4

standards, it is clear that Defendants' *Motion to Dismiss* is due to be denied based on the allegations set forth in the *Complaint*.

## II.      Facts

As Defendants' *Motion to Dismiss* is based on *Federal Rule of Civil Procedure 12(b)(6)*, the factual allegations set forth in the *Complaint*[31], are taken as true. Further, the video captured by the Defendant Officers' mobile video surveillance system speaks for itself. Despite Defendants' unsubstantiated claims to the contrary, Plaintiffs have plead, not only independent causes of action, but plausible claims for relief.

## III.     Plaintiffs Do Not Assert a Claim Under the Fourteenth Amendment for Violation of Due Process or Summary Punishment

## IV.     Plaintiffs State a Claim for Denial of Equal Protection

Under the Equal Protection Clause of the Fourteenth Amendment, Defendants had a duty to treat all citizens of Shreveport equally. As set forth in extensive detail in the *Complaint*, Defendants intentionally chose to treat Mr. McGlothen with no dignity and with brutal force merely because he was mentally ill. It is clear and unambiguous that Defendants were exasperated from the repeated calls for service involving Mr. McGlothen. It is clear from the facts alleged by Plaintiffs that Defendants intended to, and did, teach Mr. McGlothen a lesson for making work for them. Instead of following procedure and seeking the advice of a supervisor, Defendants chose to ridicule, humiliate, and brutalize Mr. McGlothen. Defendants treated Mr. McGlothen in an inhumane and sadistic manner solely because he was mentally ill.  At no time was Mr. McGlothen armed or even posing a danger to anyone. At no time was Mr. McGlothen

---

*Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992); *U.S. General, Inc. v. Schoeder*, 400 F.Supp. 713 (D.C. Wis. 1975); *Mercado v.  Kingsley Area Schools/Traverse City Public Schools Adult Educ. Consortium*, 727 F.Supp. 335 (W.D. Mich. 1989); *Mahoney v. National Organization for Women*, 681 F.Supp. 129 (D. Conn. 1987).

[31] Rec. Docs. 1, 28, 45, 56, *in globo*.

attempting to flee or even actively resisting the Defendants.

While the Court previously found that Plaintiffs "failed to allege facts to show that any defendant intentionally discriminated against Mr. McGlothen because of his mental illness,"[32] Plaintiffs' *Complaint* now sets forth specific factual allegations that both Defendant Ross and Defendant McCarter intentionally discriminated against Mr. McGlothen because of his mental illness.[33] Plaintiffs allege with specificity in the *Complaint* how Mr. McGlothen was deprived of his right to equal protection in paragraphs 26 through 41.[34] Not only were Defendant Officers aware of Mr. McGlothen's mental illness, but they consciously chose to brutalize him, ridicule him, and treat him as person deserving no dignity simply because of his mental illness. Not only are these facts plead with specificity but these actions are the very definition of disparate treatment based on mental illness.

Intentionally refusing to seek any help whatsoever for Mr. McGlothen was inhumane and in violation of his right to equal protection, but Defendant Ross actually suggested transporting a confused, mentally ill citizen of Shreveport to the other side of town and leaving him there arguably so Mr. McGlothen would be other officers' problem and not theirs any longer.[35] Defendant McCarter's response to that sick and cruel suggestion was laughter.[36]

The Equal Protection Clause of the Fourteenth Amendment also applies to the Americans with Disabilities Act[37] and mental disability.[38] Shreveport Police Department's General Order 606.23 requires its officers to comply with the Americans with Disabilities Act. Specifically,

---

[32] Rec. Doc. 47, p. 12.
[33] Rec. Doc. 56, ¶25-39.
[34] Rec. Doc. 56.
[35] Rec. Doc. 56, ¶39.
[36] *Id*.
[37] 42 U.S.C. § 12101
[38] *Baxstrom v. Herold*, 383 U.S. 107 (1966); *Tennessee v. Lane*, 541 U.S. 509 (2004); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999).

6

officers are required to recognize "characteristics common to disabilities and those associated with antisocial or criminal behavior and reactions to chemical substances."

While all of the factual allegations are sufficient to give rise to a claim, Defendants conceded in their *Answer* that Defendant Johnson responded to the first call involving Mr. McGlothen and was, at that time, advised that Mr. McGlothen was not taking his prescribed medications for mental illness.[39] According to the Defendants' *Answer*, Defendant Ross responded to the second call involving Mr. McGlothen and his mental health breakdown.[40] During the third, and final, encounter, at least three of the Defendants, Ross, McCarter, and Johnson, knew of Mr. McGlothen's serious mental illness and present condition and chose to engage him in a violent physical altercation which has been in violation of accepted police training and procedure for decades.

Not only was the physical altercation with Defendants and Mr. McGlothen contraindicated in this scenario, but the use of both chemical agents and conducted energy weapons upon Mr. McGlothen[41] violated accepted police training and procedures. Further, Defendant Officers used a conducted energy weapon on Mr. McGlothen in violation of acceptable police practice.  Engaging a subject exhibiting open and obvious signs of respiratory distress in a violent altercation violates accepted police training, practice, and policy. The use of chemical agents in conjunction with conducted energy weapons against Mr. McGlothen was done with deliberate indifference for his safety and well-being to such a gross extent that they risked him catching on fire.  Defendants exacerbated Mr. McGlothen's condition and suffering by engaging him in a violent altercation.

---

[39] Rec. Doc. 12 ¶  27.
[40] Rec. Doc. 12 ¶  28.
[41] Rec. Doc. 12 ¶  56 and 57.

As set forth in the *Complaint*,[42] Mr. McGlothen's mental disabilities were open and obvious to all Defendants as well as lay citizens. At least three of the Defendants had prior notice of Mr. McGlothen's condition prior to the final encounter. Defendant Officers refused to comply with the policy of the Shreveport Police Department and, in doing so, violated the Americans with Disabilities Act and intentionally discriminated against him as a result of his disabilities.

Finally, the specific factual allegations are clear and unambiguous that Defendants, especially Defendants Ross and McCarter, intentionally discriminated against Mr. McGlothen because of his mental illness, denying him his right to Equal Protection of the law. Nothing further is required at this stage of this proceeding without the benefit of discovery. Defendants' motion should be dismissed with prejudice.

## V.   Plaintiffs State a Claim for Fire Defendants' Failure to Provide Medical Care

Pepper spray causes involuntary spitting.[43] While the Defendants in *Bailey* attempted to decontaminate the victim after spraying him with pepper spray, they put a surgical mask over his nose and mouth because he was involuntarily spitting, like Mr. McGlothen.[44] As in the case at bar, the Defendants did not remove the mask and fumes were trapped which inhibited the victim's ability to breathe.[45] The Defendants in *Bailey* were not entitled to qualified immunity and neither are the Defendants in this case.

The Court previously held that Plaintiffs alleged insufficient facts to overcome the Fire Defendants' defense of qualified immunity.[46] Plaintiffs now allege with specificity that the Fire Defendants intentionally did not provide medical attention to Mr. McGlothen and, accordingly,

---

[42] Rec. Docs. 1, 28, 45, and 56 *in globo*.
[43] *Baily v. Dallas County*, 2012 WL 1033502 (N.D. Tex. 3/28/2012).
[44] *Id*.
[45] *Id*.
[46] Rec. Doc. 47, p. 15.

are not entitled to qualified immunity. During their brief time at the scene, Fire Defendants provided Defendant Officers with a spit hood for Mr. McGlothen because he was involuntarily spitting ancillary to being doused in his face with pepper spray and not decontaminated. Fire Defendants did not evaluate or assess Mr. McGlothen during their first time at the scene. While the Fire Defendants claimed to not observe any injuries to Mr. McGlothen's person, that is simply not plausible given his scant attire[47] and injuries that were present and manifest as of the time of their cursory inspection[48]. Given the Fire Defendants were called to the scene by Defendant Officers for assessment of their alleged injuries[49], the Fire Defendants had to know there had been a violent encounter with Mr. McGlothen. To feign ignorance of that inescapable fact is simply ridiculous.

None of the Fire Defendants assessed Mr. McGlothen's vitals during their evaluation.[50] The Fire Defendants' deliberate indifference for Mr. McGlothen's medical needs is best demonstrated through their response to Mr. McGlothen when he tells them he cannot breathe with the spit hood over his face. Instead of removing the spit hood to assess him, they ridicule him and tell him that if he can speak then he can breathe.[51] The Fire Defendants ignored Mr. McGlothen's serious medical complaints.

The Fire Defendants' encounter with Mr. McGlothen lasted only seventy-six (76) seconds. No one dictated the duration of the so-called assessment other than the Fire Defendants. The Fire Defendants did not assess Mr. McGlothen or attempt to assess Mr. McGlothen because, like Defendant Officers, Fire Defendants were deliberately indifferent to his needs because he was

---

[47] Rec. Doc. 56, ¶139.
[48] Rec. Doc. 56, ¶138.
[49] Rec. Doc. 56, ¶81.
[50] Rec. Doc. 56, ¶136.
[51] Rec. Doc. 56, ¶140-141.

9

mentally ill and it was simply not worth their time. There is categorically nothing reasonable about the inactions of the Fire Defendants. The Fire Defendants not only failed to treat Mr. McGlothen but they ignored his complaints and intentionally engaged in conduct that clearly evinced their wanton disregard for Mr. McGlothen's serious medical needs. To dismiss Mr. McGlothen's complaint that he could not breathe, especially given his disheveled and beaten appearance, was a depraved act. To feign ignorance of Mr. McGlothen's visible injuries, which clearly indicated he had been in a violent confrontation, further demonstrates that the Fire Defendants were as deliberately indifferent or deliberated ignorant to the needs and rights of Mr. McGlothen as were the Defendant Officers. Nothing further is required at this stage of this litigation without the benefit of discovery. Defendants' motion to dismiss the claim of failure to provide medical treatment should be denied with prejudice.

## VI.    Plaintiffs State a Claim for Conspiracy

Defendants acted in concert to not only deprive Mr. McGlothen of his constitutional rights through their concerted brutality but also in their intentional and malicious refusal to seek and/or provide medical attention for him. Any one of the Defendants could have intervened and stopped the violations. Defendant Officers acted in concert to assault Mr. McGlothen. Defendant Officers acted in concert to conspire to cover up what they had done to Mr. McGlothen as he sat in the back of a patrol unit unsupervised and suffocating with a spit hood on his head. The Shreveport Fire Defendants acted in concert to deprive Mr. McGlothen of medical attention. As with the Defendant Officers, any one of the Fire Defendants could have intervened but chose to not. Defendant City, through its agents and employees, conspired with Defendants to cover up the events involving Mr. McGlothen prior to his death. All of these facts are alleged with specificity.

Plaintiffs allege with specificity that Defendants, all acting in concert, used excessive and unreasonable force upon Mr. McGlothen. Further, Plaintiffs allege that Defendants are not

10

entitled to qualified immunity. As the facts alleged in the *Complaint* are to be taken as true for purposes of this *Motion to Dismiss*, Defendants' motion is without merit and should be denied with prejudice.

### VII.   Plaintiffs State a *Monell* Claim

To establish Defendants' liability under 42 U.S.C. Section 1983, Plaintiffs must prove: 1) Mr. McGlothen's constitutional rights were violated by the Individual Defendants; and 2) Defendants' policies, practices, and customs were a moving force of the underlying constitutional violation.  While the Court previously held that Plaintiffs failed to plead any pattern or practice "to show that the City was deliberately indifferent to Mr. McGlothen's rights," the *Third Amended Complaint*[52] unambiguously cured this defect. It is abundantly clear that the *Complaint* states a claim for the violation of Mr. McGlothen's constitutional rights.

Local governments, such as the City of Shreveport, "may be sued for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the government's official decision-making channels."[53] Pursuant to *Monell*, Defendants are liable where the constitutional deprivation arises from a governmental action.[54] Further, the deprivations complained of herein arise out of official policy. "Generally, municipal liability may be based upon a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."[55]

To prevail on a municipal liability claim for failure to train, supervision or discipline, a plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks

---

[52] Rec. Doc. 56.
[53] *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658, 692 (1978).
[54] *Id.* at 658.
[55] *Keller v. Attala Cty. City of Kosciusko, Mississippi*, 2018 WL 615681, at *7 (N.D. Miss. Jan. 29, 2018).

performed by the officers; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. [56] This Court should find genuine issues of material fact exist regarding Defendant City's failure to train and supervise because the policies and training were wholly and grossly inadequate for the tasks performed by their officers; the inadequacies were a result of the deliberate indifference of Defendant City; and the inadequacies were the underlying cause of Mr. McGlothen's injuries.

A municipality can be liable for a failure to train if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." [57] :

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force [citation omitted] can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.[58]

Under this municipal liability standard, there is no need to prove a widespread pattern of improper behavior.[59]  *Brown* left no doubt that *Canton* can impose municipal liability in situations like the one at bar:

> In *Canton*, we did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability. 489 U.S., at 390, and n.10, 109 S.Ct., at 1205, and n.10 ("[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious ... that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need").  *Id.* at 409

---

[56] *Marcilis v. Township of Redford*, 693 F.3d 589 (6th Cir. 2012).
[57] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)
[58] *Canton* at 390, n.10.
[59] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409-410 (1997).

Pursuant to *Canton*, when a constitutional violation is such a "highly predictable consequence" of a failure to train or supervise, a municipality can be found to have been deliberately indifferent to its citizens' constitutional rights. [60] Failing to provide training to officers that it is improper to abuse handcuffed prisoners is an obvious case where deliberate indifference can be inferred.  Plaintiffs herein aver that Defendant City, *inter alia*, failed to train its officers that it is improper to abuse handcuffed prisoners because all four of the named Defendant Officers herein did exactly that. Further, Defendant City failed to train Defendant Officers and Fire Defendants that it is improper to ignore a citizen's serious medical needs.

The absence of policies, in addition to a failure to train, may give rise to *Monell* liability.  In *Natale*, a diabetic inmate sued a prison medical provider for failing to provide insulin which led to stroke and contended that the entity defendant had not established appropriate policies for ensuring the provision of important medications.[61]  Reversing a grant of summary judgment, the Court ruled that "[a] reasonable jury could conclude that *the failure to establish a policy* to address the immediate medication needs of inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs."[62] Other circuits have reached similar results. *See Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185, 1190 (9th Cir. 2006) (noting that "[a] policy can be one of action or inaction" and finding triable issue as to whether failure to implement policies constituted deliberate indifference); *Warren v. Dist. of Columbia*, 353 F.3d 36,

---

[60] *Id*. at 409.  *See also Cherrington v. Skeeter*, 344 F.3d 641, 646 (6th Cir. 2003) (holding that a city's failure to train its officers on warrantless arrests was so likely to result in constitutional violations that the city's failure amounted to deliberate indifference); *Gregory v. City of Louisville*, 444 F.3d 725, 754 (6th Cir. 2006) (holding that failure to provide any training on how to handle exculpatory materials has a "highly predictable consequence" of constitutional violations).
[61] *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575 (3d Cir. 2003).
[62] *Id*.at 585 (emphasis added).

13

39 (D.C. Cir. 2004) (allowing *Monell* claim to proceed on ground that "faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction"); *Sims v. Mulcahy*, 902 F.2d 524 (7th Cir. 1990) ("[I]n situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable".); *Avery v. Burke Cty.*, 660 F.2d 111, 114 (4th Cir. 1981) (holding that conduct of county entities "may be actionable if their failure to promulgate policies and regulations rose to the level of deliberate indifference").

Failing to have adequate use of force policies and to train officers not to abuse handcuffed detainees is an obvious case where deliberate indifference can be inferred.  There is no evidence that the Defendants received adequate training. Based on the IAB histories of Defendant LeClare and Defendant Ross, it is undisputed that Defendant City had notice of the inadequacy of its training programs as remotely as 2016.

It is also well established that liability under § 1983 will lie against a municipality which fails to adequately supervise, investigate, and discipline police officers.[63] In *McRorie*, the Court of Appeal addressed the issue of the failure to discipline officers as evidencing an official policy or custom.[64]  As Ninth Circuit opined:

> McRorie alleges that guards seriously injured him and twenty-eight other prisoners during the shakedown and that Sergeant Dunn was acting under orders from his superiors.  If proved, these acts reflect a "disposition to disregard human life and safety so prevalent as to be... policy or custom.  *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 171 (5th Cir. 1985); ... *See also Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985) (supervisor may be held liable for police shooting of civilian because of policy of allowing excessive force).  Policy or custom may be inferred if, after the shakedown, the prison officials took no steps to reprimand or discharge the guards, or if they otherwise

---

[63] *See Bordanaro v. McLeod*, 871 F.2d 1151 (9th Cir. 1989); *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207 (11th Cir. 1993); *Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir. 1991); *McRorie v. Shimoda*, 795 F.2d 780 (9th Cir. 1985); *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 171 (5th Cir. 1985);  *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985); *Harris v. City of Pagedale*, 821 F.2d 499, 508 (8th Cir. 1987), Avery and Rudovsky, *Police Misconduct: Law and Litigation*, §§ 3.5(b)(3), 3.5(b)(7) (1995 ed.).
[64] *McRorie v. Shimoda*, 795 F.2d 780 (9th Cir. 1985).

14

failed to admit the guards conduct was error.  *Id.* at 783-784.

Further, the Fifth Circuit Court of Appeal opined in *Grandstaff*:[65]

The disposition of the policy maker may be inferred from his conduct after the events of that night.  Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error.  The officers testified at trial that no changes had been made in their policies.  If that episode of such dangerous recklessness obtained so little attention and action by the City policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City of Borger.  If prior policy had been violated, we would expect to see a different action.  If what the officers did and failed to do on August 11, 1981 was not acceptable to the police chief, changes would have been made....

As subsequent conduct may prove discriminatory motive in a prior employment decision, [citations omitted], and subsequent acts may tend to prove the nature of a prior conspiracy, [citations omitted], so the subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy.

After August 11, 1981, we all know of the dangerous recklessness of that police force.  If the police chief had not known and approved of it beforehand, we would expect a change when he, too, learned the facts.  But there is no sign of any concern except that the City avoid liability.  The jury was entitled to infer that the conduct on the 6666 Ranch demonstrated the policy of the Borger city police force as approved by its policymaker, both before and after that time.[66]

There is no evidence that any of the Defendant Officers were certified in crisis intervention. There is no evidence that the Defendant Officers used their CEWs pursuant to their purported training or the manufacturer's instructions. There is no evidence that Mr. McGlothen was decontaminated after his exposure to pepper spray as required by training. There is no evidence that the Defendant Officers were trained to not batter and brutalize handcuffed subjects. There is no evidence that any Defendant was trained on how to assess and/or manage emotionally disturbed persons. There is no evidence that encounters with emotionally disturbed persons was unusual or unexpected. There is no evidence that any named defendant or any bystander City of Shreveport police officer sought to or attempted to intervene to stop the

---

[65] *Grandstaff v. City of Borger, Texas*, 767 F.2d 161 (5th Cir. 1985).
[66] *Grandstaff* at 171.

excessive use of force upon Mr. McGlothen. To be clear, this is not a case of a single police officer violating a single departmental policy. The actions taken by the Defendant Officers demonstrate a complete lack of adequate training and supervision because not one, but all involved officers, acted in concert and with deliberate indifference to Mr. McGlothen's rights.

Defendant City's failure to have proper policies, training, and supervision of its officers reflects a complete and total disregard of its constitutional obligations and creates an atmosphere where improper conduct by untrained officers was not even required to be reported or documented and was an underlying cause of the violation of Plaintiff's constitutional rights and damages. That the Defendant Officer present at the emergency room with Mr. McGlothen provided materially false information to the emergency room staff creates a presumption of Defendants' deliberate indifference for Mr. McGlothen's medical needs and well-being.

Plaintiffs clearly and unambiguously plead in their *Complaint* that it was the policies, practices, and/or customs of Defendant City that lead to the constitutional deprivations at issue herein. Specifically, the Plaintiffs alleged what specific inadequate and/or non-existent policies, practices, and customs lead to the deprivation of Mr. McGlothen's constitutional rights.

Plaintiffs' constitutional claims for failure to provide timely medical treatment under the Fourth and/or Fourteenth Amendment require that the Plaintiffs prove that the Defendants acted with deliberate indifference to Mr. McGlothen's serious medical needs.[67]   Plaintiffs submit that the admitted delay in assessment and medical treatment amounted to a violation of Mr. McGlothen's constitutional rights under applicable law.

Claims for deliberate indifference to serious medical needs consist of an objective and subjective component.[68] Based on the decisions in *Blackmore* and *Owensby*, a plaintiff successfully

---

[67] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).
[68] *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009).

proves a claim of deliberate indifference to serious medical needs when the plaintiff can show that he experienced an obvious medical condition and medical treatment was unnecessarily delayed.[69]  A plaintiff is not required to show that the deliberate indifference of defendants was a proximate cause of actual medical harm.  Rather, the plaintiff is required to show that there was a serious medical need and that officials failed to timely respond to it.

The *Complaint*[70] clearly states a cause of action for the violation of Mr. McGlothen's constitutional rights against the Defendants as it sufficiently states that Mr. McGlothen was suffering from an obvious medical condition and that the Defendants ignored this condition until Mr. McGlothen was found unresponsive in the back of a police cruiser.

To establish municipal liability, a plaintiff can utilize any of the following five theories:

(1) express municipal policy, *Monell,* 436 U.S. at 660–61;

(2) "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law," *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127(1988) (quotation omitted);

(3) the decision of a person with final policymaking authority, *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–83 (1986),

(4) the failure to act where the "inadequacy [of the existing practice is] so likely to result in the violation of constitutional rights, that the policymaker ... can reasonably be said to have been deliberately indifferent to the [plaintiff's rights]," *City of Canton v. Harris,* 489 U.S. 378, 390 (1989),[71] or

(5) ratification by a municipality of its employee's unconstitutional acts by failing to meaningfully investigate and punish allegations of unconstitutional conduct.  *Fuller v.*

---

[69] *Blackmore v. Kalamazoo City,* 390 F.3d 890 (6th Cir. 2009) and *Owensby v. City of Cincinnati*, 414 F.3d 596 (6th Cir. 2005).

[70] Rec. Docs. 1, 28, 45, 56.

[71] This category includes deliberately indifferent training or supervision, *Canton,* 489 U.S. at 390, 109 S.Ct. 1197; *see also Ellis v. Cleveland Mun. Sch. Dist.,* 455 F.3d 690, 700 (6th Cir.2006), deliberately indifferent hiring, *Brown,* 520 U.S. at 410–11, 117 S.Ct. 1382; *see also Doe v. Magoffin County Fiscal Court,* 174 Fed.Appx. 962, 967 (6th Cir.2006), and deliberately indifferent failure to adopt policies necessary to prevent constitutional violations, *Conn v. City of Reno,* 572 F.3d 1047, 1064 (9th Cir.2009); *see also Rhyne v. Henderson County,* 973 F.2d 386, 392 (5th Cir.1992).

17

*City of Oakland*, 47 F.3d 1522, 1535 (9th Cir.1995); *see also Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247 (6th Cir.1989).

To prevail on such a municipal liability claim for failure to train or discipline, a plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed by the employees; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. [72] A municipality can be liable for a failure to train if, **"in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."**[73]   As noted by the Supreme Court in *Canton*:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, see *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.[74]

Under this municipal liability theory, there is no need to prove a widespread pattern of improper behavior. [75] **Pursuant to** *Canton***,** when a constitutional violation is such a highly predictable consequence of a failure to train, a municipality can be found to have been

---

[72] *Marcilis v. Township of Redford*, 693 F.3d 589 (6th Cir. 2012).

[73] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

[74] *Id.* at Footnote 10.

[75] *Board of County Commissioners of Bryan County., Oklahoma. v. Brown*, 117 S. Ct. 1382, 1391-93 (1997) ("In *Canton,* we did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability. 489 U.S., at 390, and n. 10, 109 S.Ct., at 1205, and n. 10 ("[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious ... that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need")).

18

deliberately indifferent to its citizens' constitutional rights.[76]  In this case, the need to effectively and adequately train officers in the constitutional limitations on the use of deadly force, including CEWs, is so obvious that Defendant City's failure to do so is deliberate indifference. Further, the need to train police officers and first responders on responding to situations involving EDPs has been well established since the 1980s.

Based on the foregoing, Plaintiffs submit that the *Complaint* sets forth sufficient facts to support its municipal liability claim against Defendants.  With respect the necessary allegations to be made to plead municipal liability, "to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen."[77]  A cursory review of the *Complaint* makes clear that Plaintiffs have made the appropriate allegations to assert a claim for municipal liability against Defendants to survive their Motion to Dismiss.

Plaintiffs submit that the *Complaint* clearly states a cause of action for municipal liability against Defendants.  In particular, Plaintiffs' *Complaint* alleges: 1) the individual defendants were acting under color of law; 2) the individual defendants violated Mr. McGlothen's clearly established rights to receive a medical assessment, medical treatment and medical monitoring for his obvious and deteriorating condition; 3) Defendant Ross had a documented history of not knowing the law but was allowed to continue working; 4) Defendant LeClare had a documented history of using excessive force but was allowed to continue working; 5) these actions were

---

[76] *Id*. at 393.  *See also Cherrington v. Skeeter*, 344 F.3d 641, 646 (6th Cir. 2003) (holding **that a city's** failure to train **its** officers on warrantless arrests was so likely to result in constitutional violations that the city's **failure** amounted to deliberate indifference); *Gregory v. City of Louisville*, 444 F.3d 725, 754 (6th Cir. 2006) (holding that failure to provide *any* training on how to handle exculpatory materials has a "highly predictable consequence" of constitutional violations).
[77] Bright v. Gallia County, Ohio, 753 F.3d 639, 660 (6th Cir. 2014).

committed by the individual defendants pursuant to the policies, practices, and customs of the municipal defendants with respect to the training, education, supervision, monitoring of its employees with respect to the proper evaluation of detainees suffering under disabilities or conditions which require medical stabilization before incarceration, monitoring persons with obvious medical needs, transporting persons with obvious medical needs, and handling persons with disabilities, with deliberate indifference and reckless disregard to the welfare of inmates, including Mr. McGlothen; and 6) that these policies, practices, and customs were the moving force behind the violations of Mr. McGlothen's constitutional rights.  Accordingly, Plaintiffs have pled sufficient facts and identified numerous policies, practices, and customs of Defendant City with respect to dealing with medical issues of pre-trial detainees, tied these policies, practices, and customs to Defendants, and pled that Mr. McGlothen's injuries and death resulted from the execution of these policies, practices, and customs without the aid of discovery.

Arguably, the best evidence of Defendant City's deliberate indifference to the need for adequate training is the fact that, in lieu of expensive and time-consuming training, Defendant City, for at least twenty years, has maintained both a budget and a policy of insurance to compensate victims with circumstances similar to that of Mr. McGlothen.[78] Finally, that Defendant City took no corrective action following Mr. McGlothen's death prior to a citizen's cell phone video being aired on the local news speaks volumes for how deliberately indifferent Defendant City really is to the need for adequate training and for protecting the constitutional rights of its most at-risk citizens, the mentally ill. It is undisputed in this case that it is not only foreseeable but a regular occurrence for police officers and first responders to encounter the mentally ill during the course and scope of their employment. Nothing more is required at this

---

[78] Rec. Doc. 56, ¶174.

20

stage of the litigation without the aid of discovery. Defendants' motion is without merit and should be denied with prejudice.

## VIII. Plaintiffs State Claims of Supervisor Liability Against Chief Raymond and Chief Wolverton

Failure to supervise includes the failure to discipline. Defendant Raymond had notice that Defendants LeClare and Ross had IAB histories related to violations of policy. Further, it was only after a video surfaced and the District Attorney commenced an investigation that any action was taken against Defendant Officers in connection with their killing of Mr. McGlothen. To be clear, no action was taken until two (2) months after Mr. McGlothen's death. Defendant Wolverton similarly failed to supervise and/or discipline his firemen. The investigation into the actions of the Shreveport Fire Defendants did not commence until May 2020, a month after Mr. McGlothen's death. The investigation was commenced at the request of the Caddo Parish Coroner.

Defendant City has clear chain of command policies and procedures, albeit inadequate, and it is an inescapable reality that Defendants Raymond and Wolverton not only had notice of the events of April 5, 2020, as they unfolded, but they were involved in the deliberate inaction taken thereafter. Neither Defendant Raymond nor Defendant Wolverton saw the need for an investigation until outside agencies got involved. Until the call for an investigation came, Defendants Raymond and Wolverton were complicit in the actions of the other Defendants. There was an in-custody death and no investigation was conducted until months later.

Not investigating an in-custody death is the very definition of deliberate indifference for purposes of § 1983. Arguably, the most glaringly obvious indicators of Defendant Raymond and Defendant Wolverton's negligent supervision are that their subordinates: (1) caused an in-custody death; (2) failed to follow Defendant City's inadequate policies and procedures; (3) failed

21

to supervise their own subordinate employees; and (4) attempted to cover up all of the aforementioned. All of these facts are clearly plead in the *Complaint.* Defendants' motion to dismiss this claim should be denied with prejudice.

## IX.    Preserve Defenses

Plaintiffs submit that any defenses not specifically argued in the *Motion to Dismiss* are deemed waived.[79]  Plaintiffs aver that, in the event the Court is inclined to grant the Motion to Dismiss in whole or in part, Plaintiffs will be given leave to conduct limited discovery and, if necessary, amend their Complaint.

## X.    Conclusion

Defendants are not entitled to the relief sought in the Motion to Dismiss Pursuant to Rule 12(b)(6).

WHEREFORE, PREMISES CONSIDERED, Plaintiffs desire this Honorable Court deny the Motion to Dismiss filed by Defendants and for all such further relief, both general and specific, to which they may be entitled under the premises.

Respectfully submitted,

The Cochran Firm -- Trials & Mass Torts

_____/s/ Ashley L. Page_____
James Carter            (#26841)
Jeffrey A. Mitchell        (#19711)
Ashley L. Page          (#30285)
3850 N. Causeway Boulevard, Suite 1500
Metairie, Louisiana 70002
Tel. 504.612.7000  Fax 504.612.7001
apage@cochranfirmnola.com

---

[79] FRCP 12(b)(6)