UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| TAMERA JONES, ET AL. | CIVIL ACTION NO. 21-690 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| AMERICAN ALTERNATIVE INSURANCE CORP., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a partial motion to dismiss, filed by Defendants Shreveport Police Chief Ben Raymond ("Raymond"); Shreveport Police Officers Treona McCarter ("McCarter"), Brian Ross ("Ross"), D'marea Johnson ("Johnson"), and James LeClare ("LeClare"); Shreveport Fire Chief Scott Wolverton ("Wolverton"); Shreveport Fire Captain Billy Glass ("Glass"); Shreveport Fire Engineer Joshua Yelvington ("Yelvington"); Shreveport Firefighter Clint Richardson ("Richardson"); and the City of Shreveport (collectively, "Defendants"). [Record Document 58].[1] The motion has been fully briefed. For the reasons below, Defendants' partial motion to dismiss [Record Document 58] is **GRANTED IN PART** and **DENIED IN PART**.

### I.    Background

The Court provided an extensive background section in its first memorandum ruling, *see* Record Document 47 at 1-4, which it will recount below.

Plaintiffs are the surviving heirs of Tommie McGlothen, Jr. ("McGlothen"). According to Plaintiffs' third amended complaint, on April 5, 2020, McGlothen died after a violent encounter with McCarter, Ross, Johnson, and LeClare (collectively, the "Police Officer Defendants").

---

[1] Defendant American Alternative Insurance Corporation ("American Insurance") did not join this partial motion to dismiss. The only claim brought against American Insurance is a direct action claim pursuant to Louisiana Revised Statute § 22:1269 as the insurance provider for the City of Shreveport. Record Document 56 at ¶ 225.

Record Document 56. Plaintiffs allege that at about 5:29 p.m., McGlothen's father called 911 to request assistance because McGlothen, a paranoid schizophrenic, was not taking his medication and was experiencing a mental breakdown. *Id.* at ¶¶ 14-16. Johnson responded to the call and advised the family that McGlothen did not meet the criteria for commitment. *Id.* at ¶ 19. Plaintiffs claim that Johnson advised the family that they could call the police if the situation worsened or contact the Caddo Coroner's Office the following day to commit McGlothen. *Id.*

At approximately 6:30 p.m., McGlothen had a second encounter with Shreveport Police Officers. *Id.* at ¶ 23. According to Plaintiffs, an individual stopped Ross to report a concerning encounter with McGlothen. *Id.* at ¶ 24. The individual claimed that he had parked his car to send a text message when, suddenly, McGlothen opened the rear door of the vehicle and got into the back seat. *Id.* Plaintiffs aver that the individual punched McGlothen, who then exited the vehicle "without further incident." *Id.*

Plaintiffs represent that Ross and McCarter located and approached McGlothen. *Id.* at ¶¶ 23, 25. Plaintiffs allege that Ross asked McGlothen to put his hands on the patrol unit. *Id.* at ¶ 25. Plaintiffs claim that Ross asked McGlothen to state his name, to which McGlothen answered, "Dale Bey North American National." *Id.* Plaintiffs allege that Ross, without warning or notice, "threw McGlothen to the ground where he proceeded to handcuff him without incident." *Id.* at ¶ 26. Ross then placed McGlothen in the back of his patrol unit. *Id.* at 31. Plaintiffs allege that Ross proceeded to question McGlothen about entering the individual's vehicle, his address, his birthday, and his understanding of his *Miranda* rights. *Id.* Plaintiffs claim that McGlothen could not answer any of Ross's questions. *Id.* Plaintiffs allege that Ross released McGlothen because Shreveport Police Officers were prohibited from transporting individuals to jail for non-violent crimes due to the COVID-19 pandemic. *Id.* at ¶ 32.  Plaintiffs claim that Ross told McGlothen

that he "failed at being a sovereign citizen" and that "Trump would be disappointed," which made McCarter laugh. *Id.* at ¶ 35.

Plaintiffs allege that shortly thereafter, a homeowner called 911 to report that McGlothen followed her car into her driveway and was standing in her yard. *Id.* at ¶¶ 42-43. Plaintiffs claim that the woman's husband confronted McGlothen, who then followed the husband inside the couple's home. *Id.* at ¶¶ 44-45. Plaintiffs allege that the husband pulled a gun on McGlothen. *Id.* at ¶ 45. Plaintiffs claim that McGlothen retreated from the home back to the front yard, where he remained until around 7:42 p.m. *Id.* at ¶¶ 46-51.

McGlothen had his third and final interaction with Shreveport Police Officers as they arrived at the couple's home. *Id.* at ¶¶ 51-53. Plaintiffs contend that the Police Officer Defendants verbally and physically engaged McGlothen immediately upon arrival. *Id.* at ¶¶ 58-75. Plaintiffs maintain that during this encounter, the Police Officer Defendants punched and kicked McGlothen. *Id.* Plaintiffs further assert that Ross pepper sprayed McGlothen, hit him with his baton, and tased him six times for thirty-four seconds total, twenty-nine of which were continuous. *Id.* at ¶¶ 60, 74, 100. After handcuffing McGlothen, Plaintiffs claim that McCarter and LeClare punched him in the face and that Johnson forcibly shoved him to the ground. *Id.* at ¶¶ 101-103. Additionally, Plaintiffs allege that LeClare slammed McGlothen on the hood of the patrol vehicle and elbowed him in the face. *Id.* at ¶ 104.

At about 7:47 p.m., McGlothen was shoved into the police vehicle with "his head near the floorboard and his feet in the air." *Id.* at ¶ 76. Plaintiffs allege that at 7:54 p.m., McGlothen can be heard saying "I can't breathe" and "don't kill me." *Id.* at ¶ 78. At approximately 7:58 p.m., Glass, Yelvington, and Richardson (collectively, the "Responding Fire Defendants") arrived at the scene. *Id.* at ¶ 81. Plaintiffs maintain that one of the Responding Fire Defendants provided the

Police Officer Defendants with a spit hood to put on McGlothen to stop him from spitting. *Id.* Plaintiffs claim that the spit hood was placed on McGlothen "by an employee of [the City of Shreveport]." *Id.* at ¶ 83.

At approximately 8:05 p.m., McGlothen was removed from the police vehicle so that the Responding Fire Defendants could evaluate him. *Id.* at ¶ 85. According to Plaintiffs, this evaluation was cursory and lasted only one minute and sixteen seconds before he was returned to the back of the patrol unit.[2] *Id.* at ¶ 85. Plaintiffs assert that at about 8:20 p.m., McGlothen stopped breathing and became unresponsive and unconscious. *Id.* at ¶¶ 86-87. At approximately 8:36 p.m.—sixteen minutes later—one of the Police Officer Defendants realized that McGlothen had no pulse. *Id.* at ¶ 88. The officers removed McGlothen from the vehicle and attempted to perform CPR until EMS arrived. *Id.* at ¶¶ 90-91. McGlothen was then transported to Willis-Knighton North Hospital where it was discovered that he was severely acidotic, in severe shock, and hypotensive. *Id.* at ¶¶ 93-94. McGlothen was pronounced dead on April 6, 2020. *Id.* at ¶ 107. Plaintiffs maintain that Defendants caused McGlothen to die from "metabolic acidosis, shock, and cardiac arrest." *Id.* at ¶¶ 92.

After McGlothen's death, Plaintiffs claim that neither the Shreveport Fire Department nor the Shreveport Police Department launched a timely investigation into the responding officials' conduct surrounding McGlothen's death. *Id.* at ¶¶ 153, 207, 209. On September 18, 2020, a Caddo Parish Grand Jury indicted Ross, LeClare, McCarter, and Johnson on charges of malfeasance in office and negligent homicide. *Id.* at 2. This suit followed.

Plaintiffs assert a multitude of federal and state law claims surrounding McGlothen's death. *See* Record Document 56. Defendants filed a motion to dismiss in which they sought

---

[2] It is not clear whether McGlothen was returned to the back seat of the vehicle in an upside-down position or whether he was still wearing the spit hood.

4

dismissal of all claims and asserted qualified immunity. Record Document 34. The Court granted Defendants' motion as to Plaintiffs' official capacity claims against the Police Officer and Responding Fire Defendants. Record Document 47 at 5, 22. It also granted the motion with respect to Plaintiffs' Fourteenth Amendment excessive force claims. *Id.* at 11, 22. The Court denied Defendants' motion to dismiss pertaining to Plaintiffs' Fourth Amendment excessive force claims for the period after McGlothen was handcuffed and regarding Plaintiffs' failure to provide medical care claims against the Police Officer Defendants. *Id.* at 9, 16, and 22. It denied as moot Plaintiffs' unlawful arrest claim because Plaintiffs asserted that there was no unlawful arrest claim to be dismissed. *Id.* at 6. Finally, the Court permitted Plaintiffs the opportunity to amend their complaint pertaining to their claims: 1) that excessive force was employed against McGlothen before he was handcuffed, that McGlothen's Equal Protection rights were violated, and that the responding officials conspired to violate McGlothen's constitutional rights under 42 U.S.C. §§ 1983 and 1985, against all Defendants; 2) that the Responding Fire Defendants failed to provide medical care pursuant to the Eighth Amendment; 3) Plaintiffs' municipal liability claims against the City of Shreveport; and 4) Plaintiffs' supervisory liability claim against Raymond and Wolverton. *Id.* at 10, 12, 16, 18-22.

Plaintiffs filed a third amended complaint. *See* Record Document 56. Defendants then filed the foregoing partial motion to dismiss. *See* Record Document 58. In their motion, Defendants seek dismissal of the following claims: due process and/or summary punishment, Equal Protection, failure to provide medical care against the Responding Fire Defendants, civil conspiracy, conspiracy pursuant to 42 U.S.C. § 1985, municipal liability, and supervisory liability. Record Document 58-1 at 3-4.

## II.   **Law and Analysis**

### a.  **Motion to Dismiss Standard**

To survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. *See id.; In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678-79. A court may dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### b. Section 1983 Claims

42 U.S.C. § 1983 ("Section 1983") provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against any person acting under color of state law. Section 1983 does not create substantive rights but provides remedies to the rights established in the United States Constitution and other federal laws. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985). To assert a claim for damages under this statute, a plaintiff must demonstrate "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

As previously mentioned, Defendants seek the dismissal of six of Plaintiffs' Section 1983 claims: due process or summary punishment, Equal Protection, failure to provide medical care, civil conspiracy, municipal liability, and supervisory liability. Record Document 58-1 at 3-4. Defendants assert qualified immunity only relating to Plaintiffs' claims that the Responding Fire Defendants failed to provide medical care. *Id.* at 7. The Court will address Plaintiffs' claims in turn below.

### i. Due Process or Summary Punishment

Defendants seek dismissal of Plaintiffs' due process and summary punishment claims. Record Document 58-1 at 5. Despite the Court's order that Plaintiffs were not to amend their complaint pertaining to claims that the Court dismissed with prejudice, *see* Record Document 47 at 22, Plaintiffs' third amended complaint raises due process and summary punishment claims against Johnson, Ross, LeClare, McCarter, Glass, Richardson, and Yelvington, *see* Record Document 56 at ¶ 162. In their opposition to Defendants' motion, Plaintiffs contend that they have not asserted a claim for due process or summary punishment. Record Document 60 at 5.

Because these claims were already dismissed with prejudice, Defendants' motion to dismiss Plaintiffs' due process and summary punishment claims is **DENIED as moot**. The Court cautions Plaintiffs that amending their complaint to revive dismissed claims is not only in direct contravention of the Court's directives, *see* Record Document 47 at 11, 22, but is also inefficient and a poor use of the Court's resources.

## ii. Equal Protection

"The Equal Protection Clause directs that persons similarly situated should be treated alike." *Anokwuru v. City of Houston*, 990 F.3d 956, 965 (5th Cir. 2021) (citation omitted). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that (a) a state actor intentionally discriminated against [him] because of membership in a protected class or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Tex. Dep't of Ins.--Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)) (internal quotation marks omitted). "[I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)) (internal quotation marks omitted).

The Court permitted Plaintiffs to amend their complaint regarding their Equal Protection claims, finding that they initially "failed to show that any defendant 'intentionally discriminated' against McGlothen because of his mental illness, nor [did] Plaintiffs alleg[e] facts to show that McGlothen was 'intentionally treated differently from others similarly situated.'" Record Document 47 at 12. Defendants contend that Plaintiffs' third amended complaint "is likewise

devoid of sufficient factual allegations sufficient to demonstrate discriminatory intent." Record Document 58-1 at 6. Plaintiffs argue that they allege—with enough specificity—how Defendants violated McGlothen's Equal Protection rights in paragraphs twenty-six through forty-one of their third amended complaint. Record Document 60 at 6.

Upon a review of the third amended complaint, and specifically the paragraphs referenced by Plaintiffs, the Court finds that the previously enumerated deficiencies were not remedied. In those referenced paragraphs, Plaintiffs outline the interactions between the Police Officer Defendants and McGlothen wherein they believe that McGlothen's Equal Protection rights were violated. According to Plaintiffs, the Police Officer Defendants used excessive force against McGlothen, despite knowing that he was experiencing a mental health crisis. Record Document 56 at ¶¶ 26-41. Plaintiffs further claim that Ross laughed at and made fun of McGlothen. *Id.* at ¶¶ 31-39. However, Plaintiffs do not enunciate how these allegations—even when taken as true— constitute a violation of McGlothen's Equal Protection rights. First, Plaintiffs do not explain how the Police Officer Defendants' actions constitute discrimination. *See Gibson*, 700 F.3d at 238. Even if Plaintiffs' allegations that Ross laughed and made fun of McGlothen are true, Ross's actions—unprofessional and inappropriate as they may be—do not constitute discrimination.

Second, Plaintiffs do not articulate how McGlothen was treated differently than others similarly situated or outline the actions they believe the Police Officer Defendants would have taken had McGlothen not been suffering from a mental health crisis. *See Gibson*, 700 F.3d at 238. McGlothen had three separate interactions with the Shreveport Police Department; however, it is unclear whether Plaintiffs are alleging that McGlothen's Equal Protection rights were violated during each encounter with the Police Officer Defendants or only during a single interaction. Plaintiffs fail to enunciate how the Police Officer Defendants would have treated others similarly

situated during each of those interactions differently from how they treated McGlothen. Instead, Plaintiffs simply assert that McGlothen's Equal Protection rights were violated without referencing or citing to any specific facts in support of this claim. Considering these deficiencies, the Court finds that Plaintiffs have failed to allege their Equal Protection claims against the Police Officer Defendants.

Plaintiffs do not oppose Defendants' partial motion to dismiss as to their Equal Protection claims against the Responding Fire Defendants. Upon an examination of the merits of the claim, the Court similarly finds that Plaintiffs fail to enunciate how the Responding Fire Defendants discriminated against McGlothen or in what ways they treated him differently from others who were similarly situated.

Accordingly, Defendants' partial motion to dismiss is **GRANTED** with respect to Plaintiffs' Equal Protection claims. These claims are **DISMISSED WITH PREJUDICE**.

### iii.  Failure to Provide Medical Care

Plaintiffs bring Section 1983 claims against the Responding Fire Defendants for failure to provide medical care. *See* Record Document 56 at ¶ 162. "The Fourteenth Amendment guarantees pretrial detainees a right not to have their serious medical needs met with deliberate indifference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (internal quotation marks and citations omitted). "To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official actually drew that inference." *Id.* (internal quotation marks and citations omitted). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference." *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006). "Rather, [a plaintiff] must show that the officials refused to treat him, ignored his complaints,

intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Arenas v. Calhoun*, 922 F.3d 616, 620-21 (5th Cir. 2019). Defendants have asserted qualified immunity as a defense.

### 1. Qualified Immunity

The doctrine of qualified immunity shields government officials from liability for claims against them in their individual capacity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity serves to shield government officials from harassment, distraction, and liability when they perform their duties reasonably, and it applies regardless of whether the official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). A Section 1983 complaint must allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability, . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Consequently, qualified immunity questions should be resolved at the earliest possible stage in litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). While qualified immunity is technically an affirmative defense, once it has been raised, it is the plaintiff's burden to negate the defense. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

In *Saucier v. Katz,* 533 U.S. 194, 201 (2001), the Supreme Court held that a court ruling upon the issue of qualified immunity must apply a two-step analysis. First, the court must determine whether "the facts alleged show the officer's conduct violated a constitutional right." *Id.* Second, if a violation has been established, the court must determine whether the officer's actions were objectively reasonable in light of clearly established law at the time of the conduct in question. *See id.; Freeman v. Gore,* 483 F.3d 404, 411 (5th Cir. 2007). The court may evaluate these steps in whichever order it so chooses.[3] "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. *See Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 343 (1986) (holding that the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law.")). The question of whether an official's conduct was objectively reasonable is a question of law to be decided by the court. *See Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003) (citing *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994)).

To be clearly established, a legal principle must be found in the holdings of either "controlling authority" or a "robust 'consensus of cases of persuasive authority,'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)), and

---

[3] In *Pearson*, the Supreme Court held that while the sequence set forth in *Saucier* is often appropriate, it is no longer mandatory. *Pearson*, 555 U.S. at 236. Instead, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

defined with a "high 'degree of specificity,'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam)). It is not that a case must be directly on point, but rather, existing precedent must have provided sufficient notice that the acts violate the Constitution. *See Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018). The "clearly established" test ensures that officials have "fair warning" that particular conduct violates the Constitution. *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc)).

### 2. Analysis

In its previous ruling, the Court allowed Plaintiffs to amend their complaint pertaining to their claim that the Responding Fire Defendants failed to provide McGlothen medical care. Record Document 47 at 16. Specifically, the Court found that Plaintiffs could not establish that the Responding Fire Defendants "were aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and (2) [they] actually drew that inference." *Id.* Additionally, the Court found that Plaintiffs failed to plead facts "to establish the Responding Fire Defendants' subjective knowledge or that McGlothen's condition was so obvious that they showed a 'wanton disregard' to his 'medical needs.'" *Id.*

In their third amended complaint, Plaintiffs contend that the Responding Fire Defendants failed to take McGlothen's vitals—blood pressure, temperature, pulse, pulse oxygenation, and respiratory rate—during their one-minute and sixteen second evaluation; failed to request additional details about McGlothen's arrest; and failed to notice any of his injuries despite him being visibly "battered, scratched, swollen, and bruised all about his face and body." Record Document 56 at ¶¶ 85, 136-138.

Defendants contend that Plaintiffs' argument incorrectly centers upon what the Responding Fire Defendants should have known. Record Document 58-1 at 12. Specifically, Defendants argue that Plaintiffs "continue to evince a disagreement with the medical care provided to Mr. McGlothen and contend that he could or should have received better medical care[;] [however,] there are simply no facts from which it can be reasonably inferred that the Responding Fire Defendants showed a 'wanton disregard' for his 'medical needs.'" *Id.* (citations omitted).

The Court agrees. First, in their opposition, Plaintiffs argue that Defendants' motion should be denied because the Responding Fire Defendants placed a mask on McGlothen knowing that he was pepper sprayed, which they contend constitutes deliberate indifference. Record Document 60 at 8. This is not an allegation raised in the third amended complaint; instead, in their third amended complaint, Plaintiffs claim merely that an unnamed responding official put the mask on McGlothen to prevent him from spitting on them. *See* Record Document 56 at ¶ 80. At no point in their complaint do Plaintiffs explicitly name any of the Responding Fire Defendants as being culpable for masking McGlothen.

Second, even taking their allegations as true, Plaintiffs have failed to plead facts that establish deliberate indifference. Plaintiffs do not allege that the Responding Fire Defendants failed to treat McGlothen; that they ignored a complaint or request for care by McGlothen; or that they intentionally mistreated McGlothen. Taking Plaintiffs' claims as true, the Responding Fire Defendants' actions *may* rise to the level of negligence. However, negligence does not constitute deliberate indifference. Plaintiffs may disagree with the treatment that McGlothen received by the Responding Fire Defendants, but a mere disagreement with the medical treatment provided to a

pretrial detainee does not rise to the level of deliberate indifference. *See Cadena v. El Paso County*, 946 F.3d 717, 729 (5th Cir. 2020) (citing *Gobert*, 463 F.3d at 346).

Even if Plaintiffs were able to establish that the Responding Fire Defendants failed to provide McGlothen medical care, Plaintiffs did not advance any legal arguments or cite to any facts regarding Defendants' assertion of qualified immunity. Instead, Plaintiffs simply state that the Responding Fire Defendants are not entitled to qualified immunity because their third amended complaint remedied the prior deficiencies. *See* Record Document 60 at 8. Plaintiffs do not list or discuss the two analytical prongs of qualified immunity, they neglect to discuss what an objectively reasonable responder would have done under the circumstances, and they fail to establish that the Responding Fire Defendants' actions were unconstitutional under clearly established law. Plaintiffs make only a vague reference to a case titled *Bailey v. Dallas County*, No. 09-CV-0865-K, 2012 WL 1033502, at *1 (N.D. Tex. Mar. 28, 2012), *aff'd sub nom*, *Bailey v. Quiroga*, 517 F. App'x 268 (5th Cir. 2013), in support of their assertion that the Responding Fire Defendants are not entitled to qualified immunity. *See* Record Document 60 at 8. However, they fail to summarize the facts or holding of that case, enunciate how the facts in *Bailey* are similar to the case before the Court, or provide any analysis of that case in support of their claims.

In conclusion, Plaintiffs have failed to meet their burden. The third amended complaint did not remedy the deficiencies outlined by the Court in its previous memorandum ruling. Moreover, Plaintiffs were unable to rebut Defendants' assertion of qualified immunity. Accordingly, Defendants' motion to dismiss on this issue is **GRANTED**, and Plaintiffs' claims against the Responding Fire Defendants for failure to provide medical care are **DISMISSED WITH PREJUDICE.**

iv.  <u>Civil Conspiracy</u>

Defendants seek dismissal of Plaintiffs' civil conspiracy claims under Section 1983. "To establish a civil conspiracy claim under section 1983, [Plaintiffs] must [allege] . . . that the defendants acted jointly and that some overt act that was done in furtherance of the conspiracy resulted in the deprivation of a constitutional right." *Latiolais v. Cravins*, 484 F. App'x 983, 988-89 (5th Cir. 2012) (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)). The elements of a civil conspiracy claim are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Wackman v. Rubsamen*, 602 F.3d 391, 408 (5th Cir. 2010) (citation omitted).

In its prior memorandum ruling, the Court found that Plaintiffs' complaint was deficient because it did not allege enough facts to plead a civil conspiracy claim or that Defendants had an agreement to "batter McGlothen, deny him medical treatment, or cover up their actions." Record Document 47 at 17. Defendants contend that Plaintiffs have failed to remedy these issues. Record Document 58-1 at 14-15. Plaintiffs contend that they alleged "with specificity that Defendants, all acting in concert, used excessive and unreasonable force upon [McGlothen]" to deprive him of medical attention. Record Document 60 at 10-11.

The Court agrees with Defendants. Just as before, Plaintiffs have failed to establish that Defendants acted in concert with one another to deprive McGlothen of his constitutional rights. Although Plaintiffs represent that Defendants conspired with one another to harm McGlothen, they do not allege a meeting of the minds. Even if they did allege that the Defendants had an agreement with one another to harm McGlothen or to deprive him of medical care, they fail to articulate when a meeting of the minds took place or what the terms of their agreement involved.

16

In their opposition to Defendants' motion, Plaintiffs failed to cite to any law or paragraphs in their complaint in support of their civil conspiracy claims, which is something the Court had noted in its prior ruling. *See* Record Document 47 at 17 (finding that "Plaintiffs do not cite any law or paragraphs in their complaint upon which to base their conspiracy claim[s]."). The Court is not required to accept these conclusory statements as fact.

In sum, Plaintiffs failed to adequately plead a civil conspiracy claim against Defendants. Thus, Defendants' motion to dismiss on this issue is **GRANTED**, and Plaintiffs' civil conspiracy claims under Section 1983 are **DISMISSED WITH PREJUDICE.**

v.   Municipal Liability Claims

Plaintiffs bring two municipal liability claims against the City of Shreveport, alleging that it has adopted a series of policies, procedures, and customs that resulted in the violation of McGlothen's constitutional rights. Record Document 56 at ¶¶ 181-182. Plaintiffs also claim that the City of Shreveport fails to supervise and train its employees. *Id.* In its prior memorandum ruling, the Court found that Plaintiffs' municipal liability claims were too conclusory and did not sufficiently allege facts to support municipal liability claims. *See* Record Document 47 at 20. Defendants argue that Plaintiffs' third amended complaint fails to remedy the deficiencies outlined by the Court. *See* Record Document 58-1 at 23, 25.

As previously mentioned, Section 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against any person acting under color of state law. 42 U.S.C. § 1983. The Supreme Court has held that municipalities are "persons" within the meaning of Section 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, "a municipality cannot be held liable *solely* because it employs a [constitutional] tortfeasor." *Monell*, 436 U.S. at

691. A municipality is liable under *Monell* when the execution of one of its customs or policies was responsible for the constitutional harm. *Id.* at 694.

To successfully prove municipal liability, a plaintiff must establish three elements: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)) (internal marks omitted). An "official policy" can be evidenced through "duly promulgated policy statements, ordinances or regulations," or by a custom that is such a persistent and widespread practice that, although not officially promulgated, it fairly represents a municipal policy because it is "so common and well settled." *Webster v. City of Hous.*, 735 F.2d 838, 841-42 (5th Cir. 1984), *on reh'g,* 739 F.2d 993 (5th Cir. 1984); *see also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 168-69 (5th Cir. 2010). Requiring a plaintiff to identify an official policy ensures that municipalities will only be held liable for constitutional violations that result from the decisions of government officials whose acts can be fairly attributed to those of the municipality itself. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404-05 (1997). At the motion to dismiss stage, "a complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *Henderson v. Harris County, Tex.*, 51 F.4th 125, 130 (5th Cir. 2022) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)) (internal quotation marks omitted).

The existence of an official policy or custom can be established in one of two ways. *Zarnow*, 614 F.3d at 169. "First, a plaintiff must prove either that a pattern of unconstitutional conduct may be shown on the part of municipal actors or employees. . . . Alternatively, it may be

shown that a final policymaker took a single unconstitutional action." *Id.* (internal citations omitted). "A customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*, 237 F.3d at 581; *see Peña*, 879 F.3d at 622 ("To plausibly plead a practice so persistent and widespread as to practically have the force of law, . . . a plaintiff must do more than describe the incident that gave rise to his injury." (cleaned up)). "A pattern requires similarity, specificity, and sufficiently numerous prior incidents." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017) (citing *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009)). "Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).

### 1.  *Official Policy or Custom*

The Court finds that Plaintiffs failed to adequately plead a municipal liability claim with the requisite specificity regarding the adoption of a policy or custom. Plaintiffs represent that they have identified eighteen "policies, practices, and/or customs" adopted by the City of Shreveport that have resulted in "under qualified and undertrained police force and EMS personnel that were ill-equipped to perform obvious and necessary law enforcement activities without exposing the public to unwarranted danger of injury." Record Document 56 at ¶ 182. Plaintiffs' identification of those "policies, practices, and/or customs" is listed as follows verbatim:

> 1) patrolling procedures; 2) *Terry* stops; 3) misdemeanor stops; 4) felony stops; 5) use of force; 6) use of deadly force; 7) use of intermediate force weapons; 8) apprehending/arresting suspects; 9) involuntary mental health holds/arrests; 10) foot pursuits; 11) use of audio/video recording devices; 12) providing medical attention; 13) summoning medical attention; 14) arresting procedures; 15) completion of reports and collection of evidence; 16) completion of Use of Force Reports; 17) investigating officer compliance with policy and procedure and critical incidents; 18) monitoring officer compliance with policy including[:] [] crisis intervention[,] [] emotionally disturbed persons[,] [] early warning systems[,] and [] civil rights laws and violations.

Record Document 56 at ¶ 181.

First, this list set forth by Plaintiffs does not identify any specific policies, procedures, or customs adopted or promulgated by the City of Shreveport. Instead, Plaintiffs have merely provided a list of areas in which they believe the City of Shreveport has failed to provide adequate guidance. Furthermore, Plaintiffs have failed to provide any contextual information about these alleged policies, procedures, or customs, such as their name, date of enactment, or to whom they apply. For example, Plaintiffs do not allege that the City of Shreveport has a specific policy governing *Terry* stops, to whom the policy applies, what portions of the policy are flawed, what additional provisions are required, or how Defendants were non-compliant with this policy. In short, Plaintiffs have failed to identify a specific policy, custom, or practice that resulted in the violation of McGlothen's constitutional rights.

Second, Plaintiffs only identify a single additional incident where they contend that Ross was accused of using excessive force against an individual. According to the third amended complaint, "[i]n 2019, Defendant Ross was accused of excessive force by a female subject. After an incomplete and biased investigation, he was exonerated. During this alleged encounter, Defendant Ross was not utilizing a microphone." Record Document 56 at ¶ 116. However, Plaintiffs fail to provide any additional contextual information about this incident. The Court does not know the underlying facts of that incident or how the facts of that case compare to the facts in the instant case. Plaintiffs do not allege that there were any additional complaints launched against the Shreveport Police Department or Ross, or that two instances of reported excessive force—which includes Plaintiffs' complaint—are sufficient to constitute a pattern.

Third, Plaintiffs failed to allege how these alleged policies, procedures, or official customs resulted in the violation of McGlothen's constitutional rights. Plaintiffs aver that the policies

"demonstrate[e] a deliberate indifference on the part of policymakers of the City [of Shreveport] to the constitutional rights of citizens, including Mr. McGlothen, and [were] the proximate cause of the injuries and damages sustained by Mr. McGlothen . . . ." *Id.* at ¶ 188. However, Plaintiffs fail to allege how these alleged policies constitute deliberate indifference by the City of Shreveport or how McGlothen would not have died but for these policies, practices, and customs. Plaintiffs continue to rely upon conclusory allegations without specifically enunciating the causal link between the policies and the actions they claim that Defendants took against McGlothen. In other words, not only do Plaintiffs fail to identify a policy, practice, or custom, but they also fail to allege facts that could connect those policies, practices, or customs to the underlying constitutional violations. Plaintiffs' third amended complaint is overly conclusory and does not meet the pleading requirements. Accordingly, Defendants' partial motion to dismiss is **GRANTED** with respect to this issue, and this claim is **DISMISSED WITH PREJUDICE**.

### 2.  *Failure to Train and Supervise*

Failure to train and supervise claims are types of *Monell* claims. *See Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021). "The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Id.* (quoting *Peterson*, 588 F.3d at 849) (internal quotation marks omitted). To succeed in their claim, Plaintiffs must demonstrate the following: (1) inadequate training or supervision of the individuals involved; (2) the inadequate training or supervision caused a violation of the plaintiff's constitutional rights; and (3) the inadequate training and supervision constituted deliberate indifference of municipal policymakers to the plaintiff's constitutional rights. *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003). "[T]he focus must be on adequacy of the training program in relation to the tasks the

particular officer must perform." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2018). Deliberate indifference requires actual or constructive notice that a particular omission in a training program causes city employees to violate citizens' constitutional rights, yet the municipality nevertheless chooses to retain that program. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

As the Fifth Circuit has explained, the evidence must demonstrate more than "a mere 'but for' coupling of cause and effect. The deficiency in training must be the actual cause of the constitutional violation." *Shumpert*, 905 F.3d at 317. A pattern of similar constitutional violations by untrained and unsupervised employees is ordinarily necessary to demonstrate deliberate indifference. *Id.* "Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Plaintiffs contend that the City of Shreveport failed to train and supervise its employes on the same eighteen topics that the Court has already enumerated. *See* Record Document 56 at ¶ 182. In their opposition, Plaintiffs raise the same arguments regarding the failure to train and supervise as their official policy, procedure, and custom claim. *See id.* at ¶¶ 182-193.

The Court finds that Plaintiffs have failed to plead a municipal liability claim for the failure to train and supervise. Plaintiffs do not name a specific supervisory procedure or training program they believe the City of Shreveport was required—but did not—provide. Instead, Plaintiffs again list the same eighteen topics, identifying them in this portion of their argument as the deficient areas in which they believe the City of Shreveport's employees *should* be trained. Plaintiffs also fail to specifically allege how the City of Shreveport's current training programs or supervision procedures are deficient or with which training or supervisory standards the City of

Shreveport fails to comply. Plaintiffs also fail to adequately allege how the deficiencies in employee training and supervision resulted in the alleged constitutional violations, or how these alleged deficiencies rose to the level of deliberate indifference. Plaintiffs' third amended complaint continues to raise a series of overly conclusive allegations. These claims do not provide Defendants with adequate notice of what specific actions or decisions Plaintiffs believe to have resulted in the alleged constitutional violations. Accordingly, Defendants' partial motion to dismiss is **GRANTED** with respect to this issue, and this claim is **DISMISSED WITH PREJUDICE**.

### vi.   Supervisory Liability

As the Court has already mentioned, Plaintiffs bring supervisory liability claims against Raymond and Wolverton. Record Document 56 at 49. "Section 1983 does not create supervisory or *respondeat superior* liability." *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002)) (internal marks omitted). Instead, "a plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Id.* (quoting *Evett*, 330 F.3d at 688) (internal quotation marks omitted). However, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169-170 (5th Cir. 1985)).

In its prior ruling, the Court permitted Plaintiffs to amend their complaint pertaining to their supervisory liability claims, finding that "Plaintiffs' supervisor[y] liability claims against

Chief Raymond and Chief Wolverton appear to mirror their *Monell* claims regarding deficient policies or practices as it relates to officer training, investigation, discipline, etc. For the same reasons, Plaintiffs have failed to plead sufficient facts to impose supervisor liability . . . ." Record Document 47 at 20.

The Court finds that Plaintiffs were unable to remedy their deficient complaint regarding their supervisory liability claims. Plaintiffs do not allege that Raymond and Wolverton were personally involved in the events leading up to McGlothen's death. Instead, they reiterate their contention that the policies governing the City of Shreveport's employees—including those governing investigations of alleged constitutional violations—were so deficient that Raymond and Wolverton should be held liable. *See* Record Document 60 at 21.

Plaintiffs' supervisory liability claims continue to appear duplicative of their municipal liability claims. The Fifth Circuit evaluates supervisory liability claims using the same standard that is used to assess municipal liability claims. *See Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 426 (5th Cir. 2006) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994)). Just as it found regarding Plaintiffs' municipal liability claims, the Court finds that Plaintiffs failed to plausibly and sufficiently allege a causal relationship between the alleged policy deficiencies governing investigations and the alleged violations of McGlothen's constitutional rights.

Accordingly, Plaintiffs have failed to adequately plead supervisory liability claims against Raymond and Wolverton. Defendants' partial motion to dismiss is **GRANTED**, and these Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

### c. Conspiracy Under Section 1985

In its prior ruling, the Court allowed Plaintiffs to amend their complaint regarding their conspiracy claims brought pursuant to 42 U.S.C. § 1985(3). Record Document 47 at 18. Specifically, the Court found:

> Plaintiffs make no specific argument as to this claim in their opposition brief. Instead, Plaintiffs lump their conspiracy claims into one general claim of conspiracy. Because of the lack of argument as to this specific claim, the Court considers this claim to be abandoned. Moreover, this claim should be dismissed for the same reasons as Plaintiffs' § 1983 conspiracy claims and because Plaintiffs have failed to allege any facts to show that the conspiracy was motivated by a class-based animus.

*Id.* (internal quotation marks and citations omitted).

> To state a conspiracy claim under § 1985(3), a plaintiff must allege:
>
> (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. In so doing, the plaintiff must show that the conspiracy was motivated by a class-based animus.

*Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994) (citations omitted).

Defendants seek dismissal of these conspiracy claims, arguing that Plaintiffs fail to allege any facts that establish the existence of an agreement between Defendants or that such agreement was motivated by a class-based animus. Record Document 58-1 at 14-15. The Court agrees and finds that Plaintiffs were unable to cure the above-referenced deficiencies. In their opposition to Defendants' motion, Plaintiffs only discuss their conspiracy claims generally and do not allege any facts, advance any legal argument, or cite to any authority specific to their Section 1985 conspiracy claims, including that this conspiracy was motivated by a class-based animus. In fact, Plaintiffs fail to write "Section 1985" a single time in their opposition brief. The Court has already dismissed Plaintiffs' civil conspiracy claims under Section 1983. Considering the lack of

specific briefing on this issue, the Court sees no reason to depart from its finding here. Defendants' motion to dismiss on this issue is **GRANTED**. Plaintiffs' conspiracy claims under Section 1985 are **DISMISSED WITH PREJUDICE**.

### III.   Conclusion

For the foregoing reasons, **IT IS ORDERED** that Defendants' partial motion to dismiss [Record Document 58] is **GRANTED** with respect to the following claims: Equal Protection, civil conspiracy, and conspiracy under Section 1985 against all Defendants; failure to provide medical care against the Responding Fire Defendants; municipal liability against the City of Shreveport; and supervisory liability claims against Raymond and Wolverton. Those claims are hereby **DISMISSED WITH PREJUDICE**. Defendants' partial motion to dismiss is **DENIED as moot** with respect to the due process and summary punishment claims because these issues were previously dismissed. The remaining claims for trial include: excessive force, failure to intervene, and wrongful death pursuant to Louisiana state law against all Defendants; the failure to provide medical care against the Police Officer Defendants; and the direct action claim against American Alternate Insurance Corporation.

**THUS DONE AND SIGNED** this 28th day of September, 2023.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE