UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TAMERA JONES ET AL                    CIVIL ACTION NO. 21-690

VERSUS                                JUDGE EDWARDS

AMERICAN ALTERNATIVE                  MAG. JUDGE HORNSBY
INSURANCE CORP ET AL

## MEMORANDUM ORDER

Before the Court is a Motion for Summary Judgment (ECF No. 139), filed by Officer Treona McCarter, Officer Brian Ross, Officer D'Marea Johnson, Officer James LeClare, and the City of Shreveport ("Defendants").  Tommie Dale McGlothen III, Tamera Jones, and Avery Jones ("Plaintiffs") oppose.  ECF No. 145.  Defendants replied.  ECF No. 149.

After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED**.

### I.    BACKGROUND[1]

Plaintiffs bring this suit as the survivors of Tommie McGlothen, Jr. ("McGlothen").  *See* ECF No. 136 at 1.  McGlothen died after being arrested by the Shreveport Police Department.  *Id*. at 6.  The only remaining claims are state-law negligence claims predicated on the Defendant Officers' alleged failure to provide medical care to McGlothen.  *Id*. at 24.  These claims are properly divided into two: (A) the officers' alleged failure to take McGlothen into protective custody, and (B) the officers' alleged failure to obtain medical care from EMS.  *See* ECF No. 145 at 4.

---

[1] We source the relevant background here from our prior rulings.  *See* ECF Nos. 47, 62, 99, and 136.

1

McGlothen suffered from paranoid schizophrenia.  ECF No. 56 at 9.  On the date in question, he had stopped taking his medication.  *Id.*  His father called the police because he was "running around and acting stupid."  *Id.*  His father advised police that McGlothen was unarmed and would probably run from them.  *Id.*  The police[2] arrived and spoke with McGlothen and his family.  *Id.* at 9–10.  McGlothen had apparently calmed down by that time, though he was still out of his right mind—referring to himself as "Dale Bey, Moorish American National."[3]  *Id.* at 10–11.  The officers informed McGlothen's family that he did not presently meet the criteria for commitment.  *Id.*  McGlothen's family was advised to contact the Caddo Parish Coroner for a "coroner's commitment" the next day.  *Id.*  The officers left the McGlothen residence without incident or force used.  *Id.*

Less than an hour later, a new officer—Ross—encountered McGlothen nearby.  *Id.* at 11.  Officer Ross was approached by Nathaniel King ("King"), who advised that McGlothen had attempted to open the door of his truck.  *Id.* at 11–12.  After receiving this report, Officer Ross located and confronted McGlothen, instructing McGlothen to "put [his] hands on the car."  *See* ECF 117-3, Disc 1 – Ross Video 1, Camera 1, 18:26:20–18:26:30.  As McGlothen approaches, Officer Ross again instructs him to put his hands on the car and tells him to "back up" three times.  *Id.* at 18:26:30–

---

[2] This interaction involved Officer Johnson and two officers who are not parties to this suit.  *See* ECF No. 117-1 at 16.

[3] This was McGlothen's assumed name and title.  *See* ECF 117-3, Disc 1 – Coker Video, Camera 1, 17:40:59–41:04.  This is a common convention of self-identification among sovereign citizens.  *See e.g. Bey v. Prator,* 53 F.4th 854 (5th Cir. 2022); *see also* UNC School of Government, *A quick guide to sovereign citizens, November 2013,* p.5, https://share.google/o9TciM9gOm6Y6gNCU ("One common factor in much sovereign citizen identification, particularly for blacks, is inclusion of 'Bey' … in the person's name….").

18:26:36. Officer Ross asks McGlothen why he was running, but McGlothen does not answer. *Id.* at 18:26:38–18:26:46. Then, apparently, McGlothen takes his hands off the car and starts moving. *Id.* at 18:26:46–18:26:49 (Officer Ross: "Come back here, man, what the f*** is you doin'? Keep your hands on the car."). Officer Ross then warns McGlothen to "stop tensing up," or he would take him to the ground. *Id.* at 18:26:49–18:26:51. McGlothen then again recites his assumed name and title: "Dale Bey, Moorish American National." *Id.* at 18:26:51–18:26:54. McGlothen then moves in front of the car, away from Officer Ross, with both hands free. *Id.* at 18:26:54–18:26:55. As forewarned, Officer Ross then took McGlothen to the ground. *Id.* at 18:26:55–18:26:57. After a brief struggle on the pavement, and ordering McGlothen to turn around, and to "stop playing with [him]," Officer Ross cuffs McGlothen, stands him up, and places him in the back of his patrol car. *Id.* at 18:26:57–18:27:40; *see also id.*, Camera 2, at 18:27:34–18:27:40.

Officer Ross then hails and takes King's statement about the vehicle trespass. *Id.*, Camera 1, at 18:27:48–18:28:40. In the interim, Officer McCarter arrives. *Id.*, Camera 1, at 18:28:34–18:28:37 (the female voice in background audio). After receiving the report, Officer Ross begins to question McGlothen. *Id.*, Camera 2, at 18:29:14. Officer Ross first asks his name; McGlothen responds, "Dale Bey," twice more. *Id.* at 18:29:15–18:29:20. Ross then asks why McGlothen attempted to enter King's vehicle. *Id.* at 18:29:25–18:29:28. McGlothen refuses to answer, stalling Officer Ross with sovereign citizen speak. *Id.* at 18:29:28–18:32:37. After explaining to King that, under the City's coronavirus pandemic policy, McGlothen would not be taken into custody for a non-violent offense, King declined to press charges. *Id.* at

3

18:40:30–18:41:09.  So Officers Ross and McCarter set McGlothen loose "to walk the[] streets" of Shreveport.  *Id.* at 18:47:10–18:47:39; *see also id.*, Camera 1.

Less than an hour later, McGlothen strikes again.  This time, he encounters DeWanda and Eddy Hamilton ("DeWanda" and "Eddy") in the driveway of their home.  ECF No. 117-21 at 2-3.[4]  McGlothen first attempts to enter DeWanda's car with DeWanda inside.  ECF No. 117-23 at 2.  Witnessing this, Eddy verbally confronts McGlothen, who charges at Eddy, so Eddy pushes him to the ground.  *Id.* at 3.  Eddy runs into his house, and McGlothen runs in after him.  *Id.*  Eddy then pulls a gun on McGlothen, which causes McGlothen to go back outside.  *Id.*  Another scuffle ensues in the front yard, and once McGlothen is on the ground, Eddy runs back inside and locks the door.  *Id.* at 4.  Meanwhile, DeWanda is on the line with 911, in her locked car, in the driveway, advising the dispatcher that she and her husband are being attacked.  ECF No. 117-21 at 3–4.  Still nearby from their previous encounter with McGlothen, Officers McCarter and Ross head toward the scene.  *See* ECF No. 117-3, Disc 1 – McCarter Video, Camera 1, at 19:42:20–19:42:26; *see also id.*, Disc 1 – Ross Video 2, Camera 1, at 19:42:18–19:42:35.

Officer McCarter is the first to confront McGlothen.  *Id.*  Officer Ross followed seconds behind.  *Id.*  For at least two and a half minutes, Officers McCarter and Ross attempt unsuccessfully to restrain McGlothen while McGlothen howls, charges toward, swings at, and stabs with a pen in response.  *Id.* at 19:42:36–19:45:03; ECF No. 117-6 at 60–61, 93–95, 116.  Officer Johnson then arrives.  *Id.* at 19:45:05–

---

[4] There are four transcript pages per record page; as usual, the citation is to the record page.

19:45:15. And Officer LeClare, thirty seconds later. *Id.* at 19:45:34–19:45:39. Another minute goes by, and McGlothen is finally handcuffed—after being struck, pepper-sprayed, and tased repeatedly. *Id.* at 19:46:54–19:46:57; ECF No. 117-1 at 43–44.

The lull doesn't last long, however. Once restrained on the hood of the car, McGlothen turns and spits on Officer McCarter. *See* ECF No. 117-3, Disc 1 – McCarter Video, Camera 1, at 19:47:11–19:47:14. In response, Officer LeClare forcefully elbows McGlothen between his neck and shoulder twice, and Officer McCarter punches McGlothen in the back thrice. *Id.* at 19:47:15–19:47:17. With McGlothen now limp on the pavement, the officers heave him into the backseat of Officer Johnson's patrol vehicle. *Id.* at 19:47:18–19:47:47. He is placed upside down and contorted, with his legs in the air and head in the footwell. *Id.*, Disc 2 – Johnson Video, Camera 2, at 19:47:18–19:47:50. A few minutes later, the officers take McGlothen out of the vehicle and reorient him to lie on his back across the seat. *Id.* at 19:47:51–19:51:30. McGlothen then kicks and spits in solitude, until the officers again reorient him to a seated position and place leg shackles on him. *Id.* at 19:51:31–19:55:08. It is during this encounter that McGlothen says "please don't kill me," and "I can't breathe." *Id.* at 19:54:25–19:54:33. McGlothen reiterates "Dale Bey, Moorish American National" and begins reading aloud various words and numbers printed in the backseat of Officer Johnson's vehicle. *Id.* at 19:55:05–19:56:31. Ten minutes later, an officer places a spit hood on McGlothen and removes him again from the backseat. *Id.* at 20:04:36–20:05:10. EMTs then cursorily examine McGlothen, and he is again placed in Officer Johnson's backseat. *Id.* at 20:05:10–20:08:10. McGlothen, sitting upright, stops breathing approximately twelve minutes later, at 8:20 p.m. *Id.* at

20:08:10–20:20:46. The officers realize that McGlothen is non-responsive at 8:35 p.m. *Id.* at 20:20:47–20:35:30. After unsuccessful on-scene CPR, McGlothen was transported to the hospital, where he was resuscitated. ECF No. 117-1 at 26 (citing record). He died shortly thereafter at 2:36 a.m. *Id.*

Plaintiffs accordingly filed this suit on March 16, 2021, asserting a bevy of federal and state law claims.[5] *See* R. Doc. 1. Following extensive motion practice, *see* ECF Nos. 27, 47, 62, 99, and 136, only state-law negligence claims remain against the Officer Defendants. ECF No. 136 at 24. It is on those claims that Defendants now (again) seek summary judgment in their favor. ECF No. 139. Plaintiffs oppose. ECF No. 145. Defendants replied. ECF No. 149. More below.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Id.* (internal quotations omitted). In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in

---

[5] Additionally, arising out of the same incident, the Officer Defendants were criminally prosecuted in state court and acquitted. *See* ECF No. 117-1 at 13, n.5.

favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.,* 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (cleaned up). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

### III.   ANALYSIS

### A. Protective Custody

Plaintiffs contend that Officer Johnson and Officer Ross violated their duty of care to McGlothen when they declined to involuntarily commit him to protective custody pursuant to La. R.S. 28:53(L). *See* ECF No. 145 at 22–23. We have already addressed the federal corollary to these claims—holding that one does not have a federal constitutional right to involuntary commitment. *See* ECF No. 136 at 8–10. Still, Plaintiffs bring a negligence claim under Louisiana law. *See* ECF No. 145 at 22–23. Defendants counter that they were not negligent, and even if they were, they are entitled to the statutory immunity afforded by La. R.S. 9:2798.1. *See* ECF No. 139 at 22–24. As that immunity is both dispositive and unsettled, we begin there.

"[Q]ualified immunity does not apply to Louisiana [negligence] claims. Instead, Louisiana's discretionary immunity statute applies to those claims." *Glaster v. City of Mansfield*, No. 14–627, 2015 WL 852412, at \*10 (W.D. La. Feb. 26, 2015); *see also Kelly v. Stassi,* 587 F.Supp.3d 409, 427 (M.D. La. 2022) ("Negligence is a distinct claim, and, while it does entail analysis of objective reasonableness, it cannot be said to 'mirror' federal constitutional law."); *but see Shepherd v. City of Shreveport,* No. 14-2623, 2018 WL 1513679, at \*9 (W.D. La. Mar. 27, 2018), *aff'd,* 920 F.3d 278 (5th Cir. 2019) ("Any other residual state law negligence claims also fail because this Court has found Cpl. Tucker's actions to be reasonable under the qualified immunity analysis.").[6]

 La. R.S. 9:2798.1 exempts public entities and their employees from liability for their policymaking or discretionary acts.  La. R.S. 9:2798.1. The statute provides:

> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

---

[6] The affirming opinion in *Shepherd* did not address the district court's conflation of state-law negligence with the qualified immunity analysis for constitutional claims and instead resolved the issue on the ground that no negligence claim was adequately alleged, thus leaving the district court's reasoning on that point unendorsed. *See* 920 F.3d at 287.  Further complicating the matter, while the instant ruling was being drafted, the Fifth Circuit issued its opinion in *Carter v. Dupuy*, No. 25-30213, 2026 WL 1071891 (5th Cir. Apr. 20, 2026).  *Carter* reasons that "excessive force can constitute negligence" and that when the use of force is not "clearly excessive," a negligence claim predicated on that force fails under Louisiana law. *See id.* at \*3.  But *Carter* is distinguishable in two respects. First, it bundles negligence and battery together.  Second, like *Shepherd*, it arises in the context of an officer's use of force, not an alleged failure to provide medical care.  We needn't decide—and therefore do not decide—whether a finding of qualified immunity on a Fourth Amendment excessive force claim precludes a *negligence* claim arising from the same conduct, although it generally does for a *battery* claim.  *See Green v. Strickland*, No. 20-601, 2026 WL 936348, at \*10 (W.D. La. Mar. 30, 2026) (citing *Penn v. St. Tammany Parish Sheriff's Office*, 843 So.2d 1157, 1161 (La. Ct. App. 2003)).  Accordingly, to the extent some courts have collapsed these analyses in use-of-force cases, *see Shepherd*, 2018 WL 1513679, at \*9; *Carter*, 2026 WL 1071891, at \*3, we do not in this case.  Louisiana law instead provides an independent immunity framework for negligence claims, governed by La. R.S. 9:2798.1.

C. The provisions of Subsection B of this Section are not applicable:

(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or

(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

Louisiana courts have devised a two-step inquiry for determining whether the statute's policymaking or discretionary acts immunity applies to a given set of facts. First, a court must look to whether a statute, policy, or regulation required the government employee to follow the particular course of conduct at issue. *Aucoin v. Larpenter*, 324 So.3d 626, 637 (La. Ct. App. 2021). If so, then the act or omission did not involve discretion and the immunity provisions of La. R.S. 9:2798.1 do not apply. *Id.* Second, if the act or omission did involve discretion, "the court must then determine whether that discretion is the kind that is shielded by the statutory immunity, that is, discretion grounded in social, economic, or political policy." *Id.* at 637–38. "In other words, when the government acts negligently for reasons unrelated to public policy considerations, it is liable to those it injures." *Id.* at 638; *see also Gregor v. Argenot Great Cent. Ins. Co.*, 851 So.2d 959, 968 (La. 2003) (same); *Dominique v. St. Tammany Parish*, 313 So.3d 307, 315 (La. Ct. App. 2020) (same).

That said, La. R.S. 9:2798.1 has become somewhat of a Hydra in this case: every time we attempt to dispense with it, it grows two more heads. The question "[s]ignificant[] for this Court's analysis," is whether a police officer's hands-on acts or omissions—such as failing to take someone into protective custody or to administer post-arrest medical care—are covered by this immunity. *See Randle v. Tregre,* 147

9

F.Supp.3d 581, 594 (E.D. La. 2015). The cases point in two directions. Some courts draw a firm line between decisions made at the ministerial or operational levels. Other authorities collapse that distinction and ask simply whether the conduct is grounded in discretion. After a long journey, we agree with the latter approach.

Earlier in this case, without much fanfare, we held that "9:2798.1 is inapplicable to firefighters tending to a medical emergency, which is an 'operational task' not a 'policy decision.'" *See Jones v. Am. Alternative Ins. Corp,* No. 21-690, 2024 WL 3897149, at *2 (W.D. La. Aug. 21, 2024) (quoting *Saine v. City of Scott*, 819 So.2d 496, 500–501 (La. Ct. App. 2002)). Defendants apparently do not like that we relied on *Saine*, or that the Plaintiffs continue to cite it, averring that *Saine* and everything else written by the Louisiana Third Circuit is "neither binding nor persuasive for this Court." *See* ECF No. 149 at 6. Well, this is (now) a diversity case applying only Louisiana law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938). So, Defendants are wrong on precedential value. *See Texas Dep't of Hous. & Cmty. Affs. v. Verex Assur., Inc.,* 68 F.3d 922, 928 (5th Cir. 1995) (quoting *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237 (1940)) ("[A] decision by an intermediate appellate state court 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'").

And *Jones* and *Saine* are far from alone. *See Fridge v. City of Marksville,* No. 15-1998, 2019 WL 1923445, at *8 (W.D. La. Apr. 8, 2019), *report and recommendation adopted,* No. 15-1998, 2019 WL 1923340 (W.D. La. Apr. 26, 2019) ("The decisions of police officers working in the field are 'operational level' and discretionary immunity

10

is not applicable because they are not engaged in policy-making or ministerial acts."); *Hebert v. Adcock,* 55 So.3d 1007, 1014 (La. Ct. App. 2011) (Genovese, J.), *writ denied,* 62 So.3d 92 (La. 2011) ("[T]he conduct of Officer Davis in entering Mr. Hebert's home and his subsequent 'protective sweep' of Mr. Hebert's home is not immune from liability under La. R.S. 9:2798.1 because that statute does not protect against legal fault or negligent conduct at the operational level."); *Randle,* 147 F.Supp.3d at 594 ("[Sheriff's deputies] are not protected by La. R.S. 9:2798.1 because the statute 'does not protect against legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions'.... the allegations arise from defendants' purported decisions not to intervene when excessive force was allegedly used on plaintiff during the consent search, as well as from their alleged failure to obtain medical treatment for plaintiff."); *Peterson v. City of Tallulah*, 981 So.2d 192, 195 (La. Ct. App. 2008) (citing *Fowler v. Roberts*, 556 So.2d 1 (La. 1989), *on reh'g*, 556 So.2d 13 (La. 1990)) ("Immunity based on La. R.S. 9:2798.1 is allowed when a policy judgment is made at the ministerial level, not at the operational level."); *Francis v. Mouton*, No. 21-02052, 2025 WL 2620389, at *9 (W.D. La. Sept. 10, 2025) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005); and *Skinner v. Ard*, No. 19-66, 2021 WL 388830, at *13 (M.D. La. Feb. 3, 2021)) ("Courts routinely dismiss claims of negligent hiring, training, and supervision against the state and its officials based on discretionary immunity, reasoning that the decisions made by state officials to hire, train, and supervise are discretionary – not operational – in nature."); *Lockett v. New Orleans City*, 639 F.Supp.2d 710, 745 (E.D. La. 2009), *aff'd*, 607 F.3d 992 (5th Cir. 2010), *cert. den.*, 562 U.S. 1003 (2010) (quoting *Saine*, 819 So.2d at 500–501)

11

("Section 9:2798.1 'does not protect against legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions; i.e. decisions based on social, economic, or political concerns.'"); *Frank v. Parnell,* No. 18-978, 2019 WL 2438685, at \*9 (W.D. La. May 14, 2019), *report and recommendation adopted,* No. 18-978, 2019 WL 2479462 (W.D. La. June 10, 2019) (quoting *Lockett,* 639 F.Supp.2d at 745) ("Discretionary immunity 'protects the government from liability only at the policy-making or ministerial level, not at the operational level.'").  Taken together, these cases treat discretionary immunity as inapplicable to officers' on-the-ground conduct, characterizing such acts as "operational" and therefore outside the statute's reach.

But there are those, including ourselves in another case, who have taken a more expansive view of the immunity's applicability, to include acts of officers at the operational level. *See Thomas v. Wright*, No. 23-1614, 2025 WL 946985, at \*4–5 (W.D. La. Mar. 27, 2025).[7]  We begin with two unpublished Fifth Circuit cases that Defendants insist, unlike the Louisiana Third Circuit's opinions, "are binding on this Court." *See* ECF No. 149 at 6.  Defendants are again not quite right on precedential value. *See Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5th Cir. R. 47.5.4) ("An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority.").  That said, we will work backward from *Addington v. Wells,* No. 22-30220, 2023 WL 2808466 (5th Cir. Apr. 6, 2023).

---

[7] In that case, the plaintiff failed to oppose the applicability of the immunity; they forfeited it. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397–98 (5th Cir. 2021); *but see United States v. Ball,* No. 25-60396, 2026 WL 1041938, at \*1 (5th Cir. Apr. 16, 2026) (Oldham, J., concurring) ("Courts have the power and duty to find and apply the correct legal principles regardless of what the parties say.").

The Fifth Circuit in *Addington* held that La. R.S. 9:2798.1 applied where a correctional officer at a parish prison was allegedly negligent in failing to administer insulin to an inmate, and in failing to request immediate medical attention after filling out an unusual occurrence report documenting high blood sugar levels. *Id.* at *7–8. There is no explicit discussion of whether these tasks were "operational"—the Fifth Circuit concluded that they constituted an exercise of "policy-based discretion" and were thus subject to La. R.S. 9:2798.1. *See id. Rombach* is much the same. *See Rombach v. Culpepper,* No. 20-30554, 2021 WL 2944809, at *9–10 (5th Cir. July 13, 2021). In *Rombach*, the Fifth Circuit found that "individual correctional … officers' decisions to provide (or not to provide) certain care to Rombach were ultimately the result of their discretion." *Id.* at *10. It then held that "the individual officers are protected by Louisiana's qualified immunity statute." *Id. Rombach*, like *Addington*, rested heavily on the Louisiana First Circuit's opinion in *Aucoin,* 324 So.3d at 636–40. *Aucoin* held that "the care administered and provided to prisoners 'involve[s] discretion.'" *Rombach*, 2021 WL 2944809, at *10 (quoting *Aucoin*, 324 So.3d at 638). But *Aucoin* is not entirely square with *Rombach*.

*Aucoin*'s immunity analysis centered around the alleged negligence of Petie Neal, the "medical administrator" of a jail. *See Aucoin*, 324 So.3d at 630. Significantly, the *Aucoin* court explained that "Aucoin's claims against Neal in this matter are not related to emergency care Neal rendered to Aucoin while in the performance of his medical duties. Rather, Aucoin's claims against Neal are related to Neal's position and duties as the medical administrator of TPCG." *Id.* at 636. The *Aucoin* court then reasoned that, beyond certain mandated minimums, jails are

13

statutorily empowered by La. R.S. 15:703 to exercise discretion in administering medical care in their jails, which encompassed "Neal's actions *regarding his duties as the medical administrator* of TPCIC," entitling him to La. R.S. 9:2798.1 immunity. *Id.* at 638–639 (emphasis added).  This point is where *Rombach* quietly leapt from *Aucoin*, when it said "*[a]nalogously*, [] the individual [correctional] officers' decisions to provide (or not to provide) certain care to Rombach were ultimately the result of their discretion." *Rombach*, 2021 WL 2944809, at *10 (emphasis added).  Remember, *Aucoin* did not provide for discretionary immunity to "individual correctional officers"—it was for the "medical administrator."  *See id.*  Indeed, *Aucoin* itself says what the first camp has said, "[t]he immunity statute does not protect operational governmental decisions…." *Aucoin,* 324 So.3d at 638.  *Rombach* thus extends *Aucoin* in a critical way: whereas *Aucoin* focused on administrative decision-making, *Rombach* attributes the same policy-based discretion to frontline actors.  But *Rombach* cited an additional case when it leapt in favor of discretionary immunity for the individual correctional officers.  *See Rombach*, 2021 WL 2944809, at *10.

That second case is *Dominique,* 313 So.3d 307.  Like the *Aucoin* court, the *Dominique* court explained that "[t]he immunity statute does not protect operational governmental decisions…," but unlike in *Aucoin*, *Dominique* conferred immunity to the boots on the ground—there, sheriff's deputies.  *See Dominique,* 313 So.3d at 315–16.  *Dominique* is all the more instructive because it involves the same type of decision at issue here: whether to take a person into protective custody under La. R.S. 28:53(L).  *See id.*  The *Dominique* court reasoned that because La. R.S. 28:53(L) is permissive—an "officer *may* take a person into protective custody"—that the act of

taking a person into protective custody is *discretionary*, and that the policy considerations underlying 28:53(L) impute to the officers, making them subject to La. R.S. 9:2798.1. *See id.* Two judges of the five-judge panel dissented in part, disagreeing with the application of La. R.S. 9:2798.1, although they do not tell us why. *See id.* at 320 (Burris, J., joined by Guidry, J., concurring in part and dissenting in part). We promise we're closer to an answer.

In a footnote, relying on *Sauceberry v. Webre*, 2016-0719, 2017 WL 1788096, *4, n.1 (La. Ct. App. 5/5/17), *writ denied*, 229 So.3d 931 (La. 2017), the *Dominique* court explains that they do not take *Gregor*, 851 So.2d at 967, to have overturned *Fowler*, 556 So.2d at 1. *See Dominique,* 313 So.3d at 315, n.7. This is important because *Gregor*, an "internally inconsistent … plurality opinion" that purported to overturn *Fowler*, while resting its conclusion on a progeny of *Fowler*, held that La. R.S. 9:2798.1 "does not make a distinction between *operational acts* and *ministerial* or *policymaking acts*." *Gregor*, 851 So.2d at 967.

So, that *Dominique* resurrects *Fowler* would seem dispositive, as *Fowler* set forth the rule that La. R.S. 9:2798.1 "protects the government from liability only at the policy making or ministerial level, not at the operational level." *Fowler,* 556 So.2d at 15. And again, viewing the whole opinion in context, *Gregor* talks a much bigger game than it stands for—apparently leaving intact *Fowler*'s progeny and the operational exception. *See Gregor*, 851 So.2d at 967–968. Furthermore, *Fowler*'s continued vitality is bolstered by the heap of post-*Gregor* cases, beginning with *Saine*, that applied *Fowler*'s prohibition of immunity for acts at the operational level. *See ante* at 8-10. Still, another of *Gregor's* pronouncements sheds more light.

*Gregor* characterized *Fowler*'s reliance on the Federal Tort Claims Act ("FTCA") in analyzing La. R.S. 9:2798.1 as "fatally flawed." *See Gregor*, 851 So.2d at 967. But *Addington*,[8] having just cited *Gregor* the sentence prior, then provides the anti-*Gregor*: "Louisiana courts have interpreted this immunity in line with the discretionary function immunity provided by the Federal Tort Claims Act." *Addington,* 2023 WL 2808466, at *5. This introduces a new short in the circuit. For if La. R.S. 9:2798.1 still tracks § 2680(a) of the FTCA—as *Addington* and *Fowler* suggest—then acts at the operational level are susceptible to discretionary immunity.

In *Gaubert,* the United States Supreme Court dispensed with the ministerial/operational distinction in the § 2680(a) context and made clear that the relevant inquiry is whether the challenged conduct, *at whatever level*, involves discretion grounded in, or susceptible to, policy considerations. *See United States v. Gaubert,* 499 U.S. 315, 325 (1991) ("Discretionary conduct is not confined to the policy or planning level."). That strangely[9] enough lands us right back at *Gregor*'s holding, with both *Gregor* and *Gaubert* dismissing the "nonexistent dichotomy between discretionary functions and operational activities" expressed in *Fowler*. *See Gaubert,* 499 U.S. at 326; *Gregor*, 851 So.2d at 967 ("A review of the Louisiana statute shows that it does not make a distinction between *operational acts* and *ministerial* or *policymaking acts*.").

---

[8] *Addington* never engages the ministerial/operational distinction. *See* 2023 WL 2808466 at *7.

[9] Chief Justice Calogero foresaw the confusion to come. *See Gregor,* 851 So.2d at 973 (Calogero, C.J., concurring) ("For example, at one point, the plurality emphasizes that La.Rev.Stat. 9:2978.1(B), unlike the federal jurisprudence applying the federal tort claim exception, makes no distinction between operational-level acts or omissions and ministerial or policy-making acts or omissions. *Ante,* p. 967. However, the plurality does not discuss what import this lack of a distinction would have on how a Louisiana court should apply La.Rev.Stat. 9:2978.1(B).").

Thus, whether one begins with *Gregor* or *Fowler*, both paths—properly understood—lead to the same place.  If you take *Gregor* as the Louisiana Supreme Court's most recent pronouncement on the subject, La. R.S. 9:2798.1 can apply to police officers on the street.  *See Gregor*, 851 So.2d at 967.  Or if *Fowler* controls, we can look to § 2680(a) of the FTCA, which again provides that ground-level employees may be immune because "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case."  *See Gaubert,* 499 U.S. at 325 (cleaned up).  *Fowler's* progeny itself adopted *Gaubert's* approach.  *See Rick v. State,* 630 So. 2d 1271, 1276 (La. 1994) (citing *Gaubert,* 499 U.S. at 325–26) ("Decisions at an operational level can be discretionary if based on policy.").  Cognizant not to let an inartful line "impermissibl[y] repeal [] part of a substantive immunity right," *see Gregor*, 851 So.2d at 967, we conclude that the ministerial/operational level distinction adopted by *Fowler*, and applied since, *see Saine*, 819 So.2d at 500-501, including earlier in this case, *see Jones,* 2024 WL 3897149, at *2, is not in comport with Louisiana law and thus does not control.  Conversely, for those keeping score, *Rombach* and *Dominique* appear to have leapt correctly.  *See Rombach*, 2021 WL 2944809, at *10; *see also Dominique,* 313 So.3d at 315–16.

Thus, the relevant inquiry, again, is simply whether the challenged conduct involved discretionary judgment grounded in policy considerations.  *See id.*  Under that standard, La. R.S. 9:2798.1 may apply to officers making on-the-ground decisions, including those challenged here.  *See id.*

That settled, the question becomes whether Officer Johnson and Officer Ross's failure to take McGlothen into protective custody was otherwise an exercise of "policy-based discretion." *See Addington,* 2023 WL 2808466, at *7 (quoting *Roberts,* 397 F.3d at 296). Remember, *Dominique* concerned sheriff's deputies' failure to take an individual into protective custody. *See Dominique,* 313 So.3d at 315–16. Again, as *Dominique* pointed out, the statute that authorizes peace officers to take people into protective custody grants those officers discretion—the statute does not mandate custody. *Id.* (quoting La. R.S. 28:53(L)(1) (explaining that an officer "*may* take a person into protective custody…."). And as for step two under *Aucoin*, the policy considerations underlying La. R.S. 28:53(L) are presumed to impute to an officer making that discretionary determination. *See Dominique,* 313 So.3d at 316 (citing *State of Louisiana v. Public Investors, Inc.*, 35 F.3d 216, 221 (5th Cir. 1994)). We thus find that Officer Johnson and Officer Ross were exercising their policy-based discretion. *See Addington,* 2023 WL 2808466, at *7.

Furthermore, Plaintiffs have not put forth evidence that McGlothen was clearly "acting in a manner dangerous to himself or dangerous to others, [was] gravely disabled, and [was] in need of immediate hospitalization to protect such a person or others from physical harm," *see Dominique,* 313 So.3d at 316 (quoting La. R.S. 28:53(L)), such that Officer Johnson and Officer Ross's failure to take him into protective custody constituted "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct," *see* La. R.S. 9:2798.1. So, the immunity applies. *Dominique,* 313 So.3d at 316.

## B. Post-Arrest Medical Care

Plaintiffs also contend that the Officer Defendants negligently failed to provide adequate medical care to McGlothen once he was restrained in the back seat of the police vehicle. *See* ECF No. 145 at 23–24. Defendants again raise La. R.S. 9:2798.1 immunity. *See* ECF No. 139 at 21–24. Let's see.

To prevail on a negligence claim under La. Civ. Code art. 2315, the plaintiff must prove by a preponderance of the evidence that:

> (1) defendant had a duty to conform his conduct to a specific standard (duty); (2) defendant failed to conform his conduct to the appropriate standard (breach of duty); (3) defendant's conduct was the cause-in-fact of plaintiff's injuries (cause-in-fact); (4) defendant's conduct was a legal cause of plaintiff's injuries (the risk and harm caused to plaintiff was within the scope of the protection afforded by the duty); and (5) plaintiff incurred actual damages (damages). *Theriot v. Lasseigne,* 93–2661 (La.7/5/94); 640 So.2d 1305; *Faucheaux v. Terrebonne Consolidated Government,* 615 So.2d 289 (La.1993); *Roberts v. Benoit,* 605 So.2d 1032 (La.1991); *Fowler v. Roberts,* 556 So.2d 1 (La.1989). A negative answer to any of the above inquiries will result in the determination of no liability. *Mathieu v. Imperial Toy Corp.,* 94–0952 (La.11/30/94); 646 So.2d 318.

*Gray v. Economy Fire & Cas. Ins. Co.,* 682 So.2d 966, 970 (La. Ct. App. 1996). "Whether a duty is owed is a question of law." *Hardy v. Bowie,* 744 So.2d 606, 614 (La. 1999). And "[t]he determination of whether a particular duty should be imposed on a particular governmental agency is a policy question." *Id.*

Generally, a "police officer has a duty to perform his function with due regard for the safety of all citizens who will be affected by his action." *Prattini v. Whorton,* 326 So.2d 576 (La. Ct. App. 1976); *Justin v. City of New Orleans Through Morial,* 499 So.2d 629, 631 (La. Ct. App. 1986), *writ denied,* 501 So.2d 232 (La. 1987). "His authority must at all times be exercised in a reasonable fashion and he must act as a

reasonably prudent man under the circumstances." *Id.* Officers must choose a reasonable course of action. *See Mathieu,* 646 So.2d at 325.

> The Louisiana Second Circuit has explained the specific duty relevant here:

> It is the duty of an arresting officer, regardless of the nature of the means employed to accomplish the arrest, and regardless of the nature of the offense for which the arrest is made, so long as the prisoner is in his custody or subject to his control, to see to it that reasonable medical service is provided to such person if and when his mental and/or physical condition discloses the need of such services.

*Cobb v. Jeansonne*, 50 So.2d 100, 106 (La. Ct. App. 1951); *see also Abraham v. Maes,* 430 So.2d 1099, 1101–02 (La. Ct. App. 1983).[10]

That out of the way, let's explore La. R.S. 9:2798.1 immunity, one final time. First, we ask whether any statute, policy, or regulation required the officers to follow a particular course of conduct. *See Aucoin,* 324 So.3d at 637. Plaintiffs provide three relevant policies: Shreveport Police Department General Order 601.10, *Use of Force* ("SPD 601.10"), Shreveport Police Department General Order 606.16, *Restraint and Transportation of Prisoners* ("SPD 606.16"), and Shreveport Police Department General Order 606.25, *Conducted Electrical Weapons* ("SPD 606.25"). *See* ECF No. 145 at 18–20. SPD 601.10 provides in relevant part that:

> a. Once the scene is safe and as soon as practical, members shall seek medical attention for any person who has visible injuries, complains of being injured, or requests medical attention. This may include providing first aid, requesting emergency medical services from the Shreveport Fire Department, and/or transporting the subject to a medical facility for treatment.

---

[10] While *Cobb* and *Abraham* impose a general duty to provide reasonable medical care, they do not tell an officer what to do in each situation. *Cobb*, 50 So.2d at 106; *Abraham,* 430 So. 2d at 1101–02. The existence of such a duty does not dictate the particular manner of its performance; rather, the inquiry is whether the defendant acted reasonably. *See Mathieu*, 646 So.2d at 322.

b. For any injury or alleged injury resulting from a use-of-force technique by department personnel, members shall immediately notify a supervisor and shall comply with the written documentation requirements of SPD 404.01.

*See* ECF No. 143-9 at 2.  SPD 606.16 provides in relevant[11] part that:

Should a sick/injured person be arrested or a prisoner become sick/injured during the arrest or transport, the prisoner will be provided with medical care as soon as practical. If the illness/injury appears minor, the officer may transport the prisoner to University Health Center for evaluation or treatment. If the illness/injury appears to be more serious, the officer will summon the Shreveport Fire Department to the location to render medical assistance. If necessary, the prisoner can then be transported to a hospital via ambulance or by the officer, depending on the seriousness of the illness/injury. If the prisoner is transported by ambulance, an officer will accompany the prisoner in the ambulance.

*See* ECF No. 143-11 at 5.  And last, SPD 606.24 provides in relevant part that:

1. Officers are responsible for requesting medical attention for subjects against whom force was used. In the event of a discharge of a CEW, including drive stuns, against a subject, officers will: [] Request the dispatch of the Shreveport Fire Department to provide first aid and assessment[;] [and] [n]otify a supervisor and comply with SPD 404.01 regarding reporting and documentation.

2. After securing the subject in handcuffs and/or other appropriate restraints: [] Officers will request the Shreveport Fire Department respond to the scene for medical assessment of the subject.

*See* ECF No. 143-10 at 3.  Each of these policies generally required Defendants

to seek medical care for Mr. McGlothen.  *See id.*  But none prescribed a particular

course of action for Defendants aside from seeking medical attention for the arrestee.

Defendants called EMS, who evaluated McGlothen.  *See* ECF No. 139 at 19–21 (citing

---

[11] SPD 606.16 also provides guidance on certain mandated restraint procedures required for the arrestee to be transported.  Of course, McGlothen was never *transported* in the police vehicle, so they were not mandated in this case.

record).  What remained—whether to seek additional treatment, to transport him for further care, or to rely on that assessment—was a matter of discretionary judgment. *See Roberts*, 397 F.3d at 296 (stating that an action is discretionary if it "involves selection among alternatives"); *see also Rombach*, 2021 WL 2944809, at *9 ("[A]lthough the individual officers in this case were allegedly guided by at least a *de facto* policy or custom, the officers' decisions to provide (or not to provide) certain care to Rombach were ultimately the result of their discretion."); *Aucoin*, 324 So.3d at 638 (holding that a state regulation requiring a licensed physician to be "responsible for the health care program" at a parish jail involved discretion concerning "the manner in which that care was administered and provided").

For step two, the question is whether that discretion is the kind the statute protects—*i.e.*, whether it is grounded in social, economic, or political policy. *See Aucoin*, 324 So.3d at 637–38.  The Fifth Circuit has answered that question in the affirmative in materially similar contexts.  *Addington*, 2023 WL 2808466, at *7–8 ("Wells's decision to not seek medical attention for Addington after this UOR is better characterized as a kind of 'policy-based discretion.'"); *Rombach*, 2021 WL 2944809, at *10; *see also Aucoin*, 324 So.3d at 638.  That same reasoning holds here.

There is furthermore no evidence that McGlothen's condition or the EMTs' assessment of that condition communicated a clear and immediate need for further intervention such that the officers' later actions could be characterized as reckless, much less "outrageous."  *See* La. R.S. 9:2798.1(C); *Mariana v. Magnolia Auto Transp., LLC,* 341 So.3d 1281, 1291 (La. Ct. App. 2022) ("Only the most egregious conduct by [officers] that exhibits an active desire to cause harm, or a callous indifference to the

22

risk of potential harm from flagrantly bad conduct, will rise to the level of 'willful misconduct' or 'criminal, willful, outrageous, reckless, or flagrant misconduct' resulting in a forfeiture of all the immunity protections afforded by the discretionary immunity statute."). So, the immunity applies.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motion for Summary Judgment (ECF No. 139) is **GRANTED** and Plaintiffs' claims against Defendants are entirely **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** this 3rd day of June, 2026.


_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**

23